No. 16-17202

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JACOREY TAYLOR, AKA Mo-B,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Nevada
The Honorable Robert C. Jones, Presiding
Case Nos. 2:16-cv-02204-RCJ and 2:08-cr-00283-RCJ-PAL-5

# EXCERPTS OF RECORD
**Volume 1 of 1**

MARIO D. VALENCIA
Nevada Bar No. 6154
40 S. Stephanie St., Ste. 201
Henderson, Nevada 89012
(702) 384-7494
*Attorney for Jacorey Taylor*

# INDEX
## (*United States v. Jacorey Taylor*)

Order
Filed October 18, 2016
Docket No. 1130 .......................................................................... ER-5

Pro Se Motion Pursuant to 28 U.S.C. § 2255 to Vacate
Set Aside or Correct Sentence by a Person in Federal Custody
Filed September 19, 2016
Docket No. 1125 .......................................................................... ER-8

United States Supreme Court Letter
Denying Petition for a Writ of Certiorari
Filed October 13, 2015
Docket No. 1086 .......................................................................... ER-20

United States Court of Appeals for the Ninth Circuit
Memorandum
Filed June 11, 2015
Docket No. 1070 .......................................................................... ER-21

Judgment in a Criminal Case
Filed October 31, 2013
Docket No. 969 .......................................................................... ER-28

Jury Verdict
Filed May 6, 2013
Docket No. 897 .......................................................................... ER-36

Jury Instructions
Filed April 30, 2013
Docket No. 887 .......................................................................... ER-40

Reporter's Transcripts:  Trial Day 15 (April 26, 2013)
Jacorey Taylor's Testimony
Docket No. 908 .......................................................................... ER-52

Reporter's Transcript:  Trial Day 15 (April 26, 2015)
Steven Booth's Testimony
Docket No. 907 ........................................................................ ER-59

Reporter's Transcript:  Trial Day 13 (April 24, 2013)
Docket No. 927 ........................................................................ ER-81

Reporter's Transcript:  Trial Day 13 (April 24, 2013)
Steven Booth's Testimony
Docket No. 907 ........................................................................ ER-84

Reporter's Transcript:  Trial Day 12 (April 23, 2013)
Docket No. 925 ........................................................................ ER-106

Reporter's Transcript:  Trial Day 11 (April 22, 2013)
Docket No. 926 ........................................................................ ER-118

Reporter's Transcript:  Trial Day 10 (April 19, 2013)
Docket No. 924 ........................................................................ ER-127

Reporter's Transcript:  Trial Day 9 (April 18, 2013)
Docket No. 923 ........................................................................ ER-152

Reporter's Transcript:  Trial Day 8 (April 17, 2013)
Docket No. 922 ........................................................................ ER-190

Reporter's Transcript:  Trial Day 7 (April 16, 2013)
Docket No. 921 ........................................................................ ER-194

Reporter's Transcript:  Trial Day 6 (April 15, 2013)
Docket No. 920 ........................................................................ ER-197

Superseding Criminal Indictment
Filed January 24, 2012
Docket No. 650 ........................................................................ ER-211

Pro Se Notice of Appeal
Filed November 28, 2016
Docket No. 1133 ............................................................................ ER-227

Docket Sheet ............................................................................... ER-231

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

_____

UNITED STATES OF AMERICA,                )
                                         )
                Plaintiff,               )
                                         )          2:08-cr-00283-RCJ-PAL-5
        vs.                              )
                                         )
JACOREY TAYLOR,                          )              **ORDER**
                                         )
                Defendant.               )
_____)

    After a three-week trial, a jury found Defendant Jacorey Taylor guilty of racketeering,

including murder in aid of racketeering activity and various other drug- and firearms-related

felonies.  The Court sentenced him to concurrent 240-month terms of imprisonment on three

counts, concurrent life sentences on two other counts, and a consecutive life sentence on another

count.  The Court of Appeals affirmed.  The Supreme Court denied Defendant's petition for a

writ of certiorari on October 13, 2015.  The Court of Appeals dismissed a second appeal as

duplicative.  Defendant has filed a habeas corpus motion under 28 U.S.C. § 2255, listing six

counts.

    Defendant argues in his second, third, and fifth counts that various statutes under which

he was convicted are void for vagueness or that the rule of lenity should apply in his case.

Defendant has defaulted on these issues having failed to raise them in either this Court or the

Court of Appeals.  In count four, Defendant argues that there was insufficient evidence to

ER-5

convict him under 18 U.S.C. § 1959. Defendant has also defaulted on this issue. In count six, Defendant argues that the application of AEDPA to him was unconstitutional. Again, Defendant has defaulted on this argument, and in any case, he presents no argument apart from the bare claim of unconstitutionality.

The part of Defendant's first count alleging ineffective assistance of trial counsel fails. Defendant first argues that trial counsel "failed to object to all PSR enhancements and false allegations not supported by testimony and facts." Defendant's sentencing memorandum indicates at least four objections to the PSR. Counsel is not ethically permitted to make frivolous objections. Defendant does not identify what other objections he believes should have been made. Defendant also argues that trial counsel "failed to object to fact [sic] that counts 17 & 18 do not indict Defendant Taylor, yet sentenced him [sic]." But the Superseding Indictment (ECF No. 650) makes clear that Defendant was indicted for counts 17 and 18. Defendant may be looking at the original Indictment (ECF No. 1). He was not tried on the Indictment, but on the Superseding Indictment. Defendant next argues that "counsel failed to object at sentencing that the judge did not want to sentence Taylor to life, yet mandatory [sic]." The Court perceives no claim here. It is true that the Court noted at sentencing that it wished it could sentence Defendant to less than life imprisonment (although it noted that imprisonment until the age of 80 was appropriate), but such a desire has no effect on the mandatory sentence that applies, and Defendant does not argue that a mandatory life sentence did not apply to him.

Finally, the part of Defendant's first count alleging ineffective assistance of appellate counsel (for failing to appeal an allegedly illegal sentence under 18 U.S.C. § 3742) fails. Defendant does not identify any alleged illegality of his sentence such that any motion under § 3742 might have had merit.

///

ER-6

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence (ECF No. 1125) is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

DATED: This 18th day of October, 2016.

_____
ROBERT C. JONES
United States District Judge

ER-7

ORIGINAL

JACOREY TAYLOR
Name

05263-748
Prison Number

USP VICTORVILLE
Place of Confinement

```
_____ FILED          _____ RECEIVED
_____ ENTERED        _____ SERVED ON
              COUNSEL/PARTIES OF RECORD

        SEP 1 5 2016

      CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY:_____ DEPUTY
```

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,            )
                                     )
                                     )        CASE NO._____
                                     )        (To be supplied by the Clerk)
                    vs.              )
                                     )        MOTION PURSUANT TO
                                     )        28 U.S.C. §2255 TO VACATE,
                                     )        SET ASIDE OR CORRECT
                                     )        SENTENCE BY A PERSON IN
JACOREY TAYLOR, Movant.              )        FEDERAL CUSTODY
                                     )
_____)

(If movant is attacking a sentence based on a federal conviction to be served in the **future**, the motion should be filed in the federal court which entered the judgment.)

1) Name and location of the court which entered the judgment of conviction under attack: _UNITED STATES DISTRICT COURT_ _DISTRICT OF NEVADA AT LAS VEGAS_ .

2) Date judgment of conviction was entered: _OCTOBER 22, 2013_ .

3) Case number: _2:08-CR-283-KTD_ .

4) Length and terms of sentence: _COUNTS 1-17-18 240 MONTHS EACH_ _TO RUN CONCURRENT. COUNT 5-MANDATORY LIFE CONCURRENT_ _COUNT-SIX CONSECUTIVE LIFE SENTENCE / COUNT NINE LIFE_ _SENTENCE CONCURRENT_

1

<span style="color:red">ER-8</span>

5) Are you presently serving a sentence imposed for a conviction other than the conviction under attack in this motion?
Yes ☐  No ☒

6) Name of the judge who imposed sentence under attack in this motion: _____

7) Nature of the offense involved (all counts): _18 USC 1962(d)_
_18 USC § 1959_   _18 USC § 924(c)_   _21 USC § 846_
_21 USC § 841_

8) What was your plea? **(check one)**
   a) Not Guilty ☒   b) Guilty ☐   c) Nolo Contendere ☐

9) If you entered a plea of guilty pursuant to a plea bargain, state the terms and conditions of the agreement: _18 USC § 1962(d)   18_

10) If you were found guilty after a plea of not guilty, was the finding made by: **(check one)**

   a) A jury ☒   b) A judge without a jury ☐

11) Did you testify at trial (if any)?   Yes ☐   No ☐

12) Did you **appeal** from the judgment of conviction?  Yes ☒   No ☐
_DID YOU APPEAL THE SENTENCE 18 USC §_   _NO ☒_

13) If you did appeal, answer the following:

   a) State the name and location of the court where the appeal was filed, the result, the case number and the date of the court's decision (or attach a copy of the court's opinion or order):
   _NINTH CIRCUIT COURT OF APPEALS   NO 13-10572_

   b) State the issues raised: _i.) INSTRUCTIONS TO THE JURY (4) FOUR ONLY. NO OTHER CLAIMS._

14) If you did not appeal, explain briefly why you did not: _____

2

ER-9

_____
_____
_____

15) Other than a direct appeal from the judgment of conviction ~~and sentence~~, have you previously filed in any federal court any petitions, applications or motions with respect to the judgment under attack in this motion? Yes ☒    No ☐

16) If your answer to question 15 was "Yes", give the following information:

   a)    As to the first petition, application or motion:

   1) Name of court: _NINTH CIRCUIT COURT OF APPEALS_

   2) Nature of proceeding: _"OUT OF TIME APPEAL" 18 USC § 3742(a)(2)_

   3) Issues raised: _INEFFECTIVE COUNSEL & SENTENCING COURT VIOLATED RULE 32 (C)(3) - NOTICE OF RIGHT TO APPEAL AN ILLEGAL SENTENCE_
   _____

   4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ☐    No ☒

   5) Result: _PENDING_

   6) Date of result: _____

   7) Did you appeal the result to the federal appellate court having jurisdiction? Yes ☐   No ☐   If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order): _____
   _____
   _____
   _____

   8) If you did not appeal, briefly explain why you did not:
   _STILL PENDING_
   _____

   b)    As to any second petition, application or motion, give the following information:

**ER-10**

1) Name of court:_____*None*_____

2) Nature of proceeding:_____

3) Issues raised:_____
_____
_____
_____

4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ☐   No ☐

5) Result:_____

6) Date of result:_____

7) Did you appeal the result to the federal appellate court having jurisdiction? Yes ☐   No ☐ If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order): _____
_____
_____
_____

8) If you did not appeal, briefly explain why you did not:
_____
_____
_____

c)   As to any third petition, application or motion, give the following information:

1) Name of court:_____*None*_____

2) Nature of proceeding:_____

3) Issues raised:_____
_____
_____

4) Did you receive an evidentiary hearing on your petition, application or motion? Yes ☐   No ☐

5) Result:_____

6) Date of result:_____

4

ER-11

7) Did you appeal the result to the federal appellate court having jurisdiction? Yes ☐ No ☐ If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order): _____

_____

_____

_____

8) If you did not appeal, briefly explain why you did not:

_____

_____

_____

17) State **concisely** every ground on which you claim that you are being held unlawfully. Summarize **briefly** the **facts** supporting each ground. If necessary, you may attach up to two extra pages (8 ½" x 11") stating additional grounds or supporting facts. You should raise in this motion all available grounds for relief which relate to the conviction under attack.

a) Ground One: *COUNSEL WAS INEFFECTIVE AT TRIAL SENTENCING AND ON DIRECT APPEAL*

1) Supporting facts (tell your story briefly without citing legal authority or argument): 1.) COUNSEL DID NOT APPEAL AN ILLEGAL SENTENCE V.A 18 USC §3742 (a)(a)... - OUT OF TIME APPEAL?

2.) COUNSEL FAILED TO OBJECT TO ALL PSR ENHANCEMENTS AND FALSE ALLEGATIONS NOT SUPPORTED BY TESTIMONY & FACTS.

3.) COUNSEL FAILED TO OBJECT TO FACT THAT COUNTS 17 & 18 DO NOT INDICT DEFENDANT TAYLOR, YET SENTENCED HIM.

4.) COUNSEL FAILED TO OBJECT AT SENTENCING THAT THE JUDGE DID NOT WANT TO SENTENCE TAYLOR TO LIFE, YET MANDATORY.

2) Has this ground been previously presented to any federal court by way of petition for writ of habeas corpus, motion pursuant to 28 U.S.C. § 2255, or any other petition, motion or application?
☐ ☐    No ☒

a) If your answer is "Yes", indicate which type of proceeding you used to present this ground: _____

5

ER-12

b)     If your answer is "No", state briefly your reason(s) for not presenting this ground: *THIS IS FIRST § 2255*
*INEFFECTIVE FAILED TO PRESENT THESE CLAIMS*

b)    Ground Two: *18 USC § 1957 (a) "HOBBS ACT" AS USED AS A PREDICATE*
*ACT TO CONVICT UNDER 18 USC § 1962 (d) 18 USC § 1959,*
*THE STATUE IS VOID FOR VAGUENESS, RULE OF LENITY APPLIES.*

    1)     Supporting facts (tell your story briefly without citing legal authority or argument):

     1.) *THE "HOBBS ACT" DOES NOT PROTECT ANY ILLEGAL ACTIVITY*
*OR ILLEGAL ENTERPRISE OR ILLEGAL ENTERPRISE.*

     2.) *THE "HOBBS ACT" DOES NOT DEFINE A CRIMINAL OR*
*CRIMINAL ENTERPRISE, AS A PROTECTED CLASS, "CORPORATION*
*DE JURE" LEGAL PERSON .... VOID FOR VAGUENESS.*

     3.) *THE UNITED STATES SUPREME COURT HAS ISSUED ITS*
*VIEWS CITE: 114 L.Ed 2d 743, TO ITS VALIDITY.*

    2)     Has this ground been previously presented to any federal court by way of petition for writ of habeas corpus, motion pursuant to 28 U.S.C. §2255, or any other petition, motion or application?
     ▉▉▉     No ☒

     a)     If your answer is "Yes", indicate which type of proceeding you used to present this ground:_____

     b)     If your answer is "No", state briefly your reason(s) for not presenting this ground: *INEFFECTIVE COUNSEL*
*FAILED TO PRESENT AT TRIAL, SENTENCING*
*AND ON DIRECT APPEAL*

c)    Ground Three: *CONVICTION & SENTENCE ON COUNT 6*
*A VIOLATION OF 18 USC § 924(c)(d) IS VOID FOR*
*VAGUENESS, RULE OF LENITY APPLIES*

6

ER-13

1)      Supporting facts (tell your story briefly without citing legal authority or argument):

1.) THE UNITED STATES SUPREME COURT'S DICTA IN "JOHNSON" & "WELCH" THAT ALL CONVICTIONS & SENTENCES ARE VOID FOR VAGUENESS. SEE: 9TH CIRCUIT'S MANDATE & PRECEDENT CITE: U.S. vs. LATTANAPHOM #CR-2-99-433

DIMAYA V LYNCH 803 F3d 1110 (9TH CIR)

2.) INSUFFICIENT EVIDENCE UNDER 18USC§924(c)(j) THAT DEFENDANT TAYLOR WAS INVOLVED IN ANY HOMICIDE OR ANY WEAPON WAS DISCHARGED THAT ACTUALLY CAUSED THE DEATH OF ONE "BILLY THOMAS".

3.) THIS COUNT IS DOUBLE JEOPARDY OR "LESSER INCLUDED OFFENSE" OF COUNT 5, 18 USC §1959

2)      Has this ground been previously presented to any federal court by way of petition for writ of habeas corpus, motion pursuant to 28 U.S.C. §2255, or any other petition, motion or application? Yes ☐  No ☐

     a)      If your answer is "Yes", indicate which type of proceeding you used to present this ground:_____

_____

     b)      If your answer is "No", state briefly your reason(s) for not presenting this ground: INEFFECTIVE COUNSEL FAILED TO ADDRESS ON APPEAL & SENTENCING

d)      Ground Four: INSUFFICIENT EVIDENCE TO CONVICT & SENTENCE DEFENDANT TO LIFE VIA 18USC §1959 "VICAR"

1)      Supporting facts (tell your story briefly without citing legal authority or argument):

1.) NO EVIDENCE OR TESTIMONY THAT CO-DEFENDANT DELVIN WARD DIRECTED DEFENDANT TAYLOR TO PERFORM ANY ILLEGAL ACTS TO MAINTAIN OR INCREASE TAYLOR'S POSITION AS AN ELEMENT TO CONVICT. SAME WITH ANTHONY MABRY, NO ORDERS OR DIRECTION GIVEN TO DEFENDANT TAYLOR TO DO ANY ILLEGAL ACTS, TO INCREASE OR MAINTAIN HIS POSITION UNDER 18 USC §1959 "VICAR"

ER-14

(e) GROUND FIVE. COUNT NINE VIOLATION OF 21 USC § 846 IS VOID FOR VAGUENESS, RULE OF LENITY APPLIES.

"FACTS"

1.) COUNT NINE DEFINES THE DRUG AMOUNT IS 50 GRAMS OR MORE OF A MIXTURE AND SUBSTANCE CONTAINING A "DETECTIBLE AMOUNT" OF COCAINE BASE..... NOT MORE!

2.) HOW MUCH COCAINE BASE IS A "DETECTIBLE AMOUNT"?

3.) U.S.S.G. AMENDMENTS 304, 370, 484, 488, 518, 555, 640, 748, 770 STATES' ANY MIXTURE OR SUBSTANCE MUST BE SEPERATED, TO DETERMINE THE ACTUAL AMOUNT OF DRUGS, TO SENTENCE.

4.) HOWEVER' COUNT NINE DOES LIMIT THE AMOUNT OF ACTUAL DRUGS..... TO ONLY A "DETECTIBLE AMOUNT" OF COCAINE BASE NOT MORE.

5.) THE ELEMENT LIMINED IN COUNT NINE OF ONLY A "DETECTIBLE AMOUNT" LIMITS THE COURTS, JURISDICTION TO SENTENCE A DEFENDANT TO (5) FIVE YEARS OR LESS.

ER-15

(F) GROUND SIX THE APPLICATION OF A.E.D.P.A.
OF 1996 AS APPLIED TO DEFENDANT IS
UNCONSTITUTIONAL

"FACTS"

1.) THE LIMITS PLACED UPON AN UNEDUCATED
INDIVIDUAL, THAT IS POOR AND NO ACTUAL
KNOWLEDGE OF THE LAW UNDER A.E.D.P.A.
OF 1996 IS UNCONSTITUTIONAL

2.) A WEALTHY & EDUCATED PERSON HAS
THE WHEREWITHALL TO PROPERLY RESEARCH
ALL LEGAL ISSUES OR TO HIRE AN ATTORNEY
TO PROTECT HIS (1) ONE YEAR LIMITATION
ON FILING A 28 USC § 2255.

3.) WHEN A DEFENDANT FAILS TO PROPERLY
PRESENT ALL ISSUES IN HIS 28 USC § 2255,
A.E.D.P.A. BARS A SECOND OR SUCCESSIVE
MOTION

WHEREFORE A.E.D.P.A OF 1996 IS
UNCONSTITUTIONAL AS APPLIED

7 (b)

ER-16

2) Has this ground been previously presented to any federal court by way of petition for writ of habeas corpus, motion pursuant to 28 U.S.C. §2255, or any other petition, motion or application? Yes ☐ No ☒

    a) If your answer is "Yes", indicate which type of proceeding you used to present this ground: _____

_____

    b) If your answer is "No", state briefly your reason(s) for not presenting this ground: _____

_____

18) Do you have any petition, application, motion or appeal now pending in any court regarding the conviction under attack? Yes ☒ ▬ If "Yes", state the name of the court and the nature of the proceeding: _UNITED STATES COURT OF APPEALS 9TH CIRCUIT NO. 16-10364_ _"OUT OF TIME APPEAL OF AN ILLEGAL SENTENCE_

19) Were you represented by an attorney at any time during the course of your arraignment and plea, trial (if any), sentencing, appeal (if any), or during the preparation, presentation or consideration of any petitions, motions or applications which you filed with respect to this conviction? Yes ☒ ▬ ☐ If "Yes", state the name(s) and address (es) of any such attorney(s), the proceedings in which you were so represented and whether said attorney(s) was/were of your own choosing or if appointed by the court: _COURT APPOINTED COUNSEL, CARL J. HERMAN_ _347 MT. PLEASANT AVENUE, SUITE 203, WEST ORANGE,_ _NEW JERSEY, 07052_

Wherefore, movant prays that the court grant him such relief to which he may be entitled in this proceeding.

_____      _____

8

ER-17

Signature of Attorney (if any)                    Signature of Movant

_PRO-SE_                                            _JACOREY TAYLOR_

_____

_____
(Attorney's full address and telephone
number.)

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the movant in the above
action, that he has read the above pleading and that the information contained therein is
true and correct, _TO THE BEST OF MY KNOWLEDGE & BELIEF._
28 U.S.C. § 1746.  18 U.S.C. § 1621.

Executed at _USP VICTORVILLE_ on _SEPTEMBER 9TH_, 20_16_.
              (Location)                      (Date)        _PRISON MAIL BOX RULE_

                                            (Signature)

                                    _JACOREY TAYLOR_

9

ER-18

Jacorey Taylor #05263-748
United States Penitentiary
P.O. Box 3900
Adelanto, CA 92301

Clerk, United States District Court
333 Las Vegas BLVD South
Las Vegas, NV 89101

Legal
MAIL

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

October 13, 2015

Clerk
United States Court of Appeals for the Ninth
Circuit
95 Seventh Street
San Francisco, CA  94103-1526

      Re:  Jacorey Taylor
          v. United States
          No. 15-5978
          (Your No. 13-10572)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

Scott S. Harris

**Scott S. Harris**, Clerk

ER-20

FILED

**NOT FOR PUBLICATION**

JUN 11 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10572 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00283-RCJ-PAL-5 |
| v. | |
| JACOREY TAYLOR, AKA Mo-B, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted June 8, 2015
San Francisco, California

Before: SILVERMAN, GOULD, and HURWITZ, Circuit Judges.

Jacorey Taylor appeals his convictions for 1) conspiracy to engage in a

racketeering influenced corruption organization, 18 U.S.C. § 1962(d); 2) violent

crime in aid of racketeering, 18 U.S.C. §§ 1959(a)(1) & (2); 3) use of a firearm

during a crime of violence, 18 U.S.C. § 924(c)(1); 4) conspiracy to engage in drug

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

-2-

trafficking, 21 U.S.C. § 846; and 5) two counts of possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1) & (b)(1)(C)(iii).  We **AFFIRM**.

### 1.        Motion for Judgment of Acquittal

Where, as here, the defendant did not renew his Federal Rule of Criminal Procedure 29 motion for judgment of acquittal following the close of his own case, we review the denial of that motion for plain error.  *United States v. Cruz*, 554 F.3d 840, 844 (9th Cir. 2009); *United States v. Patton*, 771 F.2d 1240, 1243 (9th Cir. 1985).  Taylor's main argument is that defense witnesses testified to his innocence. On a Rule 29 motion, however, the court must construe the evidence in the light most favorable to the government.  *United States v. Odom*, 329 F.3d 1032, 1034 (9th Cir. 2003).

Resolving all credibility issues in the government's favor, it is clear that the district court did not err in denying Taylor's motion.  Without even looking to Taylor's many admissions of guilt during his testimony, the testimony of the government's numerous witnesses provided more than sufficient evidence from which a rational juror could find the Playboy Bloods are a RICO enterprise, Taylor joined the enterprise with knowledge of its purpose and that at least two predicate acts would be committed, there was a nexus between the predicate acts and the

-3-

activities of the enterprise, and Taylor was present with a gun when Billy Ray Thomas was murdered.

## 2.    Evidentiary Rulings

We review a district court's admission of evidence for abuse of discretion when the defendant timely objected and for plain error when he raised the objection for the first time on appeal.[1]  *United States v. Hieng*, 679 F.3d 1131, 1135 (9th Cir. 2012).

Taylor objected to Agent Shields' testimony that Jessie James Cooper told him Cooper and Taylor had discussed Taylor's robbery of the Gold Rush casino in Henderson and desire to rob other casinos as well.  The district court admitted this evidence not as prior bad acts but rather only as proof of Cooper's prior inconsistent statements after Cooper testified he did not know who committed the Klondike casino robbery with him and that the person he knew as "Corey" was not Taylor.  It was not introduced for the truth of the matter asserted – nor should it have been – nor does Taylor make a hearsay argument on appeal.  Furthermore, the

---

[1] Taylor waived any objection to evidence he shot a man named Rendell Bright by raising the issue first.  *Ohler v. United States*, 529 U.S. 753, 755-56 (2000); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 954 (9th Cir. 2011).

-4-

judge gave a limiting instruction to the jury that the evidence could only be considered for impeachment.

Taylor did not object on Federal Rule of Evidence 404(b) grounds to the rest of the evidence he now contends was erroneously admitted. None of that evidence was admitted as character evidence, but rather as direct proof of the existence of the RICO enterprise, its method of operation, and the predicate acts of racketeering activity charged in the indictment. The evidence was therefore highly relevant to the RICO count, not unduly prejudicial, and not unfair character evidence. Its admission was not in error. *United States v. Moorehead*, 57 F.3d 875, 878 (9th Cir. 1995); *United States v. Robertson*, 15 F.3d 862, 871 (9th Cir. 1994), *reversed on other grounds by* 514 U.S. 669 (1995); *United States v. Baker*, 10 F.3d 1374, 1413 (9th Cir. 1993), *overruled on other grounds by Apprendi v. New Jersey*, 530 U.S. 466 (2000).

### 3. Jury Instructions

We review the legal accuracy of a jury instruction *de novo*. *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997). We review a district court's precise formulation of jury instructions for abuse of discretion. *United States v. Long*, 301 F.3d 1095, 1104 (9th Cir. 2002) (per curiam).

-5-

Although the district court erred in giving the *Pinkerton* instruction as to the

substantive drug trafficking offenses charged in Counts 17 and 18 because Taylor

was not charged in those counts with conspiracy, the error was harmless. *United*

*States v. Nakai*, 413 F.3d 1019, 1023 (9th Cir. 2005), *cert. denied,* 546 U.S. 995

(2005); *see also Pinkerton v. United States*, 328 U.S. 640 (1946). The evidence

overwhelmingly showed that Taylor committed the substantive offenses as a

principal and/or aider and abetter. Taylor admitted Count 18 on the witness stand

and the government presented damning and unrebutted evidence – including audio

recordings from a wire worn by an informant – demonstrating that Taylor at the

very least aided and abetted the drug sale charged in Count 17.

Taylor abandoned any argument that the district court erred in refusing to

give his four requested instructions by failing to articulate until his reply brief why

he believes the district court erred. Fed. R. App. P. 28(a)(8)(A); *United States v.*

*Berber-Tinoco*, 510 F.3d 1083, 1089 n.2 (9th Cir. 2007); *United States v. Kimble*,

107 F.3d 712, 715 n.2 (9th Cir. 1997).

### 4.    Dismissal of Juror

We review the dismissal of a juror during deliberations for abuse of

discretion. *United States v. Symington*, 195 F.3d 1080, 1085 (9th Cir. 1999).

"[T]he district court [is] in the 'best position' to evaluate the jury's ability to

-6-

deliberate[.]" *United States v. Beard*, 161 F.3d 1190, 1193 (9th Cir. 1998) (citing *United States v. Ross*, 886 F.2d 263, 267 (9th Cir. 1989)). "Under the abuse-of-discretion standard, we must affirm unless we are 'left with the definite and firm conviction that the [district] court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors.'" *United States v. Egbuniwe*, 969 F.2d 757, 761 (9th Cir. 1992) (citing *United States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988)).

The district court conducted a sufficient inquiry into Juror #3's ability to deliberate and the evidence showed she could not because she could not understand the law governing the case. There was no evidence indicating the juror's conflict with the other jurors stemmed from her view of the merits of the case and no evidence before the court regarding what her views of the merits were. The court did not abuse its discretion in finding good cause existed to dismiss Juror #3. Fed. R. Crim. P. 23(b)(3); *Symington*, 195 F.3d at 1085; *United States v. Walsh*, 75 F.3d 1, 4-5 (1st Cir. 1996).

In accordance with Federal Rule of Criminal Procedure 24(c)(3), the court instructed the reconstituted jury to begin its deliberations anew and the fact that the jury returned a guilty verdict several hours later is no indication it failed to do so.

-7-

"A jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225,

234 (2000).

**AFFIRMED**.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
         Sheet 1

# UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| **v.** | ) | |
| JACOREY TAYLOR | ) | Case Number:  2:08-cr-283 RCJ-PAL-5 |
| aka Mo-B | ) | USM Number: 52637-048 |
| | ) | CARL J. HERMAN (CJA) |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
     which was accepted by the court.

☑ was found guilty on count(s)    1s, 5s, 6s, 9s, 17s, and 18s
     after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 1962(d) | Conspiracy to Engage in a Racketeering Influenced Corrupt Organization | 1/24/2012 | 1s |
| 18 USC §§ 1959(a)(1) and 2 | Violent Crime in Aid of Racketeering | 11/1/2004 | 5s |
| 18 USC §§ 924(c)(1) | Use of Firearm during a Crime of Violence | 11/1/2004 | 6s |

     The defendant is sentenced as provided in pages 2 through   __7__   of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)    All Counts Original Indictment    ☐ is    ☑ are   dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

_____10/22/2013_____
Date of Imposition of Judgment

_____
Signature of Judge

ROBERT C. JONES          Chief U.S. District Judge
Name and Title of Judge

Date    October 31, 2013

ER-28

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 1A

Judgment—Page   2   of   7

DEFENDANT:  JACOREY TAYLOR aka Mo-B
CASE NUMBER:  2:08-cr-283 RCJ-PAL-5

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC § 846 | Conspiracy to Engage in Drug Trafficking | 10/28/2008 | 9s |
| 21 USC § 841(a)(1) & | Possession with Intent to Distribute a Controlled | 1/4/2007 | 17s |
| (b)(1)(C)(iii), and | Substance | | |
| 18 USC § 2 | | | |
| 21 USC § 841(a)(1) & | Possession with Intent to Distribute a Controlled | 1/31/2007 | 18s |
| (b)(1)(C)(iii), and | Substance | | |
| 18 USC § 2 | | | |

ER-29

AO 245B    (Rev. 09/11) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page    3    of    7

DEFENDANT:  JACOREY TAYLOR aka Mo-B
CASE NUMBER:  2:08-cr-283 RCJ-PAL-5

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Counts 1s, 17s and 18s - 240 Months each Count, Concurrent. Counts 5s and 9s - Life each Count, Concurrent to all other Counts. Count 6s - Life, Consecutive to Counts 1s, 5s, 9s, 17s and 18s.

☐    The court makes the following recommendations to the Bureau of Prisons:

☑    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at    _____    ☐ a.m.    ☐ p.m.    on    _____ .

    ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. on    _____ .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on    _____    to    _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By    _____
DEPUTY UNITED STATES MARSHAL

ER-30

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___4___ of ___7___

DEFENDANT:  JACOREY TAYLOR aka Mo-B
CASE NUMBER:  2:08-cr-283 RCJ-PAL-5

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Counts 1s, 17s and 18s - 3 YEARS per Count.  Counts 5s and 6s - 5 YEARS per Count. Count 9s - 10 YEARS. ALL COUNTS TO RUN CONCURRENT WITH EACH OTHER.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The Defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court, not to exceed 104 tests annually. Revocation is mandatory for refusal to comply.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑  The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐  The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐  The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

ER-31

Case: 16-17262, 07/07/2021, ID: 12165766, DktEntry: 93, Page 32 of 267

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3C — Supervised Release

Judgment—Page __5__ of __7__

DEFENDANT:  JACOREY TAYLOR aka Mo-B
CASE NUMBER:  2:08-cr-283 RCJ-PAL-5

## SPECIAL CONDITIONS OF SUPERVISION

1.   Possession of Weapons - You shall not possess, have under your control, or have access to any firearm, explosive device, or other dangerous weapons, as defined by federal, state, or local law.

2.   Warrantless Search - You shall submit to the search of your person, property, residence  or automobile under your control by the probation officer or any other authorized person under the immediate and personal supervision of the probation officer, without a search warrant to ensure compliance with all conditions of release.

3.   Substance Abuse Treatment - You shall participate in and successfully complete a substance abuse treatment and/or cognitive based life skills program, which will include drug/alcohol testing and/or outpatient counseling, as approved and directed by the probation office.  You shall refrain from the use and possession of beer, wine, liquor, and other forms of intoxicants while participating in substance abuse treatment.  Further, you shall be required to contribute to the costs of services for such treatment, as approved and directed by the probation office based upon your ability to pay.

4.   Debt Obligations - You shall be prohibited from incurring new credit charges, opening additional lines of credit, or negotiating or consummating any financial contracts without the approval of the probation officer.

5.   Access to Financial Information - You shall provide the probation officer access to any requested financial information, including personal income tax returns, authorization for release of credit information, and any other business financial information in which you have a control or interest.

6.   General Equivalency Diploma  - You shall participate in and successfully complete an educational program to earn a General Equivalency Diploma (GED).

7.   Report to Probation Officer After Release from Custody - You shall report, in person, to the probation office in the district to which you are released within 72 hours of discharge from custody.

## ACKNOWLEDGEMENT

Upon finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed)      _____        _____
                          Defendant                                         Date


                _____        _____
                U.S. Probation/Designated Witness                  Date

ER-32

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __7__

DEFENDANT: JACOREY TAYLOR aka Mo-B
CASE NUMBER: 2:08-cr-283 RCJ-PAL-5

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 600.00 | $ 0.00 | $ 685.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

X The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| SEE ATTACHED RESTITUTION LIST | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $ 0.00 | $ 685.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**ER-33**

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __7__

DEFENDANT:   JACOREY TAYLOR aka Mo-B
CASE NUMBER:   2:08-cr-283 RCJ-PAL-5

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   ☑   Lump sum payment of $ __1,285.00__   due immediately, balance due

     ☐   not later than _____ , or
     ☐   in accordance   ☐ C,   ☐ D,   ☐   E, or   ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☑   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

     $685.00 Restitution joint and several with all co-defendants in 2:08-cr-283; Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, and Terrance Thomas

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**ER-34**

**U.S. v. Jacorey Taylor**
**2:08-cr-00283-RCJ-PAL**
**Restitution List**


Klondike Sunset Casino                    $185.00
444 W. Sunset Road
Henderson, Nevada   89011


Laura Swain                               $500.00

ER-35

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
## LAS VEGAS, NEVADA

FILED ✓
ENTERED ___
___ RECEIVED
___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAY - 6 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES OF AMERICA, )
)
    Plaintiff(s), )
)
vs. )
)
JACOREY TAYLOR )
)
    Defendant(s), )
_____ )

CASE NO: 2:08-cr-0283-RCJ-PAL

# REDACTED
# VERDICT

ER-36

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                        DISTRICT OF NEVADA
7                              * * *
8
9
10   UNITED STATES OF AMERICA,
11                    Plaintiff,                No. 2:08-CR-00283-RCJ-PAL-5
12             vs.                              **VERDICT FORM**
13   JACOREY TAYLOR,
14                    Defendant.
15   _____
16
17          WE THE JURY, having fully deliberated in this matter, have reached a unanimous decision
18   concerning the charges against Jacorey Taylor, as follows:
19
20   1.    Count 1 - RICO Conspiracy - 18 U.S.C. § 1962(d)
21         Guilty _____✓_____          Not Guilty _____
22
23   1A.   Pattern of Racketeering Activity:
24         Within a 10 year period, the jury unanimously finds that the Playboy Bloods committed two
25         or more of the following racketeering activities, in any combination:
26
27                                                       Check if Applicable
28         a.    Murder                              _____✓_____
           b.    State Extortion                     _____✓_____

ER-37

1    c.    Federal Robbery                                    ✓

2    d.    Federal Extortion                                  ✓

3    e.    Drug offenses

4          i.    Distribution, manufacturing, possession

5                with intent to distribute and conspiracy     ✓

6          ii.   Maintaining a drug involved premises          ✓

7

8  2.  Count 5 - Violent Crime in Aid of Racketeering Activity and Aiding and Abetting - 18

9      U.S.C. § 1959(a)(1), (2)

10     Guilty _____✓_____        Not Guilty _____

11

12 3.  Count 6 - Use of a Firearm During a Crime of Violence and Aiding and Abetting - 18

13     U.S.C. § 924(c)(1) and 924(j)(1), (2)

14     Guilty _____✓_____        Not Guilty _____

15

16 4.  Count 9 - Conspiracy to Engage in Drug Trafficking - 21 U.S.C. § 846

17     Guilty _____✓_____        Not Guilty _____

18

19 4A.  The jury unanimously finds that the amounts crack cocaine involved in these counts, was:

20      less than 28 grams                          _____

21      At least 28 grams & less than 280 grams     _____

22      280 grams or more                           _____✓_____

23

24 5.  Count 17 - Possession with Intent to Distribute a Controlled Substance & Aiding and

25     Abetting (January 4, 2007) - 21 U.S.C. § 841(a)(1), (b)(1)(C)(iii) and 18 U.S.C. § 2

26     Guilty _____✓_____        Not Guilty _____

27 ///

28                                     2

ER-38

6.     Count 18 - Possession with Intent to Distribute a Controlled Substance & Aiding and
Abetting (January 31, 2007) - 21 U.S.C. § 841(a)(1), (b)(1)(C)(iii) and 18 U.S.C. § 2
Guilty _____✓_____          Not Guilty _____

**Have the Presiding Juror sign and date this Verdict Form, and notify the bailiff that you have reached a verdict.**

Dated this ___6___ day of May, 2013.



UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:08-CR-00283-RCJ-PAL |
| Plaintiff, | |
| vs. | JURY INSTRUCTIONS |
| JACOREY TAYLOR, | |
| Defendant. | |

## DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be available in the jury room for you to consult.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law and must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

Jury Instruction No.    1

# COUNT ONE

## RICO CONSPIRACY - ESSENTIAL ELEMENTS

The Defendant is charged in Count One of the Indictment with a RICO conspiracy to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise, the Playboy Bloods, through a pattern of racketeering activity, in violation of Section 1962(d) of Title 18 of the United States Code.

Under the law, a "conspiracy" is a combination or agreement of two or more persons to join together to attempt to accomplish an offense that would be in violation of Section 1962(c). It is a kind of "partnership in criminal purposes" in which each member becomes the agent of every other member. To convict the Defendant on the charged RICO conspiracy offense in Count One, the Government is not required to prove that the Defendant or any conspirator actually committed, caused, or aided and abetted any racketeering act. Moreover, it is not necessary, in order to convict the Defendant of a charge of conspiracy, that the objectives or purposes of the conspiracy, whatever they may be, have been achieved or accomplished. The ultimate success or failure of the conspiracy is irrelevant. Rather, the conspiratorial agreement to commit a RICO offense is the essential aspect of a RICO conspiracy offense.

To establish the requisite conspiratorial agreement, the Government is not required to prove that each co-conspirator explicitly agreed with every other conspirator to commit the substantive RICO offense, or knew all his fellow conspirators, or was aware of all of the details of the conspiracy. Rather, to establish sufficient knowledge, it is only required that the Defendant knew the general nature and common purpose of the conspiracy and that the conspiracy extended beyond his individual role.

Jury Instruction No. 20

ER-41

**Racketeering Activity**

For the purposes of Counts One and Five, the law defines "racketeering activity" as acts involving Murder, Attempted Murder, Conspiracy to Commit Murder, Aiding and Abetting in the Commission of Murder, and Extortion, as those offenses are defined under Nevada state law, acts indictable under 18 U.S.C. § 1952 (extortion and robbery), and acts involving the Manufacturing, Importation, Receiving, Concealment, Buying, Selling, or Otherwise Dealing in a Controlled Substance, as those offenses are defined under federal law. I will provide you with the elements of each of these offenses.

A.    **Acts Involving Murder**

Under Nevada law, a person commits the offense of murder when he, or one for whose conduct he is legally responsible, kills an individual in a willful, deliberate and premeditated way. Murder is the unlawful killing of a human being, with malice aforethought, either express or implied. Express malice is that deliberate intention to unlawfully take away the life of a person, which is manifested by external circumstances capable of proof. Malice may be implied when no considerable provocation appears or when all the circumstances of the killing show an abandoned or malignant heart.

Malice aforethought, as used in the definition of murder, means the intentional doing of a wrongful act without legal cause or excuse, or what the law considers adequate provocation. The condition of mind described as malice aforethought may arise, not alone from anger, hatred, revenge or from particular ill will, spite or grudge toward the person killed, but may also result from any unjustifiable or unlawful motive or purpose to injure another, which proceeds from a heart fatally bent on mischief, or with reckless disregard of consequences and social duty.

Jury Instruction No.    20

1    "Aforethought" does not imply deliberation or the lapse of considerable time. It only means

2    the required mental state must precede rather than follow the act.

3            For the purposes of Counts One and Five, it makes no difference whether you find that the

4    Defendant's actions fall under First Degree Murder or Second Degree Murder, however, both

5    definitions will be provided to you for deliberations. It therefore makes no difference in your

6    deliberations whether you find a level of premeditation or deliberation. Any act involving murder,

7    whether of the First or Second Degree, is a racketeering act under Counts One and Five of the

8    Indictment.

9

10            *1.*        *First Degree Murder*

11           Under Nevada law, First Degree Murder is murder which is perpetrated by means of any kind

12   of willful, deliberate, and premeditated killing. All three elements -- wilfulness, deliberation, and

13   premeditation -- must be proven beyond a reasonable doubt before an accused can be convicted of First

14   Degree Murder.

15           Willfulness is the intent to kill. There need be no appreciable space of time between formation

16   of the intent to kill and the act of killing.

17           Deliberation is the process of determining upon a course of action to kill as a result of thought,

18   including weighing the reasons for and against the action and considering the consequences of the

19   action.

20           A deliberate determination may be arrived at in a short period of time. But in all cases, the

21   determination must not be formed in passion, or if formed in passion, it must be carried out after there

22   has been time for the passion to subside and deliberations to occur. A mere unconsidered and rash

23

24

25

impulse is not deliberate, even though it includes the intent to kill.

Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing.

Premeditation need not be for a day, an hour, or even for a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the act follows the premeditation, it is premeditated.

    2.    *Second Degree Murder*

All murder which is not First Degree Murder is Second Degree Murder. Second Degree Murder is murder with malice aforethought, but without premeditation and deliberation.

    3.    *Conspiracy to Commit Murder - Liability for the Acts of Others*

A conspiracy is a kind of criminal partnership -- an agreement between two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. Here, you must find that there was a plan to commit murder.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an

Jury Instruction No.   20

existing conspiracy is as responsible for it as the originators. On the other hand, one who has knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

Therefore, you may find the Defendant guilty of murder if the Government has proved each of the following beyond a reasonable doubt:

First, a person who is a member of the conspiracy, whether or not that person is the Defendant, committed the crime of murder;

Second, the Defendant was a member of the same conspiracy at the time the offenses charged were committed; and

Third, the offense committed fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

### 4. *Attempted Murder*

Under Nevada law, a person commits the offense of Attempted Murder when he, or one for whose conduct he is legally responsible, performs an act which constitutes a substantial step toward the killing of an individual; and does so with the intent to kill an individual. An act done with the intent to commit murder, and tending but failing to accomplish it, is an attempt to commit that crime. To prove an attempted murder, the Government must prove that:

First, a person intended to commit the crime of murder; and

Jury Instruction No. 20

**Second**, that person did something that was a substantial step toward committing the crime, with the jury agreeing as to what act or acts constituted a substantial step.

Mere preparation is not a substantial step toward the commission of the crime. To constitute a substantial step, a person's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances.

       5.    *Aiding and Abetting in Murder*

A person may be found guilty of a crime, in this instance murder, even if they personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To prove a person guilty of aiding and abetting, the Government must prove beyond a reasonable doubt:

**First**, a specific crime was committed; in this charge, that murder was committed by someone;

**Second**, the person, either directly or indirectly, knowingly and intentionally aided, counseled, encouraged, hired, commanded, induced or procured that person to commit each element of murder; and

**Third**, the person acted before the crime was completed.

It is not enough that the person merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the person acted with the knowledge and intention of helping that person commit murder.

The Government is not required to prove precisely which person actually committed the crime and which person aided and abetted the crime.

///

Jury Instruction No.  20

**COUNT FIVE - VIOLENT CRIME IN AID OF RACKETEERING ACTIVITY**

Count Five of the Indictment charges the Defendant, Jacorey Taylor, with committing a violent crime in aid of racketeering in violation of Section 1959 of Title 18 of the United States Code. The Indictment reads as follows:

On or about November 1, 2004, in the State and District of Nevada, the Defendant, JACOREY TAYLOR, A/K/A "MO-B" . . . and others known and unknown to the Special Grand Jury, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Playboy Bloods, and for the purpose of gaining entrance to and maintaining and increasing position in the Playboy Bloods, an enterprise engaged in racketeering activity, did unlawfully, knowingly and intentionally murder Billy Thomas in violation of Nevada Revised Statutes 195.020 and 200.030.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 1959(a)(1) and (2).

The Defendant is charged with violating Section 1959 of Title 18 of the United States Code. That section provides, in relevant part:

Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . [or] maims . . . any individual in violation of the laws of any State or the United States, or attempts or conspires so to do [is guilty of a crime].

Jury Instruction No. 21

**The Third Element -**

**The Crime of Violence.**

The third element for Count Five is that the Government must prove beyond a reasonable doubt that the Defendant committed the violent crime alleged in Count Five.

In Count Five, the Government must prove beyond a reasonable doubt that Jacorey Taylor committed the murder of Billy Thomas, or aided or abetted in the murder.

The elements of murder in violation of Nevada Revised Statutes 195.020 and 200.030, the alleged crime of violence upon which this Count is predicated, are defined in Count One of these instructions and maintain the same elements and definitions for Count Five.

Jury Instruction No. 21

## COUNT SIX - USE OF A FIREARM DURING A CRIME OF VIOLENCE

Count Six of the Indictment charges Defendant Jacorey Taylor with knowingly using, carrying, and discharging a firearm during and in relation to a crime of violence, causing the death of Billy Thomas, in violation of Sections 924(c)(1) and 924(j)(1) and (2) of Title 18 of the United States Code.

Section 924(c)(1)(A) of Title 18 of the United States Code reads in relevant part:

[A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . [be guilty of a separate crime].

In order for the Defendant to be found guilty of this charge, the Government must prove each of the following elements beyond a reasonable doubt:

First, the Defendant committed the crime of Violent Crime in Aid of Racketeering as charged in Count Five, which I instruct you is a crime of violence; and

Second, the Defendant knowingly used or carried a firearm during and in relation to that crime.

Third, the Defendant in the course of using and carrying a firearm during and in relation to the crime of Violent Crime in Aid of Racketeering murdered Billy Ray Thomas.

A defendant "used" a firearm if he actively employed the firearm during and in relation to the murder.

A defendant "carried" a firearm if he knowingly possessed it and held, moved, conveyed or transported it in some manner on his person or in a vehicle.

Jury Instruction No.   22

1        A defendant used or carried a firearm "during and in relation to" the crime if the firearm

2   facilitated or played a role in the crime.

Jury Instruction No.   22

Again, the government must prove that the defendant committed or aided and abetted either first or second degree murder under federal law.

First degree murder requires proof of the following:

First, the defendant unlawfully killed Billy Ray Thomas;

Second the defendant killed Billy Ray Thomas with malice aforethought; and

Third, the killing was premeditated.

To kill with malice aforethought means to kill either deliberately and intentionally or recklessly with extreme disregard for human life.

Premeditation means with planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough, after forming the intent to kill, for the killer to have been fully conscious of the intent and to have considered the killing.

Second degree murder requires proof of the following:

First, the defendant unlawfully killed Billy Ray Thomas; and

Second, the defendant killed Billy Ray Thomas with malice aforethought.

As you can see, murder in the second degree does not require the government to prove one element required for murder in the first degree, namely premeditation.

Jury Instruction No.   22

```
1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
2      BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                             ---o0o---
3

4      UNITED STATES OF AMERICA,      :
                                      :
5                    Plaintiff,       :
                                      :  No. 2:08-CR-283-RCJ
6             -vs-                     :
                                      :  April 26 and 29, 2013
7      JACOREY TAYLOR,                 :
                                      :  Las Vegas, Nevada
8                    Defendant.        :
       _____:
9

10

11            TRANSCRIPT OF TESTIMONY OF JACOREY TAYLOR

12

13     APPEARANCES:

14     FOR THE PLAINTIFF:    NICHOLAS D. DICKINSON and
                             PHILLIP SMITH
15                           Assistant United States Attorneys
                             Las Vegas, Nevada
16
                             KEVIN L. ROSENBERG
17                           Assistant United States Attorney
                             Washington, D.C.
18

19     FOR THE DEFENDANT:    CARL J. HERMAN
                             Attorney at Law
20                           West Orange, New Jersey

21

22     Reported by:         Margaret E. Griener, CCR #3, RDR
                             Official Reporter
23                           400 South Virginia Street
                             Reno, Nevada 89501
24                           (775)329-9980

25
```

Case 2:16-17302 07/07/2021 ID: 12165760 DktEntry: 20 Page 53 of 267
Case 2:08-cr-00283-RCJ-PAL Document 908 Filed 05/20/13 Page 2 of 241

2

```
 1            LAS VEGAS, NEVADA, FRIDAY, APRIL 26, 2013, 10:40 A.M.

 2                           ---o0o---

 3

 4                   (The jury is present.)

 5            THE COURT:  Thank you, ladies and gentlemen.

 6    Please be seated.  Thank you for the recess.

 7            And, counsel, you may call your next witness.

 8            MR. HERMAN:  Thank you, Judge.  The defense

 9    calls Jacorey Taylor.

10            THE COURT:  Thank you.

11            Thank you, Mr. Taylor.

12                   J A C O R E Y   T A Y L O R,
             Defendant herein, called as a witness on his own behalf
13                   was sworn and testified as follows:

14            THE CLERK:  Please be seated.

15            Please state your name for the record.

16            THE WITNESS:  Jacorey Taylor.

17            THE CLERK:  Please spell your last name.

18            THE WITNESS:  T-a-y-l-o-r.

19            THE CLERK:  And the city and state you reside

20    in, sir.

21            THE WITNESS:  Las Vegas, Nevada.

22            THE COURT:  Thank you.  Go ahead.

23            MR. HERMAN:  Good morning, Mr. Taylor.

24            THE WITNESS:  Good morning, Carl.

25
```

1    A    When did I sell drugs around her apartment?

2    Q    Right.

3    A    I sold dope around that apartment before she stayed

4    there.

5    Q    Before she stayed there.

6    A    Yeah.  I mean --

7    Q    So, in other words, you're talking about you would sell

8    drugs in that general area.

9    A    Yeah, yeah, in the area.

10   Q    But would you operate out of her apartment?

11   A    No, sir.

12   Q    Would you use her apartment as a drug stash?

13   A    No, sir.  Contrary to her being my dad's cousin, she

14   didn't like me so -- she was another person that didn't like

15   me so --

16   Q    All right.  Let me ask you about Fabreonne Tillman.  Did

17   you know her?

18   A    Yes, sir.

19   Q    Did you have a personal relationship with her?

20   A    I -- her -- her mom raised me.  I lived with her family.

21   Q    Now, she has -- or there's been evidence that guns were

22   found in her apartment in November 17, 2004.  Do you remember

23   hearing about that?

24   A    Uh-huh.

25   Q    Do you know anything about those guns?

```
 1   A    No, sir.

 2   Q    Were they your guns?

 3   A    No, sir.

 4   Q    Did you, that day, go through the apartment?

 5   A    No, sir.  I was not over there.  I wasn't even around the

 6   area at that time.  November -- from the time I got shot --

 7              MR. SMITH:  Objection, your Honor,

 8   nonresponsive.

 9              THE COURT:  Overruled.

10              MR. HERMAN:  I think technically, if it's

11   nonresponsive to my question, I have to object.

12              THE COURT:  Go ahead.

13              MR. HERMAN:  But, in deference, I'll just

14   pinpoint it for you.

15              THE WITNESS:  Okay.

16   BY MR. HERMAN:

17   Q    November 17, 2004, were you around?

18   A    No, sir.

19   Q    Around her apartment?

20   A    No, sir.

21   Q    Did you call her and say don't let the police in this

22   house?

23   A    No, sir.

24   Q    If there were guns there, did you know there were guns?

25   A    If there was guns there, they wasn't mine.
```

```
 1   A    Yes, sir.

 2   Q    And who was there?

 3   A    To be honest with you, I couldn't tell you.  I was -- I

 4   was gone at that point.  I was emotional --

 5   Q    You were gone --

 6   A    I was a emotional wreck at that point.

 7   Q    Okay.  And how long did you stay at Fabreonne Tillman's

 8   house?

 9   A    Honestly, I can't tell you that.  I don't even know that.

10        From that day to -- for at least a week I was

11   just -- I was a emotional wreck.  I was zoned out.  I -- to be

12   honest, I didn't even know how to function.  I had to -- I

13   didn't know how to function.  That was my best friend.

14   Q    All right.  Did you get involved in any retaliation?

15   A    No, sir.  I was -- first and foremost, I was on a cane.

16   I was still on a cane.  Like I said, I couldn't walk from here

17   to there without breathing bad.

18        And you have to understand that, first of all, I

19   wasn't mad when I heard he got killed, I was sad, I was a

20   emotional wreck.  Retaliation, anything of that nature wasn't

21   even on my mind.

22   Q    Did you know or had you heard how he died?  Did you have

23   any information as to how he had died?

24   A    Yeah, they say -- when they first called me they say he

25   got shot.
```

—47

1   Q   Is that all you knew?

2   A   That's all I knew.

3   Q   Now, did you see Genell McGilbra that evening?

4   A   I thought I seen her at the hospital, yeah.

5   Q   Did you see her over at the Jets?

6   A   I didn't see her in the Jets.  I don't remember seeing

7   nobody in the Jets.  To be honest, I didn't -- I don't

8   remember anybody in the Jets.  I don't remember nobody at the

9   funeral.  Like I said I was -- emotionally, I was a wreck

10  so --

11  Q   All right.  The funeral was several -- maybe five,

12  six days later?

13  A   Yes, sir.

14  Q   A lot of people at the funeral?

15  A   Yes, sir.

16  Q   And there had been a viewing before that?

17  A   Yes, sir.

18  Q   Hundreds of people showed up?

19  A   Hundreds.

20  Q   So, Mr. Taylor, is it your testimony on November 1, 2004,

21  when Mr. Thomas was shot over in Pecos Terrace, you were not

22  there?

23  A   No, sir, no, sir.

24  Q   You had no involvement with it.

25  A   No, sir, absolutely no involvement in that.

1  Q   You didn't tell people to go there?

2  A   I was not there.  I was not over there.  I had nothing to

3  do with that.  I was not over there.

4        I had absolutely nothing to do with that murder,

5  with what happened.  I had nothing to do with that, absolutely

6  nothing to do with that.

7  Q   How long did you stay at Fabreonne Tillman's house, do

8  you know?

9  A   I don't know, I couldn't tell you that.

10  Q   Did there come a time when you went back to Kenya's?

11  A   Yes, sir.

12  Q   Was it early morning hours?

13  A   I can't tell you, sir.  I don't -- I don't know.

14        Like I said, I was -- I can't tell you from that

15  day, from that day to the funeral, to after the funeral, I

16  can't tell you.  Like I -- I was a wreck.

17        I couldn't even function.  I mean, I didn't want to

18  do nothing.  I didn't even know how to do something.  I

19  mean -- I don't know.  I was just -- I had to figure out how

20  to get through life without my best friend.  That's --

21            MR. HERMAN:  Thank you, sir.

22        Thank you, Judge.

23            THE COURT:  Thank you.

24            MR. SMITH:  Your Honor, I'm going to be longer

25  than 15 minutes.

1               UNITED STATES DISTRICT COURT
                   DISTRICT OF NEVADA

2    BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                     ---o0o---

3

4   UNITED STATES OF AMERICA,    :
                         :

5            Plaintiff,    :
                         : No. 2:08-CR-283-RCJ

6       -vs-               :
                         : April 24 and 26, 2013

7   JACOREY TAYLOR,         :
                         : Las Vegas, Nevada

8          Defendant.    :
   _____:

9

10

11        TRANSCRIPT OF TESTIMONY OF STEVEN BOOTH

12

13  APPEARANCES:

14  FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                      PHILLIP SMITH

15                    Assistant United States Attorneys
                    Las Vegas, Nevada

16
                    KEVIN L. ROSENBERG

17                    Assistant United States Attorney
                    Washington, D.C.

18

19  FOR THE DEFENDANT:   CARL J. HERMAN
                      Attorney at Law

20                    West Orange, New Jersey

21

22  Reported by:        Margaret E. Griener, CCR #3, RDR
                    Official Reporter

23                    400 South Virginia Street
                    Reno, Nevada 89501

24                    (775)329-9980

25

ER-59

1          LAS VEGAS, NEVADA, FRIDAY, APRIL 26, 2013, 9:00 A.M.

2                          ---o0o---

3

4               THE COURT:  Are you ready for the jury?

5               MR. DICKINSON:  Yes, your Honor.

6               THE COURT:  Let's see, we need Mr. Booth before

7    the jury comes.

8          Hi, Mr. Booth.  Thank you, sir.  Sorry for the

9    inconvenience of bringing you back, but we appreciate that you

10   are here.

11              The jury, please.

12                     (The jury is present.)

13              THE COURT:  Thank you, folks.  Please be seated.

14   Welcome back.  Thank you for the weekend recess.  (Laughter).

15   That's basically what -- I guess we've had a little

16   relaxation, haven't we.

17              And, in fact, we are going to end early today, we

18   have to end by three o'clock, so I've proposed to counsel that

19   we take a very short lunch break, like half an hour.  It will

20   make you captive of the cafeteria downstairs, and that's good

21   for their bottom line, but better yet, it allows me let you go

22   early since it's Friday afternoon.

23              Let's start as always, please, with appearances.

24              MR. DICKINSON:  Good morning, your Honor.

25   Nicholas Dickinson for the United States.

1      member, killing Thomas.

2              "The defendant admits that in aiding and

3      abetting the murders of Wilcox and Thomas, he acted

4      with malice aforethought, that is, he acted

5      deliberately and intentionally with extreme disregard

6      for human life.

7              "The defendant admits that the government

8      can prove beyond a reasonable doubt that the Playboy

9      Bloods racketeering activities, including drug

10     trafficking, affected interstate commerce."

11 BY MR. ROSENBERG:

12  Q   And, sir, this is from your plea agreement?

13  A   Yes.

14             THE COURT:  And, again, a caution to the jury,

15 remember, I told you before that each defendant is considered

16 differently.

17         Mr. Taylor has pled not guilty to the charges.

18 Specifically, the instruction that I give, and am required to

19 give, you are instructed that you are to draw no conclusions

20 or inferences of any kind about the guilt of this defendant,

21 Mr. Taylor, on trial, from the fact that one witness pleaded

22 guilty to similar charges.

23         The decision of this witness to plead guilty was a

24 personal decision this witness made about his own guilt.  It

25 may not be used by you in any way as evidence against -- that

1    house?

2     A    Yeah.

3     Q    What time was that?

4     A    Probably after 12:00, I believe.  I don't recall the

5    exact time.  It was nighttime though.

6     Q    And this was the home where you were living at the time

7    on West Doolittle?

8     A    Yes.

9     Q    1005 West Doolittle?

10    A    I don't know the exact address.

11    Q    When you got back to Ms. Tillman's house, who was at

12   Ms. Tillman's house?

13    A    Nobody.  She was asleep so it was just -- everybody just

14   came in with me and we all sat down.

15    Q    All right.  So at what point do people start showing up

16   at Ms. Tillman's house?

17    A    About 20 minutes later probably.

18    Q    All right.  And who showed up?

19    A    Everybody, friends.  I think it was baby mama -- Quaz's

20   baby mother.  Taylor showed up about 15 minutes later.

21    Q    So Mr. -- so you get home -- you get back to Fabreonne

22   Tillman's house about 12:30?

23    A    I don't know the time, it was just nighttime, that's all.

24   I don't know the exact time.

25    Q    Well, you said you left the hospital --

```
 1    A    I'm just estimating what time it was because the corner
 2   store closed at 11:00, and that's -- when we rolled past it,
 3   it wasn't open.  So I don't know the exact time.  It happened
 4   over eight years ago, nine years ago.  I don't know the exact
 5   time.
 6    Q    Okay.  Well, I mean, on your direct testimony you seemed
 7   pretty positive that Mr. Taylor wasn't there.  Even though
 8   it's nine years ago, you're positive about that fact, right?
 9    A    Yeah, he wasn't there.  I know he arrived, but I don't
10   know the time, the exact time.
11    Q    Okay.  Was it closer to 3:00 a.m. or closer to midnight?
12    A    Probably in between.  Could have been in between there.
13    Q    Okay.  So who besides Mr. Taylor shows up at Fabreonne
14   Tillman's house?
15    A    Jackson, Dunlap, some people that's not on the board,
16   some friends of people, Joshua, me, Genell, Sandy.
17    Q    Marcus Larry was there?
18    A    No, no.
19    Q    So it's you, Charles, Taylor, Sandy, Josh Manor and
20   Bowlie at Fabreonne Tillman's house.
21    A    There was some more people but I don't remember.
22    Q    Okay.  And you guys are just sitting in the living room?
23    A    Yeah.
24    Q    Are you drinking?
25    A    Yes.
```

 1   Q   And smoking?

 2   A   Yes.

 3   Q   And then at some point you all decide you're going to go

 4   kill some Crips.

 5   A   Basically.

 6   Q   How does it happen?  I mean, how does it go from your

 7   sitting having a drink in the living room to let's all get our

 8   guns and drive up to Northtown and kill someone?

 9   A   Just like you stated.  That's how it happened.

10   Q   You are the only person who's -- you're on the witness

11   stand and you were present in that home.  Please tell us how

12   it happened.

13   A   We was drinking, smoking, we got our guns and left.

14   Q   Well, who said let's get up and let's go kill someone?

15   A   Me.

16   Q   You did.  And what were your words?

17   A   Let's go find who did it.

18   Q   Okay.  And when you said that, you were sitting in the

19   living room with Charles Jackson, Reginald Dunlap, Jacorey

20   Taylor, Genell, Sandy and Josh Manor?

21   A   Yeah.  I left with Sandra, Genell, Josh and Dunlap.

22   Q   But when you made that comment, let's go, let's go find

23   who did it, the people who were present in the living were

24   Charles, Reginald --

25   A   No, it was people spread out through the house, living

1   room and kitchen.  So I don't know if he heard me or not, I

2   don't know, but I know the people who did heard me left with

3   me.

4   Q   So now Mr. Taylor wasn't part of the conversation.

5   A   I never said he was part of the conversation.  You said

6   that.

7   Q   So you -- well, who did you say this then to, hey, let's

8   go kill someone?

9   A   To his girlfriend, me, Dunlap and whoever hopped in the

10  car with me, the five people who was in the car with me.

11  Q   And when you say "to his girlfriend," you mean --

12  A   Genell.

13  Q   Genell.  All right.

14          So now it's you and Genell and Charles and Dunlap

15  are in the living room, and you say to them let's go.

16  A   I don't remember -- yes, we left.

17  Q   Okay.  How did everybody know to get their guns?

18  A   We was going to go hurt somebody, I'm pretty sure that's

19  common sense.

20  Q   Okay.  And it's your testimony that you didn't tell

21  Mr. Taylor about this plan.

22  A   It wasn't a plan, just acted -- it was acted really fast,

23  you know, off emotions then.

24  Q   And so Mr. Taylor was -- he was one of your good friends

25  at the time, right?

73

1    A    Yes, but he was -- barely could even walk.  He was on a

2    walker.

3    Q    All right.  You already offered the testimony that he

4    could barely move around, right, because he was shot --

5    A    Yeah.

6    Q    -- three months prior to that.

7    A    Yeah, he had open heart surgery so --

8    Q    So it's after midnight, and Mr. Taylor, who is living

9    with his companion Kenya Robinson, makes his way all the way

10   over to Fabi's house, right?

11   A    Yes.

12   Q    All right.  Middle of the night he gets up, comes over

13   because something happened to Quaza Burns.

14   A    He could have been with another girlfriend around the

15   area at the time, I don't know.

16   Q    All right, sir.  Well, my question is, Mr. Taylor,

17   hobbled as you described him, still makes his way over to

18   Fabreonne Tillman's house.

19   A    Yeah.

20   Q    All right.  So it's not as if he's bedridden, right?

21   A    No, no, he --

22   Q    He could walk?

23   A    He couldn't walk all the way, but he could, you know --

24   Q    He can move around.

25   A    Yeah.

1  Q   It's the middle of the night, and he can still move

2  around, right?

3  A   He had a girlfriend across the street from Fabreonne

4  Tillman's house so he could have been over there for all I

5  know.  I don't know.

6  Q   So he might not even have been at Kenya Robinson's house,

7  that's what you're saying?

8  A   I'm saying he could have arrived from somewhere else.  I

9  don't know.  He had girlfriends everywhere.  I don't know.

10 Q   Okay.  Well, did he walk over?

11 A   No, he came in a vehicle.

12 Q   Was he driving the vehicle?

13 A   No, he wasn't driving.

14 Q   Who dropped him off?

15 A   I don't know.

16 Q   So you don't know when he got there and who drove him and

17 where he was coming from.

18 A   I said he arrived, like, 15 minutes after we came.

19 Q   He was able to get out of the car and walk into the

20 house?

21 A   I think with a cane or something, I don't know.

22 Q   And you decide, just the five of you, and not Mr. Taylor,

23 are going to go commit this crime?

24 A   Yes.

25 Q   So witnesses who said otherwise would be wrong.

1    A    Yes.

2    Q    And if somebody inside the victim's car picked Mr. Taylor

3    out of a photo array, she would also be wrong.

4                    MR. HERMAN:  Objection to characterizing other

5    testimony.  He's not present for the testimony.  It's a matter

6    of argument to the jury, I understand that, but not with this

7    witness.

8                    THE COURT:  I'm going to sustain that one.

9                    MR. ROSENBERG:  Okay.

10                    THE COURT:  Not generally, but with respect to

11   an ID.

12                    MR. ROSENBERG:  Okay.

13   BY MR. ROSENBERG:

14   Q    Okay.  So, sir, you say to Mr. Dunlap and Genell and

15   Sandy and Mr. Manor, let's go kill someone; is that right?

16          You have to answer audibly.

17   A    Yes.

18   Q    And you're in a house full of other Playboy Bloods?

19   A    Full of people.

20   Q    Full of people.  Okay.

21          Well, Mr. Taylor was there, and he was a Playboy

22   Blood, right?

23   A    Yes.

24   Q    Okay.  And the five of you, you say, jumped in Genell's

25   car, and she drives you all around town.

```
 1   A    Yes.

 2   Q    Okay.  Where were you seated in the car?

 3   A    Backseat.

 4   Q    And where was everybody seated in the car?

 5   A    I don't know the exact seating.  Genell was driving.  I

 6   know where I was, and I know who was driving.  I don't know

 7   where everybody was sitting.

 8   Q    You said -- okay, but you know that Genell was driving.

 9   A    Yeah.  It was a car with a stick shift and nobody knew

10   how to drive a stick shift.

11   Q    It wasn't Mr. Taylor driving?

12   A    No.

13   Q    All right.  So where do you drive to first?

14   A    I don't know the apartments, just around North Las Vegas

15   in different apartment complexes.

16   Q    And you've lived in North Las Vegas yourself, right?

17   A    Yes.

18   Q    But your testimony is that even though you've lived in

19   that neighborhood, it was Genell picking the neighborhoods to

20   go to?

21   A    She was just driving around.

22   Q    All right.  You guys knew -- well, you, Genell, Dunlap

23   and J-Nut, you knew where to drive somehow?  You knew what

24   neighborhoods to go to?

25   A    Yes.
```

77

1   Q   And that's because you've lived in North Las Vegas and

2   Donna Street territory.

3   A   I stayed in one complex when I was in middle school

4   and for six months, seven months, the complex I was in at the

5   time.

6   Q   So you have lived in Crip neighborhoods.

7   A   Yes.

8   Q   So you would know where to go, too, right?

9   A   I was six or seven years old.

10  Q   So you didn't know where Crip neighborhoods were?

11  A   I'm saying, yes, it's common sense.

12  Q   So how long are the five of you driving around until you

13  get to Pecos Terrace?

14  A   Probably about 30 minutes or so.

15  Q   And you had a gun?

16  A   Yes.

17  Q   And Josh Manor had a gun?

18  A   Yes.

19  Q   And Reginald Dunlap had a gun?

20  A   Yes.

21  Q   Genell and Sandy, they didn't have guns, did they?

22  A   I think Genell had one.  She always kept a gun.

23  Q   Okay.  You pull up to Pecos Terrace, and what happens?

24  A   We get out the car.

25  Q   Well, first off, where do you park?

MARGARET E. GRIENER, RDR, CCR NO. 3, OFFICIAL REPORTER
(775) 329-9980

ER-70

—78—

1    A    In the parking lot.

2    Q    How does it happen that you decide that this is the

3    moment, this is the apartment complex where someone gets to

4    get murdered?

5    A    You don't figure it out.  If somebody is standing out,

6    then that's who get -- just happen to get shot.

7    Q    So you pull up to the -- where do you pull up?  Where do

8    you see him?

9    A    We don't see nobody.  Every apartment we went to, we

10   parked and got out the car and walked around, everybody walked

11   around like separate ways so --

12   Q    So, wait.  You're saying that you, Mr. Dunlap and

13   Mr. Manor got out of Genell's car, and you all went separate

14   ways?

15   A    I'm talking about every apartment complex we went to, we

16   got out, went separate ways around the complex until we found

17   somebody.

18   Q    Okay.  Let's focus on where you and Mr. -- the other

19   people you've talked about killed Billy Ray Thomas.

20        What did you -- what did you do when you got to the

21   Pecos Terrace Apartments?

22   A    Got out the car, walked --

23   Q    Who gets out of the car first?

24   A    I don't know who got out the car first.  We all got out

25   the car.

— 79 —

1   Q   What did you say to each other when you were getting out

2   of the car?

3   A   Nothing.

4   Q   So you pull up to this apartment complex 4:30 in the

5   morning, you all have guns, you all get out of the car, no one

6   says anything to each other.

7   A   It's about the fourth complex, we keep getting out the

8   car.  We wouldn't have had to say nothing to each other.

9   Q   Did you all have your guns out already?

10  A   No.

11  Q   Where in the apartment complex do you park?

12  A   In the back.

13  Q   Had you already seen the victim when you parked?

14  A   No, no.

15  Q   Okay.  And then what about this second car that you

16  talked about?

17  A   Yes.

18  Q   There's a second car?

19  A   Yes.

20  Q   Okay.  And the second car was before -- driving in front

21  or behind you?

22  A   Behind.

23  Q   All right.  So -- now, you didn't tell us about the

24  people in the second car, right?  You don't know who was in

25  that car?

Case 16-17203, 07/07/2021, ID: 12165360, DktEntry: 29, Page 73 of 267
Case 2:08-cr-00283-RCJ-PAL   Document 907   Filed 05/20/13   Page 80 of 123

—80—

1    A    No.

2    Q    All right.  And you say that it was a light-colored car?

3    A    Yeah.

4    Q    All right.  Well, you said that the only people you

5    talked to, that your group talked to, the private group at

6    Fabreonne's house, was you, Josh Manor, Dunlap, Genell and

7    Sandy.  So how did the second car know to follow you and where

8    you were going?

9    A    I didn't say it was a private meeting, a group.  I said

10   whoever heard me, and she was right there, she was more

11   (unintelligible) than anybody so -- and then we left and the

12   car followed.

13   Q    Well, no.  When I asked you those questions you said I

14   know Mr. Taylor didn't hear me, we were just talking amongst

15   ourselves.

16   A    Yes.

17   Q    All right.  So, but nonetheless there's another car with

18   other Playboy Blood members --

19   A    Yes.

20   Q    -- that knows to follow you through all these

21   neighborhoods --

22   A    Yes.

23   Q    -- to the Pecos Terrace.

24   A    Yes.

25   Q    So at what point did you tell this other carload of

1   people come on, we're going to go ride out for Quaz?

2   A   I never told you I tell no other car to come -- let's go

3   ride for Quaz.  I said they came.

4   Q   But it's your testimony no one told them why you were

5   driving over there.

6   A   I wasn't driving.

7   Q   You are correct.  You did say that Genell McGilbra was

8   driving.

9           Is it fair to say that you were inside of a car that

10  drove to Pecos Terrace?

11  A   Yes.

12  Q   And before you jumped in the car, you said you had a

13  conversation --

14  A   Yes, with Genell.

15  Q   -- with Genell.

16  A   And a few people.

17  Q   Okay.  You said there was a conversation amongst just

18  you, Josh Manor, Dunlap and Sandy.

19  A   I said they were the people who really heard me, and they

20  got in the car with me.

21  Q   So now you're saying there were more people that heard

22  you aside from that?

23  A   I said more people could have heard me, I don't know.

24  Q   But, nonetheless, a second car follows you.

25  A   Yes.

1   Q   All right.  So is it fair to say that you did tell more

2   people than just Sandy and Genell and Manor?

3   A   Probably so, I don't know.

4   Q   Who were these other people?

5   A   I don't know.

6   Q   Well, you seemed to know specifically that Mr. Taylor

7   wasn't one of those people, but you can't remember who any of

8   these -- who any of the other people inside the second car

9   were?

10  A   I specifically know he couldn't have been in the car

11  because when we all made it back to Fabreonne Tillman's house,

12  he wasn't there.

13  Q   All right.  How about one person in that second car?  Can

14  you tell me one person?

15  A   I don't know.  I told you I don't know.

16  Q   Okay.  Well, you said that when you drove to each

17  apartment complex, everybody would get out --

18  A   Yeah.

19  Q   And they'd look for someone.

20  A   Yes, go their separate ways and look for somebody.

21  Q   And you can't remember one name of one person who is

22  getting out of that second car.

23  A   No.

24  Q   How about who was driving the second car?

25  A   I just told you I don't remember one name so how can I

1    tell you who was driving?

2    Q   Okay.  So when you get to Pecos Terrace, when Genell is

3    driving -- I'm going to show you what's marked as Government's

4    5-3, is that -- Exhibit 5, page three, which has previously

5    been admitted in evidence.

6            Where does -- according to your testimony, where

7    does Genell park the car?

8    A   I couldn't tell you exactly where on the thing.  I don't

9    know.  We was in the back of the apartment complex somewhere.

10   Q   Where in the back of the apartment?  Where did you park

11   the car?

12   A   I don't know where the apartment complex started.

13   Q   So you're looking at the map of the Pecos Terrace

14   apartment complex.

15   A   Yeah.

16   Q   Can you remember where Billy Ray Thomas was murdered?

17   A   I just know that it was in the back of the complex, like

18   the last parking lot in the back.  So if this is the back of

19   the complex, then that's where we were, somewhere around this

20   area.

21   Q   Can you touch the screen to show where you were?

22   A   I can't even really read this map so --

23   Q   Okay.  When you and the people in the second car and in

24   your car would exit the cars and look for someone, look for a

25   Crip or rival to shoot, you said you would all go separate

1  ways?

2   A   Yeah.

3   Q   All right.  If you didn't know who the people were in the

4  second car, how would you know not to shoot them when you saw

5  them?

6   A   Because we knew there was people in the second car, they

7  was following us the whole time.

8   Q   But if you didn't know who they were, how did you know

9  not to shoot them when you came upon them in one of the ----

10   A   Everybody had on all black, black hoodies so --

11   Q   If I showed you the scene of the crime, would that help

12  you explain where you were standing and where everybody was

13  standing?

14   A   Nope.  No.

15   Q   It wouldn't.

16   A   No.

17   Q   So you vividly remember that Mr. Taylor wasn't there, but

18  you can't explain how many of the other events happened?

19   A   No, I can't just tell you where everybody -- person was

20  standing at.  That's eight, nine years ago.  Like I say, I

21  know who was with me in the car, and that's it.

22        You keep asking the same questions over and over.

23   Q   Did you see Thomas get shot?

24   A   No.

25   Q   How far away from the gunshots were you?

```
1   A   Feet away.  It was a bunch of cars so I couldn't
2   really -- I heard the gunshots, but I couldn't really see
3   where he was when he got shot or anything like that.
4   Q   Well, tell me, how many feet away from the gunshots were
5   you?
6   A   About nine cars parked, eight or nine cars parked,
7   something like that.
8   Q   And who was shooting?
9   A   I don't know.
10  Q   So you don't know -- you didn't see him shot and you
11  don't know who shot him.
12  A   No.
13  Q   You also don't know what kind of firearms they were
14  using?
15  A   No.
16  Q   All right.  How do you know that he was even shot then?
17  A   Because I'm charged with murder.
18  Q   But you, yourself, you didn't shoot him.
19  A   No.
20  Q   You had a .357-Magnum?
21  A   Yes.
22  Q   That's a revolver that doesn't expend shell casings?
23  A   Yes.
24  Q   After the gunshots, what do you do?
25  A   Jump in the car and we leave.
```

86

1    Q    And how far from the car were you -- how far from the Kia

2    were you when you heard the gunshots?

3    A    Like two, three feet.

4    Q    So you are standing directly -- well, not directly, two

5    feet from the Kia and then you hear gunshots.

6    A    Yeah.

7    Q    You don't see anything.

8    A    Basically I jump back in the car.

9    Q    All right.  So how long were you out of the car before

10   you heard the gunshots?

11   A    Probably like a minute and a half, a minute, minute.

12   Q    Okay.  And you said that Josh Manor and Dunlap got out of

13   the car?

14   A    And the other people in the other car got out of the car.

15   Q    And that was the car behind you.

16   A    Yeah.

17   Q    You don't know who any of those people were.

18   A    No.

19   Q    All right.  And when you hear the gunshots, do those

20   people run back to their car, also?

21   A    The people in our car made it to the car first and we

22   left.  So I don't -- so we got in our car before them.

23   Q    So you didn't see these people running back to you.

24   A    No.

25   Q    And you didn't see them passing you when they walked up

```
1    to the complex?
2    A    No.
3    Q    So you just got out of the car and stood there?
4    A    Yeah, I was drunk.
5    Q    So you had your gun, you're driving through all these
6    neighborhoods, but you just stood next to the car.
7    A    Yeah.
8    Q    Why did you even get out of the car in the first place
9    then if you were just going to stand there?
10   A    I was drunk, wasn't thinking right.
11   Q    Is there anything specific you can tell us about what
12   kind of car Mr. Thomas was in front of --
13   A    No.
14   Q    -- or if he was with anybody or where the car was parked?
15   A    Can't tell you that, I don't know.
16   Q    Well, now, you know, when Mr. Herman asked you the
17   questions you said you were eight feet from Mr. Thomas when he
18   was murdered.
19   A    I said it could have been eight -- it wasn't eight feet,
20   though.  I said eight cars, like.  I might have made a
21   mistake.
22   Q    All right.  So you hear shots fired, and you said that
23   Mr. Dunlap and Mr. Manor run back to your car.
24   A    Yeah.
25   Q    All right.  What did they say when they got in the car?
```

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2       BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                              ---o0o---
 3

 4    UNITED STATES OF AMERICA,     :
                                    :
 5                 Plaintiff,       :  No. 2:08-CR-283-RCJ
                                    :
 6          -vs-                    :  April 24, 2013
                                    :
 7    JACOREY TAYLOR,               :  Las Vegas, Nevada
                                    :
 8                 Defendant.       :  Volume 13
      _____:

 9

10

11                    TRANSCRIPT OF JURY TRIAL

12

13    APPEARANCES:

14    FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                           PHILLIP SMITH
15                         Assistant United States Attorneys
                           Las Vegas, Nevada
16

17                         KEVIN L. ROSENBERG
                           Assistant United States Attorney
18                         Washington, D.C.

19

20    FOR THE DEFENDANT:   CARL J. HERMAN
                           Attorney at Law
21                         West Orange, New Jersey

22

23    Reported by:         Margaret E. Griener, CCR #3, RDR
                           Official Reporter
24                         400 South Virginia Street
                           Reno, Nevada 89501
25                         (775)329-9980
```

Case 16-17388, 07/07/2021, ID: 12165762, DktEntry: 22, Page 82 of 267
Case 2:08-cr-00283-RCJ-PAL Document 927 Filed 07/23/13 Page 3 of 148

-2306-

1          THE COURT:  Yes, please.  Let's see.  Did we

2     have Mr. Stout before?

3          MR. SMITH:  No.

4          THE COURT:  No, no.

5          Good morning.  Thank you, sir.  If you'll come up to

6     the stand, please.  Be careful of the step as you come, and by

7     the chair.

8                   E R I C   S T O U T,
              called as a witness on behalf of the Government,
9                   was sworn and testified as follows:

10          THE CLERK:  Thank you.  Please be seated.

11          Please state your name for the record.

12          THE WITNESS:  Eric Stout.

13          THE CLERK:  Please spell your last name.

14          THE WITNESS:  S-t-o-u-t.

15          THE CLERK:  And the city and state you reside

16     in, sir.

17          THE WITNESS:  Las Vegas, Nevada.

18          THE COURT:  Please.  You may ask questions.

19                       DIRECT EXAMINATION

20     BY MR. SMITH:

21     Q   Sir, how are you presently employed?

22     A   With the Las Vegas Metropolitan Police Department.

23     Q   And in what capacity are you employed by the Las Vegas

24     Metropolitan Police Department?

25     A   I'm a detective assigned to the Robbery Homicide Bureau,

1   touched, does that indicate in lineup number 1,

2           "I immediately recognized number 6 at the

3       shooting that evening"?

4   A   Yes.

5   Q   If we could again go to Exhibit 16, and, for the record,

6   who is number 6 in lineup number 1?

7   A   Jacorey Taylor.

8   Q   The defendant in this case?

9   A   Yes.

10  Q   Okay.  If we could go back to Exhibit 19, Ms. Twitty's

11  lineup, and where I just touched, does Ms. Twitty indicate in

12  lineup number 3 that she recognizes number 2 but can't 100

13  percent say he was there that night?

14  A   Yes.

15  Q   So if we could then go to Exhibit 16-2, please.  And, for

16  the record, who is number 2?

17  A   Reginald Dunlap.

18  Q   Is he also known as Bowlie?

19  A   Yes.

20  Q   And then if we could go back to Exhibit 19, please.  And,

21  finally, does Ms. Twitty indicate in lineup number 6,

22          "I immediately recognized number 6 at the

23      shooting that evening"?

24  A   Yes.

25  Q   And, incidentally --

```
1              UNITED STATES DISTRICT COURT
                    DISTRICT OF NEVADA
2    BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                       ---o0o---
3

4    UNITED STATES OF AMERICA,      :
                                    :
5              Plaintiff,           :
                                    : No. 2:08-CR-283-RCJ
6         -vs-                      :
                                    : April 24 and 26, 2013
7    JACOREY TAYLOR,                :
                                    : Las Vegas, Nevada
8              Defendant.           :
     _____:
9

10

11         TRANSCRIPT OF TESTIMONY OF STEVEN BOOTH

12

13   APPEARANCES:

14   FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                          PHILLIP SMITH
15                        Assistant United States Attorneys
                          Las Vegas, Nevada
16
                          KEVIN L. ROSENBERG
17                        Assistant United States Attorney
                          Washington, D.C.
18

19   FOR THE DEFENDANT:   CARL J. HERMAN
                          Attorney at Law
20                        West Orange, New Jersey

21

22   Reported by:         Margaret E. Griener, CCR #3, RDR
                          Official Reporter
23                        400 South Virginia Street
                          Reno, Nevada 89501
24                        (775)329-9980

25
```

7

1   please.

2          Thank you very much.  I appreciate that, Marshal,

3   and please be as unobtrusive as you can.

4          A MARSHAL:  Yes, sir.

5                  (The jury is present.)

6          THE COURT:  Thank you, ladies and gentlemen, for

7   the lunch recess.  Please be seated and welcome back.

8          As I understand it, counsel, the government has

9   rested.

10          MR. DICKINSON:  That is correct, your Honor.

11          THE COURT:  And the defense is ready to proceed.

12          MR. HERMAN:  Yes, sir.

13          THE COURT:  And you may call your first witness.

14          MR. HERMAN:  Thank you, Judge.  The defense

15   calls Steven Booth to the stand.

16          THE COURT:  Thank you.  And Mr. Steven Booth is

17   here.

18          Thank you, sir.  You may remain seated.  Madam Clerk

19   will swear you if in if you will raise your right hand,

20   please.

21                  S T E V E N   B O O T H,
           called as a witness on behalf of the Defendant,
22                 was sworn and testified as follows:

23          THE CLERK:  State your name for the record.

24          THE WITNESS:  Steven Booth.

25          THE CLERK:  Please spell your last name.

1          THE WITNESS:  B-o-o-t-h.

2          THE CLERK:  And the city and state you reside

3   in.

4          THE WITNESS:  Las Vegas, Nevada.

5          THE COURT:  Thank you, Mr. Booth.

6       By the way, I do think I need to give the other

7   standard instruction to the jury, you know, about codefendants

8   and such, subject to your objection.

9          Ladies and gentlemen, you're aware already that the

10  indictment included other defendants.  I've already told you

11  at the beginning of the case every defendant is considered

12  separately, even every count against a particular defendant

13  must be considered by you separately.

14         Mr. Booth was also indicted.

15         And any of the outcomes for their separate cases, we

16  don't tell you about it, but it's for the obvious reason you

17  can't consider them anyway on the case against Mr. Taylor.

18         So I just simply caution you that, please, you must

19  not consider any status or outcome of any other codefendant's

20  case with regard to your consideration of Mr. Taylor's case.

21         Thank you.  You may proceed.

22          MR. HERMAN:  Thank you, Judge.

23       Good afternoon, Mr. Booth.

24          THE WITNESS:  Good afternoon.

25  ///

1    A    Yes.

2    Q    Tell us how you found out about that.

3    A    A phone call.

4    Q    From who?

5    A    From one of my friends, Charles.

6    Q    And what information did you receive upon that phone

7    call?

8    A    That he had been shot.

9    Q    And at that time did you know where he had been shot,

10   what part of Las Vegas he had been shot at?

11   A    Naked City.

12   Q    Naked City?

13   A    By the Stratosphere.

14   Q    And where were you when you received this information?

15   A    At Fabreonne Tillman's house, my girlfriend at the time.

16   Q    All right.  And what was the address?

17   A    Doolittle.  I don't remember the exact address number,

18   but it was on Doolittle in the Jets.

19   Q    Okay.  And you and Fabreonne Tillman were boyfriend-

20   girlfriend at that time?

21   A    Yes.

22   Q    And you were residing in that apartment?

23   A    Yes.

24   Q    Which was essentially her apartment, but you were living

25   together with her?

1    A    Yes.

2    Q    All right.  And was anyone else there when you got the

3    information that Quaza Burns had been shot?

4    A    Not at the exact time, no.

5    Q    And what did you do, if anything, at that time?

6    A    By the time I hung up the phone, one of my friends was

7    knocking at the door, and I answered the door, I told him what

8    happened, and we drove to the hospital.

9    Q    All right.  Which hospital did you drive to?

10   A    UMC.

11   Q    All right.  And had you been given information that

12   Mr. Burns had been taken to UMC?

13   A    Yes.

14   Q    And did you go to UMC?

15   A    Yes.

16   Q    And what happened when you got there?

17   A    We went to the desk and asked about him, and they say he

18   been shot numerous amount of times, and we had to come back

19   later.  They couldn't tell us nothing else.  He was in a

20   operation.

21   Q    All right.  Did you get to see Mr. Burns at that time?

22   A    No.

23   Q    Now, were there other people there at the hospital also

24   associated with Mr. Burns?

25   A    At first it was only us, we was the first two showed up.

1   Q   And did other people come after that?

2   A   Yes.

3   Q   Now, did you stay at the hospital, or did you go

4   somewhere else?

5   A   We left to go to Naked City.  Then we came back to the

6   hospital, and that's when a lot of people was there.  I don't

7   remember exactly who, but it was, like, 30, 40 people there.

8   Q   Okay.  And when you say you went to Naked City, how did

9   you get there?

10  A   Me and Charles drove.

11  Q   And what was the reason that you went over to Naked City?

12  A   To check on another friend.

13  Q   All right.  So you had other acquaintances in that area?

14  A   Yeah.

15  Q   And you were concerned for the -- how that person was

16  doing?

17  A   Yes.

18  Q   Had you been told that more than one person was shot or

19  not?

20  A   Not -- I didn't know.

21  Q   All right.  Just Quaza Burns; is that right?

22  A   Yes.

23  Q   All right.  And -- all right.  So you go to Naked City,

24  and then where did you go after that?

25  A   Back to the hospital.

1  Q   And did you learn anything at that time?

2  A   No, everything was taped off.  We couldn't get -- we had

3  an apartment over there, we wouldn't get in, so we went back

4  to the hospital.

5  Q   Okay.  And when you get back to the hospital, did you get

6  any more information?

7  A   By the time we got there, everybody was there.  They said

8  he was pronounced dead.

9             THE COURT:  There is -- I appreciate your

10 testimony, sir.  There is water there in front of you.

11 BY MR. HERMAN:

12 Q   Now, Quaza Burns, was he a friend of yours?

13 A   Yes.

14 Q   And good friend?

15 A   Yes.

16 Q   How did you react when you found out that Quaza Burns was

17 dead?

18 A   Angry, sad.

19 Q   Now, did you stay at the hospital, or did you go

20 somewhere else?

21 A   We stayed for a little while, and then I left with

22 Genell.

23 Q   You left with Genell?

24 A   Yeah.

25 Q   Now, who is Genell?

```
 1   A   Quaza's girlfriend.

 2   Q   And where did you go?

 3   A   Back to Fabi's house.

 4   Q   Now, when you got to Fabi's house, approximately what

 5   time would this have been?

 6   A   I don't know the exact time.  It was late night, like

 7   past 12:00, I believe.

 8   Q   All right.  Had you learned that Quaza Burns passed

 9   around midnight, is that when you learned?

10   A   Yeah.

11   Q   All right.  So you and Genell go back to Fabreonne

12   Tillman's house, correct?

13   A   Me, her, Sandra, and I don't remember who else was in the

14   car at the exact time.

15   Q   Okay.  Now, who is Sandra?

16   A   Her friend, Genell's friend.

17   Q   So you, Genell and Sandra go back to actually where you

18   were living.

19   A   Yeah.

20   Q   And what happened when you got to that location?

21   A   Everybody showed up over there, and we -- everybody was

22   talking, and then, like, 15, 20 minutes Taylor showed up

23   with -- I don't remember who he pulled up with, but we all

24   was, like, talking in the house.

25   Q   Let me just stop you there.  You say everybody was there.
```

1    A    About 20 people.

2    Q    All right.  Do you recall who was there?

3    A    Me, Genell, Sandy, Charles, Joshua and about seven, eight

4    other friends.  I don't remember exactly, but --

5    Q    Okay.  Were these all people who were friends of Quaza?

6    A    Yeah.

7    Q    And what was taking place at your home at that time?

8    A    Everybody was just crying and talking.

9    Q    Anybody have anything to drink?

10   A    Yes, a lot.

11   Q    And anybody using any marijuana?

12   A    Yeah, just marijuana, marijuana and alcohol.

13   Q    Marijuana and what?

14   A    Alcohol.

15   Q    Alcohol.  Now, was Jacorey Taylor there?

16   A    Yes.

17   Q    When did he arrive?

18   A    About -- probably about 15 or ten minutes after everybody

19   showed up.

20   Q    And did you have any conversations with him?

21   A    Barely.  Everybody was crying, mad.

22   Q    Now, had you obtained any information as to how Quaza

23   Burns had been shot?

24   A    They just say somebody walked up and shot him.

25   Q    Did you associate that with any other gang that shot him?

1   A   Crips.

2   Q   All right.  And as a result of your friend being shot and

3   your information that the Crips had been involved, did you

4   come to any thoughts in your mind as to what, if anything, you

5   might do?

6   A   Retaliation.

7   Q   And did you express that to other people?

8   A   Not really -- brief.  I just know -- just brief, we

9   talked about it.

10  Q   All right.  And when you say retaliation, specifically

11  what did you have in mind?

12  A   Shooting somebody else.

13  Q   To retaliate for --

14  A   Quaza's murder.

15  Q   -- Quaza's murder.

16          All right.  Now, how long did you stay at that

17  apartment?

18  A   That night?

19  Q   Yeah, right.

20  A   Probably about half hour, hour, somewhere between.

21  Q   And at that point during that time period did any more

22  people come?

23  A   Just -- I don't -- I can't recall.  You know, people

24  knock on the door and come, it was just a spot everybody come

25  in and hang out.  Everybody found out what went on, and, you

```
 1   know, they was just coming over.
 2   Q    All right.  So this was a place where people were
 3   gathering to be together after Quaza got shot?
 4   A    Yes.
 5   Q    All right.  Now, Jacorey Taylor, he had come over?
 6   A    Yes.
 7   Q    Did he stay, did he go, what was his --
 8   A    He stayed.
 9   Q    He stayed there?
10   A    Yeah.
11   Q    Now, did there come a time when you decided to leave the
12   apartment?
13   A    Yes.
14   Q    And do you know what time period that was?
15   A    Like one o'clock, 1:00 something, I don't remember the
16   exact time.
17   Q    All right.  And when you left, how did you -- did anyone
18   leave with you?
19   A    Me, Genell, Sandy and a couple of my friends.
20   Q    Mr. Taylor, did he leave with you or not?
21   A    I was in the car -- we was in one car.  I don't know who
22   was in the other car or anything.  I didn't see Taylor.  It
23   was me, Sandy, Genell, Dunlap and another friend in the car
24   together.
25   Q    All right.  So you were in car.  What kind of car?
```

—18—

```
 1    A    A white car.  I don't know the model of it.

 2    Q    Whose car?

 3    A    Genell's.

 4    Q    And so Genell was in that car?

 5    A    She was the driver.

 6    Q    All right.  And where were you in the car?

 7    A    Backseat.

 8    Q    And anyone else in that car?

 9    A    Sandy, Dunlap and Joshua.

10    Q    Okay.  Genell is driving, you're in the backseat.  Anyone

11  in the front seat with Genell?

12    A    I don't remember who exactly was in the front seat, could

13  have been Sandy, I don't know.

14    Q    Okay.  You're in the backseat with Mr. Dunlap and Joshua?

15    A    Yeah.

16    Q    Dunlap is Reginald Dunlap?

17    A    Yes.

18    Q    They call him Bowlie?

19    A    Yes.

20    Q    All right.  And Joshua is Joshua Manor?

21    A    Yes.

22    Q    Did he have a nickname?

23    A    J-Nut.

24    Q    Okay.  Now, once you get in Genell's car and Genell is

25  driving, did you go anywhere?
```

1    A    We rode around North Las Vegas.

2    Q    And what was the reason that you were riding around North

3  Las Vegas?

4    A    That's where the Crips usually -- that's where they

5  resided, in North Las Vegas.

6    Q    All right.  And was it your thinking you would go locate

7  a Crip?

8    A    Yes.

9    Q    And then retaliate?

10   A    Yes.

11   Q    Had you, yourself, had anything to drink?

12   A    Yes.

13   Q    So where was the first place that you went?

14   A    Different complexes.  I don't remember the exact complex

15  name or --

16   Q    Okay.  Do you remember the location?

17   A    Just, you know, past like Las Vegas Boulevard, around

18  that area.

19   Q    Okay.  Now, you went to one -- first you went to one

20  place, right?

21   A    Yes.

22   Q    Did you see any people there that you could identify as

23  being Crips?

24   A    No.

25   Q    Did you then go to a second place?

1    A    Yeah.

2    Q    Do you know where that was?

3    A    I don't know the apartments' name, it's been a long time

4    so -- I know it was about the second place we stopped to, the

5    apartment complex, that's when we seen Billy Thomas.

6    Q    All right.  Now, you mention Billy Thomas.  Can you tell

7    us, did you know Billy Thomas?

8    A    No.

9    Q    And where were you -- is that at Pecos Terrace?

10   A    Yes.

11   Q    All right.  Had you ever been there before?

12   A    No.

13   Q    Okay.  And do you know why Genell drove you guys to Pecos

14   Terrace, that particular location?

15   A    I guess that's where the Crips was known for being

16   hanging out at.

17   Q    Now, who was deciding where to go that night?

18   A    Really nobody.  She was just driving around.

19   Q    Okay.  You started to tell us about Billy Thomas.  When

20   you got to Pecos Terrace, was the car parked?

21   A    What car?

22   Q    The car you were in.

23   A    Yes.

24   Q    All right.  So you're in a car with the people that

25   you've indicated.  Did Genell stop the car?

1   A   Yes.

2   Q   Okay.  And once she stopped the car, what happened next?

3   A   People got out the car, shots was fired.  I ran back to

4   the car, and we left.

5   Q   Who got out?

6   A   Everybody.

7   Q   Okay.  Did Genell get out?

8   A   No, no, she didn't get out, her and Sandy, they stayed in

9   the car.

10  Q   Okay.  So Genell and Sandy stayed in the car.  Did you

11  get out?

12  A   Yes.

13  Q   Did Mr. Dunlap get out?

14  A   Yes.

15  Q   Did Joshua Manor get out?

16  A   Yes.

17  Q   Did you guys have guns?

18  A   Yes.

19  Q   Did some shooting take place that night?

20  A   Yes.

21  Q   Did you guys shoot?

22  A   I didn't shoot.  It was shots fired, I ran back in the

23  car.

24  Q   How many people shot?

25  A   I don't know.

1   Q   Someone was firing their gun, right?

2   A   Yes.

3   Q   It was either Dunlap or J-Nut or both, but you don't

4   know.

5   A   No, I wasn't that close, I don't know.

6   Q   Where were you?

7   A   Like eight feet away from the car.

8   Q   From the car that Billy Thomas was near?

9   A   The car we drove in.

10  Q   From Genell's car?

11  A   Yeah.

12  Q   All right.  So did you ever get up to the scene where

13  Billy Thomas was?

14  A   I never made it to his body.

15  Q   Did you see Billy Thomas fall?

16  A   No.

17  Q   Did you hear shots?

18  A   Yes.

19  Q   And after you heard shots, what did you see?

20  A   Nothing, I ran to the car and we left.

21  Q   And what about Mr. Dunlap and Mr. Manor, did they come

22  back?

23  A   Yes.

24  Q   Were they walking, were they running, how did they come?

25  A   We all ran to the car.

ER-99

1   Q   And, now, Jacorey Taylor, was he there?

2   A   No.

3   Q   Did you see another car?

4   A   Yes.

5   Q   Tell us about that.

6   A   I don't know who was in the car exactly.

7   Q   Say again?

8   A   I say I don't know who was in the car.

9   Q   When you had left your home --

10   A   People just got piled in cars so I don't know who hopped

11 in the car or not.

12   Q   Okay.  So you saw another car, right?

13   A   Yeah.

14   Q   Did you recognize the car, the make of the car?

15   A   Gray.

16   Q   Did you notice anyone in the car?

17   A   Yeah.

18   Q   Do you know who it was?

19   A   I know it was some friends of ours, but I don't know

20 exactly who it was.

21   Q   And you knew it was friends because they were following

22 you?

23   A   Yeah.

24   Q   And were they part of your plan to shoot a Crip?

25   A   Yeah.

1    Q    Did they actually, any of those people, get out and

2    shoot?

3    A    They got out the car, but, like I say, I don't know

4    exactly who shot.

5    Q    All right.  You didn't see the people in the other car

6    doing any shooting?

7    A    No.

8    Q    Did you see anyone doing any shooting?

9    A    No.

10   Q    You heard shots.

11   A    Yeah.

12   Q    How many shots did you hear?

13   A    Like eight, nine.

14   Q    All right.  After Mr. Dunlap and Joshua Manor, after they

15   came back and you came back into the car, did you go

16   somewhere?

17   A    Back to Fabi's house.

18   Q    And what happened when you got to Fabi's house?

19   A    Everybody talked a little bit, and -- as far as I

20   remember, and I called Taylor because I thought he was there

21   because he had just got out of surgery, he barely could walk,

22   and he said he had left and went to his baby mama house.

23   Q    Corey Taylor, that would be Jacorey Taylor.

24   A    Yes.

25   Q    So you reached him on his cell phone?

1  telling -- OGs telling the young people go kill him, go sell

2  these drugs, nothing like that.

3  Q   All right.  Well, so now we've got two paragraphs which

4  you swore were true before Judge Pro that you're now saying

5  are not true.  So you're saying you committed perjury there?

6  A   I'm saying I signed a deal.  And my lawyer gave me the

7  deal and said this is the only deal I'm getting.  I signed the

8  deal.  I'm don't want to get life, and I signed the deal.

9  Q   You stated that you agreed that,

10             "At least two acts of racketeering activity,

11        specifically second degree murder, would be committed

12        by members of the conspiracy as part of operating

13        Playboy Bloods."

14             Is that part true, racketeering crimes?  The Playboy

15  Bloods would commit racketeering crimes?

16  A   I don't even know what racketeering is all the way so --

17  the definition of it.

18  Q   Okay.  So how about did you agree that the Playboy

19  Bloods, that you guys would commit murders?

20  A   We didn't -- we didn't agree to commit a murder.  You

21  know, sometimes stuff happens and nothing just planned.

22  Q   Well, you know, we'll get to the actual murder of Billy

23  Ray Thomas.  But you guys -- you were with two carloads of

24  individuals?

25  A   Yeah.

1   Q   And you planned out what you were going to do, and then

2   you found somebody and you killed him.

3   A   Yeah.

4   Q   Okay.  And then on another occasion you and Markette

5   Tillman, standing in front of 1704 Curran Way, you murdered a

6   security guard in the Jets, didn't you?

7   A   I didn't murder no security guard.

8   Q   Well, Markette Tillman murdered the security guard,

9   right?

10  A   I don't know.

11  Q   In your plea agreement you did state, again under oath,

12  that as -- you know the security guard's name is Brian Wilcox?

13  A   Yes.

14  Q   All right.  You did state under oath that,

15          "On the 20th day of January, Wilcox and

16      another security guard approached the defendant,"

17      being you, "and several other Playboy Bloods and told

18      them they had to leave the property."

19          Did that part happen?

20  A   Yes.

21  Q   "An argument ensued."

22  A   Yes.

23  Q   That's true.

24          "As the argument became more intense, the

25      security guards rode away on their bicycles to call

—41

```
1          for backup.  A Playboy Blood fired a gun at Wilcox

2          hitting him three times.  The defendant and others

3          fled the scene."

4               That's all true.

5     A    Yeah.

6     Q    Okay.

7               "Paramedics transported Wilcox to UMC where

8          he was pronounced dead at 12:35 a.m."

9               That's all true, right?

10    A    I don't know when he was pronounced dead.

11    Q    But he died.

12    A    Yes.

13    Q    Someone shot him, and he died.

14    A    Yes.

15    Q    All right.  So that's the other murder --

16    A    Yes.

17    Q    -- that you were a part of.

18    A    Yes.

19    Q    Okay.  And you pled guilty to that.

20    A    Yes.

21    Q    And you're telling us today that you don't know who shot

22    Mr. Wilcox?

23    A    I ran.

24    Q    All right.  Well, you know, we'll also get to this point,

25    but I'll jump ahead for a second.
```

Case 2:16-13002-07/07/2021, ID: 12165760, DktEntry: 30, Page 105 of 267
Case 2:08-cr-00283-RCJ-PAL  Document 907  Filed 05/20/13  Page 42 of 123

42

```
1            Isn't it true that you, in a recorded statement,
2    told Metro homicide detectives that you handed a firearm to
3    Markette Tillman whereupon he shot the security guard dead in
4    his back?
5    A    Yes.
6    Q    You did say that.  And that's true.
7    A    No.
8    Q    Okay.  So that's another time when you said something
9    that's not true.
10   A    To get something I wanted.
11   Q    Okay.  As part of your plea agreement, you admitted also
12   you aided and abetted in the murder of Mr. Thomas --
13   A    Yes.
14   Q    -- after Quaz was killed.
15   A    Yes.
16   Q    You said that night several Playboy Blood members,
17   including yourself, met at the Jets and discussed retaliating
18   against the Crips.
19   A    Yes.
20   Q    You were part of this discussion where you discussed
21   retaliating against Crips.
22   A    Yes.
23            THE COURT:  Counsel, I think we need a brief
24   recess, correct?  The jury is requesting a brief recess.
25            MR. ROSENBERG:  Sure, of course, your Honor.
```

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2         BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                              ---o0o---
 3

 4    UNITED STATES OF AMERICA,      :
                                     :
 5                 Plaintiff,        :  No. 2:08-CR-283-RCJ
                                     :
 6            -vs-                    :  April 23, 2013
                                     :
 7    JACOREY TAYLOR,                :  Las Vegas, Nevada
                                     :
 8                 Defendant.        :  Volume 12
      _____:

 9

10

11                    TRANSCRIPT OF JURY TRIAL

12

13    APPEARANCES:

14    FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                           PHILLIP SMITH
15                         Assistant United States Attorneys
                           Las Vegas, Nevada
16

17                         KEVIN L. ROSENBERG
                           Assistant United States Attorney
18                         Washington, D.C.

19

20    FOR THE DEFENDANT:   CARL J. HERMAN
                           Attorney at Law
21                         West Orange, New Jersey

22

23    Reported by:         Margaret E. Griener, CCR #3, RDR
                           Official Reporter
24                         400 South Virginia Street
                           Reno, Nevada 89501
25                         (775)329-9980
```

ER-106

1           Thank you, ma'am, and if you would stand right there

2    and raise your right hand so we can swear you in.

3                    S A N D R A   T A Y L O R,
          called as a witness on behalf of the Government,
4                 was sworn and testified as follows:

5              THE CLERK:  Please be seated.

6          Please state your name for the record.

7              THE WITNESS:  Sandra Taylor.

8              THE CLERK:  Please spell your last name.

9              THE WITNESS:  T-a-y-l-o-r.

10             THE CLERK:  And the city and state you reside

11   in, ma'am.

12             THE WITNESS:  Las Vegas, Nevada.

13             THE CLERK:  Thank you.

14             THE COURT:  Thank you, and thank you,

15   Ms. Taylor.  We understand you're here by subpoena, and this

16   is difficult, ma'am.  We'll try to make it as easy as

17   possible, and we appreciate your attendance.

18             THE WITNESS:  All right.

19             THE COURT:  Counsel, you may ask questions.

20             MR. SMITH:  Thank you, your Honor.

21                      DIRECT EXAMINATION

22   BY MR. SMITH:

23    Q   Ms. Taylor, let's start off by -- are you obviously in

24   custody at this point?

25    A   Yes.

Case 2:16-73008-07/07/2021, ID: 12165760, DktEntry: 23, Page 108 of 267
Case 2:08-cr-00283-RCJ-PAL Document 925 Filed 07/23/13 Page 28 of 256

2104

1   A   Yes, sir.

2   Q   And can you tell the members of the jury what the term

3   crab means?

4   A   It is a -- a disrespectful slur to a Crip gang member.

5   Q   So when Stevie, based on your testimony, said I know

6   where some crab people be at, what did you take that to mean?

7   A   That -- that he knew where they were located, where they

8   would be out at.

9   Q   In order to retaliate against them?

10  A   Yes.

11  Q   And, Ms. Taylor, do you know why Stevie suggested

12  retaliating against Crips?

13  A   Because he -- he assumed that that's who had something to

14  do with Quaza's death.

15  Q   Now, after you -- before Stevie made the statement, you

16  indicated that you guys had gotten into the car?

17  A   Yes.

18  Q   Into whose car?

19  A   Genell McGilbra's car.

20  Q   The white Kia?

21  A   Yes.

22  Q   And who all got in the car?

23  A   I got in the car, Genell got in the car, Mo-B got in the

24  car, Stevie got in the car, J-Nut got in the car.

25                THE COURT:  I apologize, ma'am, I didn't hear

1          You indicated that at some point you said J-Nut and

2    Stevie got out of the car.

3    A    Yes.

4    Q    Did Mr. Taylor get out of the car, Ms. Taylor?

5    A    Not with them.

6    Q    Did he get out of the car at any point?

7    A    Yes.

8    Q    And you indicated that when he got out of the car, you

9    saw him with a firearm, a gun.

10   A    When he returned.  When he -- he had -- he had a gun.

11   Q    Okay.  And so after J-Nut and Stevie and Mr. Taylor

12   exited the vehicle, what happened next?

13   A    He left.  They came back, and we left.

14   Q    Okay.  What happened -- what I would like to know is what

15   happened after they got out of the car and before you left the

16   Pecos Terrace.

17   A    Okay.  After Stevie and J-Nut exited the vehicle, they

18   went into the apartments.

19   Q    I'm sorry, what did you say?

20   A    After they exited the vehicle --

21   Q    Yes, ma'am.

22   A    -- they went into the apartments.  Several gunshots were

23   fired.

24   Q    Uh-huh.

25   A    A minute or two later, Jacorey got out of the car, ran

1   into the apartments.  More gunshots were fired.

2   Q    Okay.  Let me ask you this.  How -- what was the time

3   delay between these two -- you know, where you hear -- these

4   two instances of hearing gunshots?

5   A    There -- I don't understand what you're saying.

6   Q    Okay.  If I understand your testimony correctly this

7   morning, what you're telling us is that first J-Nut and Stevie

8   get out of the car.

9   A    Yes.

10  Q    And shortly thereafter you hear gunshots.

11  A    Yes.

12  Q    And then you've told us today that then Mr. Taylor gets

13  out of the car.

14  A    Okay.

15  Q    And you hear more gunshots.

16  A    Right.

17  Q    My question is, how much time was it between you hearing

18  the first set of gunshots and the second set of gunshots after

19  Mr. Taylor got out of the car?

20  A    At least two minutes.

21              THE COURT:  For the record, please, and by way

22  of stipulation, hopefully, Stevie's last name is?

23              MR. SMITH:  Booth, your Honor, Steven Booth.

24              THE COURT:  And J-Nut is?

25              MR. SMITH:  Joshua Manor, M-a-n-o-r.

1              "It was, like, everyone from, like, H and L

2        was from Bloods so they kind of -- it wasn't just

3        Playboy Bloods who hung around.  So it was like -- it

4        was Bowlie, Israel, Little Duke, J-Nut, Delvin,

5        Quaza."

6    A    Okay.  Well, I'm speaking in the term of being a Blood,

7    period.  They all hung together.

8    Q    Okay.  Now --

9    A    So --

10   Q    -- was Bowlie, Reginald Dunlap, was he a Playboy Blood?

11   A    Yes.

12   Q    All right.

13   A    To my knowledge.

14   Q    Pardon?

15   A    To my knowledge, yes.

16   Q    Well, okay, everything is to your knowledge, but I

17   appreciate that.

18              In other words, is there a basis for you telling the

19   jury that Bowlie was a Playboy Blood?

20   A    He was.

21   Q    Okay.  Israel, Playboy Blood?

22   A    I'm not sure.  He was just around, so I'm assuming he was

23   some type of Blood.  I'm not -- if you were around him, he

24   must be one of them.

25   Q    All right.  Little Duke?

Case 2:16-17208-07/07/2021, ID: 12165760, DktEntry 07/23/13-9, Page 112 of 267
Case 2:08-cr-00283-RCJ-PAL Document 925 Filed 07/23/13 Page 81 of 256

2157

1    sorry, Special Agent Bakken was there, that Stevie seemed the

2    most affected by Quaza's murder.  Do you remember saying that?

3     A    Yes.

4     Q    And even though you were intoxicated at the time that

5    this was happening, you remember that, right?

6     A    Yes.

7     Q    And Taylor, that's you, went on to add that he, Stevie,

8    appeared to have lost his mind.  Do you remember saying that?

9     A    Yes.

10    Q    Now, was -- Mr. Stevie Booth, he was in the car that

11   night, right?

12    A    Yes.

13    Q    He got out of the car, right?

14    A    Yes.

15    Q    He had a gun?

16    A    Yes.

17    Q    And do you know whether or not he shot his gun that

18   night?

19    A    I heard the gunshots.

20    Q    You heard them.

21    A    So -- I don't know who -- okay.  I don't know who shot

22   what.  I just know that he exited the vehicle with a gun,

23   gunshots were fired.  I did not see anybody pull any triggers.

24   I just heard the gunshots.

25    Q    All right.  And when Booth is going in the direction of

1  day?

2  A   There was a handful of field interview cards, yes, sir.

3  Q   But outside of the car stop where you impounded the

4  weapons, no other major problems?

5  A   No other major problems.

6  Q   And have you participated in similar surveillance

7  operations of funerals of other individuals believed to be

8  gang members?

9  A   Yes, I have, several.

10  Q   And based on your experience, with 800 people at the

11  funeral, is that a large amount of people?

12  A   That's quite a bit of people, yes, sir, very large amount

13  of people.

14          MR. DICKINSON:  No further questions,

15  your Honor.

16          MR. HERMAN:  No questions, Judge, thank you.

17          THE COURT:  Thank you so much, sir.

18          THE WITNESS:  Thank you.

19              (The witness was excused.)

20          MR. ROSENBERG:  Your Honor, the government calls

21  Special Agent Scott Bakken, Retired, Federal Bureau of

22  Investigation.

23          THE COURT:  Please.  Thank you, sir, welcome.

24              S C O T T   B A K K E N,
           called as a witness on behalf of the Government,
25           was sworn and testified as follows:

Case 2:16-17292, 07/07/2021, ID: 12165768, DktEntry: 29-1, Page 114 of 267
Case 2:08-cr-00283-RCJ-PAL Document 925 Filed 07/23/13 Page 140 of 256

2216

1    THE CLERK:  Please be seated.

2         Please state your name for the record.

3         THE WITNESS:  First name is Scott, last name is

4    Bakken, and that's spelled B, as in boy, A-K-K-E-N.

5         THE CLERK:  And the city and state you reside

6    in, sir.

7         THE WITNESS:  Las Vegas, Nevada.

8         THE COURT:  Thank you, sir.

9         MR. ROSENBERG:  Good afternoon, sir.

10        THE WITNESS:  Good afternoon.

11                    DIRECT EXAMINATION

12   BY MR. ROSENBERG:

13   Q    Where do you currently work?

14   A    Currently I'm a retired FBI agent contractor assigned to

15   the FBI.

16   Q    All right.  When did you retire from the FBI?

17   A    I retired as a special agent on November 30th of 2009.

18   Q    Prior to that, how long were you a special agent with the

19   FBI?

20   A    A little over 26 years.

21   Q    Were all those 26 years spent in Las Vegas?

22   A    No.  I processed initially through the Minneapolis

23   office, then was sent to Quantico, Virginia, for four months.

24        Upon graduation from the academy, I was sent to Salt

25   Lake City, Utah, two years there.  1986, I was sent to Chicago

1    A    Yes, I believe it was shortly after midnight or

2    thereabout.

3    Q    All right.  And did you -- did you point out to

4    Ms. Robinson that it didn't make sense that they would go back

5    to the hospital 12 hours after Mr. Burns had passed away?

6    A    Yes, we did.

7    Q    And what did she do at that point?

8    A    At that point she told us that she hadn't been truthful

9    with us initially, that Mr. Taylor did not, in fact, call

10   Genell McGilbra for a ride, but that he called some other

11   individual who she didn't know who that person was.

12           She was consistent with the fact that he left the

13   apartment around eleven o'clock a.m., but she stated that he

14   did not return to the apartment at one o'clock in the morning,

15   and then we followed up with questions about asking her when,

16   in fact, he did return to the apartment.

17   Q    Now, sir, you said that she -- your words were that she

18   was consistent with the fact that he left at 11 o'clock a.m.?

19   A    Eleven o'clock p.m., I'm sorry.

20   Q    Okay.  That would be eleven o'clock p.m., October 31st,

21   the night Quaza Burns was shot?

22   A    That's correct.

23   Q    Okay.  So was Ms. Robinson able to tell who he left with,

24   or she wasn't sure?

25   A    She wasn't sure.

1    granddaughter, she knows she's locked up.

2           But was the notion that you talk to the grandmother

3    and maybe she would get Sandra to loosen up a little bit?

4    A    I wouldn't use the term loosen up; maybe tell us the

5    complete truth.

6    Q    Is that what you told -- what did you tell the

7    grandmother when you went to see her?

8    A    I told the grandmother -- obviously, she knew that her

9    granddaughter was locked up.

10          I told her grandmother that her granddaughter had

11   admitted to being in a group of people that, after the murder

12   of Quaza Burns, decided to ride for Quaz, which meant to

13   retaliate for him, and that she had left with this group of

14   people, and, as a result of that, a murder was committed.

15   Q    And what was the purpose of you telling the grandmother

16   about that?

17   A    To tell the grandmother that basically her granddaughter

18   had given us partial information on that, and that due to the

19   fact that she had put herself in that position, that the best

20   course for her would be to continue to cooperate, and that if

21   she didn't, there was the potential that she could be charged

22   for that act.

23   Q    And you said something to the effect either -- either

24   you're going to be -- either she could be a witness, or she

25   could be a defendant.  Is that the gist of what --

1  A   Well, the gist is what I just said, is that, you know,

2  basically she had given us information in participation of

3  that act, and she was basically in a position where she can be

4  a witness or, if she doesn't cooperate, she has the potential

5  for being charged for that act.

6  Q   All right.  And the potential of being charged would

7  be -- could be a RICO murder, right?

8  A   It could, yes.

9  Q   And which carries a life sentence.

10             MR. ROSENBERG:  Objection to putting sentences

11 before the jury, your Honor, and it's wrong about the

12 statutory --

13             MR. HERMAN:  It's not wrong at all, Judge.

14             MR. ROSENBERG:  The racketeering section,

15 doesn't carry that sentence.

16             THE COURT:  Yeah, it doesn't carry that --

17             MR. HERMAN:  Racketeering murder does, Judge.

18             MR. DICKINSON:  Your Honor --

19             MR. SMITH:  And, your Honor, he's placing

20 sentencing in front of the jury --

21             THE COURT:  I'm going to sustain the objection,

22 ladies and gentlemen.  As we previously told you -- first, it

23 is wrong, and, second, sentencing is a matter, unfortunately,

24 for the judge.  The jury just decides guilt or innocence.

25 ///

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2        BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                             ---o0o---
 3

 4     UNITED STATES OF AMERICA,      :
                                      :
 5                 Plaintiff,         :  No. 2:08-CR-283-RCJ
                                      :
 6          -vs-                      :  April 22, 2013,
                                      :
 7     JACOREY TAYLOR,                :  Las Vegas, Nevada
                                      :
 8             Defendant.             :  Volume 11
       _____:
 9

10

11                    TRANSCRIPT OF JURY TRIAL

12

13     APPEARANCES:

14     FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                            PHILLIP SMITH
15                          Assistant United States Attorneys
                            Las Vegas, Nevada
16

17                          KEVIN L. ROSENBERG
                            Assistant United States Attorney
18                          Washington, D.C.

19

20     FOR THE DEFENDANT:   CARL J. HERMAN
                            Attorney at Law
21                          West Orange, New Jersey

22

23     Reported by:         Margaret E. Griener, CCR #3, RDR
                            Official Reporter
24                          400 South Virginia Street
                            Reno, Nevada 89501
25                          (775)329-9980
```

1   coming.

2                   THE WITNESS:  Thank you.

3                   THE COURT:  If you have any problem with your

4   employer excusing you, ma'am, please let me know, I'll help

5   you.

6                      (The witness was excused.)

7                   THE COURT:  Please.

8                   MR. DICKINSON:  The government calls Angel

9   Moses.

10                  THE COURT:  Yes, please.

11          Thank you, ma'am.  If you'll come forward to the

12  witness stand, please.  Thank you for coming.  Be careful of

13  the step.

14              D I N N A H   A N G E L   M O S E S,
          called as a witness on behalf of the Government,
15              was sworn and testified as follows:

16                  THE CLERK:  Please be seated.

17          Please state your name for the record.

18                  THE WITNESS:  Dinnah, D-i-n-n-a-h, Angel,

19  A-n-g-e-l, Moses, M-o-s-e-s.

20                  THE CLERK:  And the city and state you reside

21  in, please.

22                  THE WITNESS:  Las Vegas, Nevada.

23                  THE CLERK:  Thank you.

24                  THE COURT:  Thank you.  You may inquire.

25                  MR. DICKINSON:  Good morning, Ms. Moses.

1    BY MR. DICKINSON:

2    Q   And, finally, Ms. Moses, were you -- did you look at

3    what's been admitted as Government Exhibit 10, a package -- I

4    believe your package indicates 7716-3 from the Clark County

5    Coroner's office?

6    A   Yes, I did.

7    Q   Four projectiles that were removed from the victim, Billy

8    Ray Thomas?

9    A   Yes, I did.

10   Q   And what, if anything, did you determine from looking at

11   those four projectiles?

12   A   From the four projectiles I was able to determine that

13   they were all consistent with 9-millimeter Luger bullets.

14            Three of them were all bearing the -- the three

15   beared similar class characteristics so they could have been

16   from one gun.

17            The other one was slightly more damaged, it was

18   difficult to say, but it did seem to match in the same class

19   characteristics as the other three bullets.  So it looked like

20   a single gun had fired all of those four.

21   Q   So from this -- from comparing the November 17th, 2004

22   firearms recovered, to the evidence from the crime scene of

23   November 1st, 2004, you determined that the four .45-caliber

24   shell casings that were marked 8, 9, 10 and 11 were fired from

25   the .45-caliber recovered at the November 17th event?

1   A    That's correct.

2   Q    And you eliminated the 9-millimeter firearm from the

3   November 17th event as having been used in the November 1st

4   scene?

5   A    That's correct, it was not used in the scene from

6   November 1st.

7   Q    And then from the cartridge casings, you determined that

8   number 12 was fired from a separate 9-millimeter firearm from

9   items 1, 2, 3, 4, 5, 6, 7 and 14 which you determined were

10  fired from a second 9-millimeter firearm.

11  A    That's correct.

12  Q    What, if anything, then did you do with the 9-millimeter

13  cartridge casings?  Did you enter them into NIBIN?

14  A    Yes, I did.

15  Q    And did you get a NIBIN hit?  Is that a proper term?

16  A    When I placed them in there, it did associate this case

17  to several other cases within the database.  So it allowed me

18  to do further examination for that 9-millimeter if it was so

19  requested.

20  Q    And was one of those events --

21               THE COURT:  That 9-millimeter, or those two

22  9-millimeters?

23               THE WITNESS:  Let me check my --

24               THE COURT:  You had two groups.

25               THE WITNESS:  Yes, I did, sir.

Case 16-17008, 07/07/2021, ID: 12165760, DktEntry: 33, Page 122 of 267
Case 2:08-cr-00283-RCJ-PAL, Document 926, Filed 07/23/13, Page 95 of 206

-1991-

 1   weapon taken in the search from Ms. Tillman's apartment on

 2   November 17th, '04, and -- am I right so far?

 3               MR. HERMAN:  I don't know if you said Luger or

 4   Ruger, it's Ruger.

 5               THE COURT:  Ruger, right?

 6               MR. DICKINSON:  Correct, your Honor.

 7               THE COURT:  All right, .45 Ruger taken from

 8   Ms. Tillman's apartment on November 17, '04, she allegedly

 9   identified the casings 8, 9, 10 and 11 at the homicide scene.

10         In addition, she identified eight 9-millimeter

11   casings at the homicide scene, locations 1, 2, 3, 4, 5, 6, 7

12   and 14, to similar casings found at the scene of multiple

13   shootings, multiple gunfire, 9-millimeter casings found on

14   December 31st, '04, at 1725 Curran Way.

15         Those are the alleged identifications, right?

16               MR. DICKINSON:  Correct, your Honor.

17         And the fact that there were nine 9-millimeter

18   casings recovered from the Billy Ray Thomas murder, eight of

19   them Ms. Moses concluded were fired from one 9-millimeter

20   firearm, and the --

21               THE COURT:  And she tied those to similar

22   casings with the IDed markings to 9-millimeter casings found

23   at the 12/31/04 event at 1725 Curran.

24               MR. DICKINSON:  Correct.  And the ninth shell

25   casing, which is item number 12 --

2002

1   Please be seated.  Thank you for the recess.  Thank you so

2   much.

3            You may begin again with your next witness.

4               MR. SMITH:  Your Honor, the government calls

5   Kenya Robinson to the stand, please.

6                        (Refer to a separate transcript for the
                          testimony of Kenya Robinson.)
7               THE COURT:  Thank you, counsel.  Go ahead.

8               MR. ROSENBERG:  Thank you, your Honor.  The

9   government calls Greg Lewis to the stand.

10               THE COURT:  Yes, please.

11            Thank you, Mr. Lewis.  If you'll come forward,

12   please, just right across the front, thank you, sir, and

13   around this side up to the witness stand.  Thank you,

14   Mr. Lewis.

15            Thank you, sir.  If you'll just stand there a

16   moment, Madam Clerk will come up -- if you'll just stand, sir,

17   Madam Clerk will come up and swear you in as a witness.  Thank

18   you.  If you'll raise your right hand, please.

19                    G R E G   L E W I S,
              called as a witness on behalf of the Government,
20                 was sworn and testified as follows:

21               THE CLERK:  Please be seated.

22            Please state your name for the record.

23               THE WITNESS:  Greg Lewis.

24               THE CLERK:  Please spell your last name.

25               THE WITNESS:  L-e-w-i-s.

---

Case 2:16-17203-07/07/2021 ID: 12165768, DktEntry: 29-1, Page 124 of 267
Case 2:08-cr-00283-RCJ-PAL Document 926 Filed 07/23/13 Page 107 of 206

2003

1          THE CLERK:  And the city and state you reside
2    in.
3          THE WITNESS:  Las Vegas, Nevada.
4          THE CLERK:  Thank you.
5          THE COURT:  Thank you, Mr. Lewis.  The attorneys
6    will ask you questions now over here, sir, and just speak into
7    the microphone so we can get your answer.
8          THE WITNESS:  Okay.
9          THE COURT:  Thank you.  Please.
10          MR. ROSENBERG:  Thank you, your Honor.
11      Good afternoon, sir.
12          THE WITNESS:  Good afternoon.
13          MR. ROSENBERG:  How are you doing, Mr. Lewis?
14          THE WITNESS:  All right.
15                  DIRECT EXAMINATION
16    BY MR. ROSENBERG:
17    Q   Just so we can get this out of the way first, I notice
18    you're wearing a red jumpsuit, Mr. Lewis.  Are you currently
19    incarcerated?
20    A   Yep.
21    Q   All right.  Is this on a federal gun charge?
22    A   Yeah.
23    Q   And are you testifying today in the hope of receiving
24    some sort of reduction on your federal gun charge?
25    A   Yeah.

Case 2:16-17208-07/07/2021 ID: 12165768 DktEntry: 23-1 Page 125 of 267
Case 2:08-cr-00283-RCJ-PAL Document 926 Filed 07/23/13 Page 128 of 206

2024

1    Q    Okay.  And who told you about all this information about

2    why Mr. Thomas was killed?

3    A    Taylor.

4    Q    Okay.  Did he tell you anything else about the events of

5    that night?

6    A    That it was early in the morning.  Two other guys, and it

7    was supposed to be five other guys, but he only told me -- he

8    named three of the other guys-- two of the other guys.

9    Q    Who did he name?

10   A    Dunlap and Booth, and he said some other guys, but they

11   wasn't in the car -- I mean, they wasn't there -- I mean, they

12   wasn't actually involved, I guess they were just there.

13   Q    Okay.  What else did he tell you?

14   A    Something about two girls was supposed to be telling on

15   him, Sandy and Jonelle (phonetic), and another time I heard

16   about the guns.

17   Q    Well, let me ask you this.  Did he say anything about

18   what he himself did that night to Mr. Thomas?

19   A    He never told me he shot him, but he said he tore him up.

20   So, I mean, I didn't know what happened to him so I can only

21   estimate.

22          He never said I shot that guy, but tearing him up --

23   I never knew what happened to the guy, so, I mean -- now,

24   that's what it means though.

25   Q    And in what context did he say I tore the guy up?  I

1    mean, what was the conversation around this?

2    A    It was about that's why -- that's why he got -- that's

3    why what happened to him happened because they shouldn't have

4    killed Quaza.

5    Q    Okay.  When you say "that's what happened to him," you're

6    referring to Billy Thomas?

7    A    Yes.

8    Q    All right.  And to be fair, did you know this person's

9    full name before I started saying Billy Thomas?

10   A    No.

11   Q    Okay.  Did you know his name at all?

12   A    What do you mean?  Did I know him?

13   Q    Well, did you know him?

14   A    No.

15   Q    Okay.  Did you know what his name was, his full name?

16   A    No.

17   Q    Okay.  Did Mr. Taylor tell you who else was at the scene

18   of the crime outside of Mr. Booth and Mr. Dunlap?

19   A    The guy named J-Nut, and I don't recall the other guy's

20   name.

21            THE COURT:  I'm sorry, I didn't hear the

22   person's name, sir.

23            THE WITNESS:  J-Nut.

24   BY MR. ROSENBERG:

25   Q    Do you know who J-Nut is?

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2        BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                              ---o0o---
 3

 4    UNITED STATES OF AMERICA,      :
                                     :
 5                   Plaintiff,      : No. 2:08-CR-283-RCJ
                                     :
 6            -vs-                    : April 19, 2013
                                     :
 7    JACOREY TAYLOR,                : Las Vegas, Nevada
                                     :
 8                   Defendant.      : Volume 10
      _____:
 9

10

11                      TRANSCRIPT OF JURY TRIAL

12

13    APPEARANCES:

14    FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                           PHILLIP SMITH
15                         Assistant United States Attorneys
                           Las Vegas, Nevada
16

17                         KEVIN L. ROSENBERG
                           Assistant United States Attorney
18                         Washington, D.C.

19

20    FOR THE DEFENDANT:   CARL J. HERMAN
                           Attorney at Law
21                         West Orange, New Jersey

22

23    Reported by:         Margaret E. Griener, CCR #3, RDR
                           Official Reporter
24                         400 South Virginia Street
                           Reno, Nevada 89501
25                         (775)329-9980
```

1          THE COURT:  Okay.

2                    (The witness was excused.)

3          MR. SMITH:  Your Honor, the government next

4   calls Jeff Louis to the stand, please.

5          THE COURT:  Are you all okay?

6       Thank you, sir.  If you'll just come forward,

7   please, to the witness stand.

8          THE WITNESS:  Good morning.

9          THE COURT:  Careful of the step.  Up by the

10  witness stand, please, and Madam Clerk will swear you in.

11       J E F F R E Y   D E N N I S   L E W I S,   S R.,
         called as a witness on behalf of the Government,
12             was sworn and testified as follows:

13         THE CLERK:  Please be seated.

14      Please state your name for the record.

15         THE WITNESS:  Jeffrey Dennis Lewis, Sr.

16         THE CLERK:  Please spell your last name.

17         THE WITNESS:  L-e-w-i-s.

18         THE CLERK:  And the city and state you reside

19  in, sir.

20         THE WITNESS:  Las Vegas, Nevada.

21         THE COURT:  You may inquire.

22         MR. SMITH:  Thank you, your Honor.

23                  DIRECT EXAMINATION

24  BY MR. SMITH:

25   Q   Mr. Lewis, how are you presently employed?

1   and it was the same individuals -- you know, 20 to -- you

2   know, 15 to 20 of the same all the time.

3   Q   Would you ever observe any of them dealing narcotics in

4   groups of each other?

5   A   I'm sorry, I'm not sure what you mean in groups of each

6   other.

7   Q   Two or three of them at the same time in the same area?

8   A   Oh, yes, absolutely, yeah, yeah.

9   Q   And would you say that was a bit of a regular occurrence?

10  A   Yes, sir.

11  Q   Can you tell us whether or not you recall if these

12  members of the Playboy Blood gang members were wearing any

13  specific colors?

14  A   Well, they didn't wear the colors all the time, but when

15  they did wear the colors it was red, red baseball caps, red

16  T-shirts.

17  Q   Now, I want to specifically bring your attention to New

18  Year's Eve 2004, December 31st, 2004.  Were you working as a

19  security guard over in the Jets that night?

20  A   Yes, sir, I was.

21  Q   Can you tell us whether or not anything alarming occurred

22  that caused you to kind of have to respond in action?

23  A   Yes, sir.  We were on the -- actually, the 3:00 p.m. to

24  11:00 p.m. shift, but we didn't have enough guys so we were

25  actually staying until 7:00 in the morning.

1            Around ten o'clock that evening there was a lot of

2    gunfire in the area, not just from the property, but from the

3    surrounding area.  When I say gunfire, from semiautomatic to

4    fully automatic weapons being fired 360 degrees around the

5    area.

6    Q   And I'm sorry to interrupt you, but just for our members

7    of the jury who may not know what a fully automatic weapon is,

8    can you explain, based on your experience, what a fully

9    automatic weapon is?

10   A   Yeah.  It's like a rifle or a pistol, instead of firing

11   once or semiautomatic, it's full (demonstrating), like

12   30-round bursts of --

13   Q   Is that commonly called a machine gun?

14   A   Yes, sir, I would say so.

15   Q   Okay.  Please continue.

16   A   So basically, I'm going to say it was around -- and this

17   is -- once again, this was a while ago, but about

18   eleven o'clock -- our security office was right there on

19   Weaver, it was, like, I think, 801 Weaver, and just down the

20   street that goes from there out to H is called Curran, and

21   there's a lot of units.  There's a common area.

22            We could hear what sounded to be handgun fire over

23   there continuous for probably five to ten minutes.  So at that

24   point, myself, Fagada Esau (phonetic) and Mike Rogers

25   responded to that location, and it was on Curran, and I'm

1   trying to remember the address --

2    Q   If you saw a map of that, an overhead map of the Sherman

3   Gardens Annex, would that help you?

4    A   Yeah, I could point right to it, absolutely.

5              MR. SMITH:  Bring up Government's Exhibit 1,

6   please.

7              THE WITNESS:  And do you just want me to point

8   with my finger?

9              MR. SMITH:  Absolutely.  You can touch on the

10  screen.

11             THE WITNESS:  Our security office was right here

12  (indicating).

13  BY MR. SMITH:

14   Q   Where you just put the yellow arrow?

15   A   Yes, sir.

16   Q   Okay.

17   A   And you could hear gunfire, like I said, 360 degrees

18  around the area.

19         This common area over here (indicating) is where a

20  lot of the handgun fire -- it sounded like handguns -- was

21  being fired.

22         So right around 11:00, on foot, we proceeded down

23  the street, and when we got right to here (indicating),

24  which -- now I'm looking -- it's 17 something, 1725 Curran,

25  there's a gap in between these two buildings.

1       As we went, which would be westbound, towards the

2  back, Esau and Rogers went to the right, I had went to the

3  left.  When we got right here (indicating) to the back, as I

4  came around the back of the porch, I obviously had my gun out

5  and a flashlight.

6       There was all kinds of shell casings that looked to

7  be -- I don't know how many different calibers, probably five

8  to ten at least, a lot of rounds.

9       As I proceeded to go to the back right about there,

10  there's a weird door at that residence, and, actually, that

11  door opens in.  As I come around, and I was looking down at

12  the ground, the door opened up, and a black male stepped out

13  of the door, and he had -- it was a semiautomatic black hand

14  pistol.  I don't know what caliber it was.

15      So at that time, you know, I ordered him to drop it.

16  They went back in, the door slammed.

17  Q   Okay.

18  A   At that time I sent the other two guys to cover the

19  front, and I took the back, and Metro was called.

20           THE COURT:  I don't understand, sir.  Did he

21  drop it or did he take it back in?

22           THE WITNESS:  No, sir, he took it back in.  He

23  did not drop -- he did not drop the gun, he took it back in,

24  and they slammed the door.

25           THE COURT:  Okay.

```
1              THE WITNESS:  I actually kicked the door one

2   time with my right foot to see if they left it open, but it

3   was locked.

4   BY MR. SMITH:

5   Q   And so did you two kind of secure both entrances and

6   exits?

7   A   Yeah, we had both.  There was no way out of that

8   apartment because Esau and Rogers were in the front, and I was

9   in the back.

10  Q   Okay.

11  A   So there was no way he could get in or out without going

12  through either the two of them or myself.

13  Q   And then --

14              THE COURT:  I'm sorry, what building there, sir?

15  Mark the building that that person was in.

16              THE WITNESS:  It's that one right there

17  (indicating).  There's two units, there's --

18              THE COURT:  Erase all the marks --

19              MR. SMITH:  Yes, sir.

20              THE COURT:  And have him remark.

21  BY MR. SMITH:

22  Q   You can actually just draw a circle around it, Mr. Lewis.

23  A   Do what?

24  Q   You can draw a circle around it with your finger.

25  A   It's this building --
```

-1738-

1              THE COURT:  Okay.

2              THE WITNESS:  And it's the unit to the right.

3    There's actually -- in that one building there's a unit to the

4    left and there's a unit to the right, and it was to the unit

5    that was on the right.

6    BY MR. SMITH:

7    Q    Now, after you and the fellow officers secured the

8    residence, did you guys notify the police?

9    A    Yeah, right -- right away, yeah.

10   Q    Okay.  And then what did you do next?

11   A    We waited for the Metropolitan Police to show up.

12   Q    And what happened after the Metropolitan Police showed up

13   in terms of what you did?

14   A    Well, I stayed at the back.

15   Q    Okay.

16   A    I secured the back of the residence.  You could hear the

17   Metro coming in.  They didn't have their sirens on, but you

18   could -- you know, they were hot on their way.

19              As they were stopping in front of that residence, I

20   heard some yelling and screaming.  It sounded like Metro

21   officers yelling to get on the ground.

22              And, once again, I'm in the back so I'm facing east,

23   north would be to my right, south would be to my left, east

24   behind me, and --

25              THE COURT:  North would be to your right or

-1739-

1    left?

2                    THE WITNESS:  Would be to my left, sir, would be

3    to my left, and south to my right.

4                    MR. SMITH:  Yes, sir.

5                    THE WITNESS:  And there was a commotion, and I'm

6    watching the door, and to my right I saw two people running

7    eastbound, and then I saw one of our guys running eastbound,

8    and then what appeared to be two Metro officers also running

9    eastbound in a foot pursuit.

10   BY MR. SMITH:

11   Q    Okay.  And then what happened?

12   A    Then the helicopter showed up, and they were there

13   circling.  They lit up the whole -- the whole area.  This

14   area, by the way, is pitch black, I mean, it's very dark,

15   there's no lights back there.

16   Q    Okay.

17   A    So they -- basically, the Metro helicopters circled

18   probably 15 or 20 times, then they left.  There was some more

19   commotion out front, and I believe that's the time when the

20   guys that were inside started coming out.

21   Q    Okay.  Did you have contact with any of the individuals?

22   A    Oh, yes, sir.

23   Q    Tell us about that.

24   A    Okay.  At the time that the Metro officers were taking

25   the guys out of the front of the house, I was directly behind

1   that rear door with my gun out, and the door opened up, and

2   there was two black males, and one of them said -- I don't

3   know if I should repeat the language --

4                   MR. HERMAN:  Objection, objection.

5                   THE COURT:  Hold on.

6                   MR. HERMAN:  I'm sorry, objection to what was

7   said, Judge.

8                   MR. SMITH:  We don't --

9                   THE COURT:  It's --

10                  MR. SMITH:  We don't know what he's going to

11  say.  I don't --

12  BY MR. SMITH:

13   Q   You don't have to tell us what the individuals said.

14  What did the individuals do?

15   A   They tried to come out the rear door.

16   Q   Okay.

17   A   There was a male in front and a male behind him.  When --

18  the guy behind the first guy must have saw me standing

19  there --

20                  THE COURT:  Hold on just a minute.  I'm going to

21  overrule the objection.  You know, they're not going to say

22  we're Playboy Bloods, we're involved in the -- in the -- in

23  crimes, so it's just simply -- we don't care about the

24  truth --

25                  MR. HERMAN:  Okay.

1      MR. SMITH:  We don't.

2      THE COURT:  -- of this, just the fact it was

3  made.  He can tell us.

4  BY MR. SMITH:

5  Q   What did the guys say when they opened the door?

6  A   Well, it was bad language.

7  Q   You can use colorful language, we're all grownups.

8  A   He said, oh, fuck, the old guy is out there.

9  Q   And they were talking about you.

10  A   They were talking about me.  Yeah, they were talking

11  about me.  And he pushed the other guy out the door --

12      THE COURT:  Sounds like hearsay to me.

13  (Laughter.)

14      THE WITNESS:  No, sir, that's exactly what

15  happened.

16      MR. HERMAN:  Certainly not true.

17      THE WITNESS:  He pushed him out the door, and at

18  that point he had a big -- the guy that came out the door had

19  a large, dark, like, down-type jacket on.

20      MR. SMITH:  Okay.

21      THE WITNESS:  So knowing that, you know, they

22  had been firing off guns, I closed the gap, and I ordered them

23  to get on the ground, lay face down, arms out to the side,

24  palms up, cross your legs, turn your head away from me.

25      MR. SMITH:  Okay.

1          THE WITNESS:  And he never really looked at me,

2   he just I been shot before, don't shoot me, don't shoot me,

3   and he did everything that I asked him to.  He got on the

4   ground.

5          At that point I was still by myself in the back.  I

6   handcuffed him, and it was a Northtown female officer that

7   finally came back, and she, you know, assisted me at that

8   time.  So that was it.

9   BY MR. SMITH:

10  Q   Then did the police department ultimately take custody of

11  that individual that you had detained?

12  A   Yes, sir.

13  Q   And then what -- what did you do after that?

14  A   Well, it was pretty much still chaotic because of all the

15  gunfire in the area.

16         Everybody was out in front of this residence.  Metro

17  had everybody handcuffed, and, once again, this was a long

18  time ago, I'm going to say there was at least 10 to 12,

19  possibly, but it could have been a couple of more besides the

20  two guys that ran.

21  Q   As you sit here today, do you recall whether any of those

22  guys were members that you had to know were -- or, excuse me,

23  were individuals that you had come to know were members of the

24  Playboy Blood gang?

25  A   Yes.

Case 2:08-cr-00283-RCJ-PAL Document 924 Filed 07/23/15 Page 108 of 234
Case 16-17298, 07/07/2021, ID: 12165762, DktEntry: 29-1, Page 139 of 267

-1799

1          THE COURT:  Thank you, sir.  If you'll come

2   forward to the witness stand, please be careful of the step as

3   you come.

4          THE WITNESS:  Thank you.

5              R O B E R T   K I N C H,
        called as a witness on behalf of the Government,
6              was sworn and testified as follows:

7          THE CLERK:  Please be seated.

8       Please state your name for the record.

9          THE WITNESS:  Robert Kinch, K-i-n-c-h.

10          THE CLERK:  And the city and state you reside

11   in, sir.

12          THE WITNESS:  Las Vegas, Nevada.

13          THE CLERK:  Thank you.

14          MR. ROSENBERG:  Good afternoon, sir.

15          THE WITNESS:  Good afternoon.

16          MR. ROSENBERG:  How are you doing.

17          THE WITNESS:  Excellent.

18          MR. ROSENBERG:  Can you take your sunglasses off

19   for court, please.

20          THE WITNESS:  Oh, I'm sorry.

21          MR. ROSENBERG:  I'm sure you forgot because

22   you've been sitting out there since this morning, right?

23                   DIRECT EXAMINATION

24   BY MR. ROSENBERG:

25    Q   All right.  Where do you currently work?

Case 2:16-17292-RCJ-PAL Document 924 ID: 12165760, DktEntry: 23-1 Page 140 of 267
Case 2:08-cr-00283-RCJ-PAL Document 924 Filed 07/23/15 Page 117 of 234

1808

```
 1   your Honor.

 2                THE COURT:  Thank you.

 3   BY MR. ROSENBERG:

 4   Q   Sir, can you take a quick look at Government's 21 and 22.

 5   A   Yes, sir.

 6   Q   Which exhibit are you looking at, what number?

 7   A   I believe it's 21.

 8   Q   All right.  Government's 21, do you recognize that as a

 9   firearm that was discovered in the home of Ms. Tillman that

10   evening?

11   A   May I just compare the serial number, please?

12   Q   Yes.

13   A   Yes, sir.

14   Q   Okay.  Is that it?

15   A   Yes, sir.

16   Q   And what make and model -- what kind of gun is that?

17   A   Ruger P90 .45-caliber.

18   Q   Okay.  And the other firearm in front of you, Exhibit 22,

19   which is that -- it's 21?  Okay.

20                MR. HERMAN:  Which is it?

21                MR. ROSENBERG:  Exhibit 21.  I stand mistaken --

22   corrected.

23                THE WITNESS:  It's a Glock 26, but I have to

24   check the serial number.

25                THE COURT:  For the record, what exhibit is he
```

 1   looking at now?

 2               MR. ROSENBERG:  That's --

 3   BY MR. ROSENBERG:

 4    Q   Sir, which exhibit?

 5    A   It's 22, it's marked 22 on the box.

 6    Q   Twenty-two.  I apologize, the previous exhibit was 21.

 7    A   Yes, sir.

 8    Q   Okay.  That is the 9-millimeter recovered that evening

 9   from Ms. Tillman's home?

10    A   Yes, sir.

11    Q   All right.  Now, after your team discovers these

12   firearms, do you come down with the firearms and present them

13   to Ms. Tillman, ask who they belong to?

14    A   Yes, sir, usually we do.  Let me refer to my report.

15    Q   Did you -- did you ask her those questions?

16    A   I'm referring to my report.

17    Q   Okay.

18    A   Yes, sir, last paragraph.

19    Q   Okay.  And after asking Ms. Tillman about the firearms,

20   as well as the 30-round magazine which was recovered, did

21   Ms. Tillman indicate to you who those firearms belonged to?

22    A   Yes, sir, she did.

23    Q   What did she say?

24    A   They belonged to her brother, Jacorey Taylor.

25    Q   Okay.  Now, when you asked her these questions, did you

1   Ms. Tillman's home, you didn't -- is it fair to say you didn't

2   look for mail and personal property and receipts and photos?

3    A   Yes, sir.

4    Q   Okay.  And is that because Ms. Tillman freely and

5   voluntarily told you that the firearms belonged to Jacorey

6   Taylor, her brother?

7    A   Yes, sir.

8               MR. ROSENBERG:  Okay.  No further questions.

9               MR. HERMAN:  Nothing further.  Thank you, Judge.

10              THE COURT:  Thank you, sir.  That's all.  You

11  may step down.

12                    (The witness was excused.)

13              THE COURT:  Madam Clerk, you may retrieve the

14  exhibits.

15          Thank you.  You may stand, please.  Everybody okay

16  for a few more minutes?

17              MR. SMITH:  Your Honor, the government next

18  calls Dr. Larry Sims, please.

19              THE COURT:  Please.  Thank you, sir.  If you'll

20  come forward to the witness stand, please.  Please be careful

21  of the step.

22                L A R R Y   S I M S,  M. D.,
              called as a witness on behalf of the Government,
23                was sworn and testified as follows:

24              THE CLERK:  Please be seated.

25          Please state your name for the record.

1      THE WITNESS:  My name is Larry Simms.

2      THE CLERK:  Please spell your last name.

3      THE WITNESS:  S-i-m-s.

4      THE CLERK:  And the city and statement you

5  reside in.

6      THE WITNESS:  Las Vegas, Nevada.

7      THE CLERK:  Thank you.

8      MR. SMITH:  Good afternoon, sir.

9      THE WITNESS:  Good afternoon.

10     DIRECT EXAMINATION

11  BY MR. SMITH:

12  Q   Can you tell the members of the jury how you're presently

13  employed.

14  A   I'm a forensic pathologist at the Clark County Coroner's

15  office.

16  Q   How long have you been working as a forensic pathologist

17  at the Clark County Coroner's office?

18  A   About 15 and a half years.

19  Q   And can you tell us generally what a forensic pathologist

20  does?

21  A   Any case that comes under the jurisdiction of the

22  coroner's office here in Clark County can be assigned to a

23  forensic pathologist, and our main work product is to

24  understand what the cause and manner of death is.

25  Q   And is there a certain examination that you generally

1842

1    Q    Okay.  And, as you've said, there were eight -- this

2    person was shot eight times, right?

3    A    Correct.

4    Q    Four of the bullets remained in his body, right?

5    A    Correct.

6    Q    And you recovered the bullets when you did the autopsy.

7    A    Correct.

8    Q    And four of the bullets struck him and kind of went

9    through.

10   A    Correct.

11   Q    Right?

12        And those other bullets, you wouldn't get involved

13   with them if they weren't still in the body; is that right?

14   A    That's correct.  No, I -- I don't know where they are or

15   if anybody even found them.

16   Q    Okay.  And in terms of the bullets that you recovered

17   during the autopsy, they were turned over to Metro?

18   A    Yes, I recovered them.  We photographed them -- well,

19   actually, we didn't photograph them then, we do now.

20        So going back to then, that's nine years ago, I

21   recovered them, I put them into a container, labeled it and

22   handed it to the evidence technician.

23   Q    Okay.  And that's the last that you have anything to do

24   with it.

25   A    That is correct.

1    THE COURT:  Thank you, sir, that's all, and

2    thank you for coming.

3           THE WITNESS:  Thank you very much.

4                (The witness was excused.)

5           MR. ROSENBERG:  Thank you, your Honor.  The

6    government calls Ms. Kadecia Williams, formerly known as

7    Kadecia Twitty.

8           THE COURT:  Thank you, ma'am, and welcome, and

9    thank you for coming.  Up to the witness stand, please.

10            K A D E C I A   W I L L I A M S,
        called as a witness on behalf of the Government,

11             was sworn and testified as follows:

12           THE CLERK:  Please be seated.

13        Please state your name for the record.

14           THE WITNESS:  Kadecia Williams.

15           THE CLERK:  And please spell your last name.

16           THE WITNESS:  W-i-l-l-i-a-m-s.

17           THE CLERK:  And the city and state you reside

18    in.

19           THE WITNESS:  Las Vegas, Nevada.

20           THE COURT:  Thank you, ma'am.

21        You may ask questions.

22           MR. ROSENBERG:  Thank you, your Honor.

23        Good afternoon, ma'am.

24           THE WITNESS:  Good afternoon.

25           MR. ROSENBERG:  I'm going to have to very

Case 2:16-17292 07/07/2021 ID: 12165762 DktEntry: 23-1 Page 146 of 267
Case 2:08-cr-00283-RCJ-PAL Document 924 Filed 07/23/15 Page 173 of 234

1869

1    involved in any gangs, right?

2    A    No.

3    Q    Okay.  And you said Billy wasn't involved with any gangs?

4    A    No.

5    Q    Okay.  So when you approached Billy's car, were you with

6    your sister?

7    A    Yes.

8    Q    All right.  And did you get into the car?

9    A    Yes.

10   Q    Where did you sit in the car?

11   A    Front passenger seat.

12   Q    Where did your sister sit?

13   A    Right behind me.

14   Q    Okay.  Was Billy with you when you went to the car, or

15   did he --

16   A    He came just a short while after.

17   Q    All right.  So he walks with you from your apartment down

18   to his mother's house?

19   A    Yes.

20   Q    And then follows you to the car?

21   A    Yes.

22   Q    Okay.  And what did he do when he got to the car?

23   A    He lifted it up and got ready to put the antifreeze in.

24   Q    When you say he lifted it up, do you mean lifted up the

25   hood?

1    A    The hood, yeah.

2    Q    And this was just the normal routine?

3    A    I'm sorry?

4    Q    This was the normal routine --

5    A    Oh, yeah, normal, every morning.

6    Q    -- put in the antifreeze, drive you to work?

7    A    Yeah.

8    Q    Okay.  At this point, when he's putting in the

9    antifreeze, do you have anything to be suspicious about or

10   worried about?

11   A    No.

12   Q    Okay.  So at some point do you start to hear gunshots?

13   A    Yes.

14   Q    Okay.  Tell me what you heard.

15   A    It was this sound like it was constant guns going off.

16   There was a lot of -- there was a lot of shots, but -- I'm not

17   sure how many, but there was a lot.

18   Q    Okay.  Were you able to see -- were you able to see Billy

19   outside of the car after the gunshots started going off?

20   A    Yes, I was.

21   Q    Okay.  And what happened?  Did he stand there, or did he

22   eventually fall to the ground?

23   A    I could see him from my left side fall to the ground.

24   Q    Okay.  And, you know, when you're indicating your left

25   side, you're in the front passenger seat, and you're able to

1   see him fall off to your left?

2    A   On the driver's side, yes.

3    Q   Okay.  And how many -- how many gunshots could you

4   estimate that you heard while you were --

5    A   I don't know.  It was a lot.

6    Q   Okay.  All right.  Did you see -- from your vantage point

7   in the car, did you see how many individuals were in front of

8   the car?

9    A   Yes.

10   Q   Okay.  And how many people were in front of the car?

11   A   I saw three.

12              THE COURT:  Are you talking about including

13  Billy or in addition?

14              THE WITNESS:  No, not including him.

15              THE COURT:  Not including him, three people.

16              THE WITNESS:  Yes, sir.

17  BY MR. ROSENBERG:

18   Q   Okay.  The people that you saw outside in addition to

19  Billy when you heard the gunshots, did you -- were you able to

20  see what kind of clothing they were wearing?

21   A   I just -- it looked like they all had on -- it was all

22  black from what I saw, but it looked like it was a black

23  hoodie.  I don't know if it was a black hat, a black hoodie,

24  but they looked like black hoodies.

25   Q   Okay.  Were you able to tell if these were -- first off,

```
 1   A   No, sir.
 2   Q   Okay.  So when Detective Long shows up, did you talk to
 3   him about what happened, what you saw?
 4   A   Yes.
 5   Q   All right.  Did you give him a description of the three
 6   people who shot Billy?
 7   A   I just gave him a brief description.  He told me -- he
 8   asked me how many people did I see, what were they wearing.
 9   Q   Okay.  And you answered these questions?
10   A   Yes, sir.
11   Q   All right.  A few days after the event, November 5th,
12   2004, did Detective Long meet you at your apartment and show
13   you a couple of photos and see if you recognized anyone in the
14   photos?
15   A   Yes.
16   Q   Okay.  And do you remember, were you able to pick anybody
17   out of the photos this four days after the murder happened?
18   A   No.
19                MR. ROSENBERG:  Okay.  If I could pull up
20   Government's Exhibit 17 which has not been admitted yet.
21   BY MR. ROSENBERG:
22   Q   Ma'am, do you recognize the handwriting on the bottom
23   part of this statement?
24   A   Yes.
25   Q   All right.  And is this your signature at the bottom?
```

 1  Exhibit 19-4?

 2   A   Yes, sir.

 3   Q   Okay.  Page 5 and page 6.  And then there's, I believe, a

 4  page 7, right?  And is this also your signature on page 7?

 5   A   Yes, sir.

 6   Q   Okay.  And are these the photo arrays that Detective

 7  Stout showed you on June 12, 2007?

 8   A   Yes.

 9          MR. ROSENBERG:  All right.  Your Honor,

10  permission to move Government's Exhibit 19 into evidence and

11  publish for the jury.

12          MR. HERMAN:  No objection.

13          THE COURT:  That may be admitted.

14              (Government's Exhibit 19 received in
                  evidence.)
15          MR. ROSENBERG:  Okay.  If we could go back to

16  page 1, please.

17  BY MR. ROSENBERG:

18   Q   Ma'am, when you -- when Detective Stout had you fill out

19  this form, he showed you six -- six separate photo arrays, the

20  photo arrays that we just scrolled through?

21   A   Yes.

22   Q   Okay.  And just focusing on lineup number 1, your writing

23  here -- first off, is this your own handwriting in the

24  statement form?

25   A   Yes, it is.

1  Q   Okay.  And so you wrote there,

2          "Lineup number 1, I immediately recognize

3      number 6 at the shooting that evening"?

4  A   Yes.

5  Q   All right.  And when you write that lineup number 1, does

6  that correspond to Government's 19-2 with the words "lineup

7  number one" at the bottom?

8  A   Yes.

9  Q   Is that the individual that you circled?

10  A   I'm sorry?

11  Q   Is that the -- is that number 6, the individual that you

12  circled saying that, "I immediately recognize him as being at

13  the shooting that night"?

14  A   Yes.

15  Q   Okay.  And is that your signature underneath the

16  photograph?

17  A   Yes, I (inaudible).

18  Q   All right.  And did Detective Stout then have you also

19  write the date of the signature and identification?

20  A   Yes.

21  Q   Okay.  And, ma'am, was that one of the individuals who

22  was present at the scene of the shooting that night?

23  A   Yes.

24  Q   All right.  Are you doing okay or do you want to take

25  a --

```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2       BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                              ---o0o---
 3

 4     UNITED STATES OF AMERICA,      :
                                      :
 5                    Plaintiff,      :  No. 2:08-CR-283-RCJ
                                      :
 6            -vs-                     :  April 18, 2013
                                      :
 7     JACOREY TAYLOR,                 :  Las Vegas, Nevada
                                      :
 8                    Defendant.      :  Volume 9
       _____:
 9

10

11                        TRANSCRIPT OF JURY TRIAL

12

13     APPEARANCES:

14     FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                            PHILLIP SMITH
15                          Assistant United States Attorneys
                            Las Vegas, Nevada
16

17                          KEVIN L. ROSENBERG
                            Assistant United States Attorney
18                          Washington, D.C.

19

20     FOR THE DEFENDANT:   CARL J. HERMAN
                            Attorney at Law
21                          West Orange, New Jersey

22

23     Reported by:         Margaret E. Griener, CCR #3, RDR
                            Official Reporter
24                          400 South Virginia Street
                            Reno, Nevada 89501
25                          (775)329-9980
```

ER-152

Case 16-17802, 07/07/2021, ID: 12165762, DktEntry: 22, Page 153 of 267
Case 2:08-cr-00283-RCJ-PAL Document 923 Filed 07/23/13 Page 9 of 295

-1433-

1          Good morning, sir, thank you.  Please come forward.

2                    D A N   L O N G,
       called as a witness on behalf of the Government,
3              was sworn and testified as follows:

4              THE CLERK:  Please be seated.

5          Please state your name for the record.

6              THE WITNESS:  Dan Long.

7              THE CLERK:  Please spell your last name.

8              THE WITNESS:  L-o-n-g.

9              THE CLERK:  And the city and state you reside

10  in, sir.

11             THE WITNESS:  Las Vegas, Nevada.

12             THE COURT:  Thank you.  Thank you, sir, for

13  coming.  You may inquire.

14             MR. ROSENBERG:  Thank you, your Honor.

15         Good afternoon, or good morning, sir.

16             THE WITNESS:  Good morning.

17             MR. ROSENBERG:  How are you doing.

18             THE WITNESS:  I'm good.

19                    DIRECT EXAMINATION

20  BY MR. ROSENBERG:

21   Q    Where do you currently work?

22   A    The Las Vegas Metropolitan Police Department.

23   Q    Okay.  How long have you been with the Las Vegas

24  Metropolitan Police Department?

25   A    More than 22 years.

1    MR. HERMAN:  Thank you.

2    BY MR. ROSENBERG:

3    Q    Detective, do we see a dead body?

4    A    Yes, this is Billy Ray Thomas here (indicating), and

5    there are cones that are laid out placed there to indicate

6    evidence.  Most of those are going to be cartridge cases, but

7    some of those are actual bullet projectiles.

8    Q    Detective, are you -- are you aware of approximately how

9    many cartridge casings were found at the scene?

10    A    I believe there was 12.

11    Q    So what -- upon arriving at the scene, taking note of the

12    scene, what do you do next?

13    A    Well, okay.  You work a crime scene from the outside in.

14    So the very last thing will be the body.  The reason for that

15    is you don't want to trample on any evidence prior to moving

16    to the body.

17            So we take a crime scene, and we move out as far as

18    what dictates from witnesses, evidence that we're seeing, and

19    then we work it inward.

20            You would like it to be pristine, but no crime scene

21    ever is.  I will work the scene with the crime scene analyst

22    and work it inward taking photos of evidence, documenting

23    evidence and impounding evidence until we get to the body.

24            Once we get to the body, we'll call the coroner out,

25    and then we work the evidence from the body, and then we move

1   BY MR. HERMAN:

2   Q    Now, you've told us, Detective, that at some point you

3   were putting pressure on.  Remember saying that?

4   A    Sure.

5   Q    On whom were you putting pressure?

6   A    A group known as the Donna Street Crips and a group known

7   as Anybody's Murderers, and a group known as Northtown

8   Gangsters.

9   Q    And what was your way of putting pressure on these

10  groups?

11  A    Sending in high police presence, arresting people for

12  crimes that they're committing, and asking directly about the

13  murder in Pecos Terrace of Billy Ray Thomas.

14  Q    And that was operating on the theory that you've just

15  described, right, that it was ABM, right?

16  A    Yes.

17  Q    And how long did you pursue that avenue of putting

18  pressure on those groups?

19  A    A couple of years.

20  Q    And you said at some point a federal task force got

21  involved?

22  A    Yes.

23  Q    And when was that?

24  A    When?

25  Q    Yeah.

1   A   I'm not sure.  It would have been -- I wouldn't have

2   allowed it until we were pretty much done with the leads that

3   we had established.  So it would have been -- I'm not -- I

4   couldn't tell you.  I would be guessing.

5   Q   Anything in your case file to tell you when you allowed

6   the Feds to help out with this investigation?

7   A   No.

8   Q   You said that based on your experience, ABM owns that

9   apartment complex; is that right?

10  A   That's correct.

11  Q   You mean they actually own it or they just run it?

12  A   They -- when I refer to owning it, a certain area will be

13  owned by a gang as in drug sales, prostitution, whatever they

14  happened to be doing, robbery, base of operation for robberies

15  whatever it may be, is owned by a certain gang.

16          If another gang comes into that area, they will know

17  who they are, and it will cause serious, serious problems

18  because everybody knew at that time that Pecos Terrace was ABM

19  turf.

20  Q   And, again, ABM, were they Crips, were they Bloods, how

21  did they fit in the gang spectrum?

22  A   They're Crips.

23  Q   Now, was there another crime scene discovered that night?

24  A   Yes.

25  Q   That was apartment 119 in Pecos Terrace?

1  occurred, you may ask him, of course.

2  BY MR. HERMAN:

3  Q   Well, all you know is you came upon a dead body, right?

4  A   No.  That's all I know?

5  Q   Well, you know what people told you, right?

6  A   Billy Ray Thomas.

7  Q   Yeah.  Billy Ray Thomas was the gentleman who died,

8  right?

9  A   Yes, sir.

10  Q   Someone told you he was mentally challenged, right?

11  A   Yes, sir.

12  Q   Who told you that?

13  A   I got it from his girlfriend, I got it from the mother, I

14  got it from a neighbor, several people.

15  Q   Now, did you also get that he was the brother of a member

16  of the Donna Street Crips and considered an associate of the

17  gang?

18          MR. ROSENBERG:  Objection.

19          MR. HERMAN:  It's in his report.

20          THE COURT:  Overruled.

21          THE WITNESS:  That he is associated with --

22  yeah, his brother is supposed to be an associate of the gang.

23          MR. HERMAN:  Right.

24          THE WITNESS:  So he associated with his brother

25  who is an associate of the gang.

1   A   Correct.

2   Q   Are you aware if they were shown -- after you gave up the

3   case or let other people work it, if they were shown

4   subsequent photo arrays?

5   A   I don't know.

6           MR. ROSENBERG:  Okay.  And if we could briefly

7   pull up Government's Exhibit 4-12 which has previously been

8   admitted into evidence, your Honor.

9           THE COURT:  Yes.

10  BY MR. ROSENBERG:

11  Q   Detective, in your experience, could someone that didn't

12  live in Pecos Terrace mistake this blue and black clothing for

13  being Crip clothing?

14  A   Yes.

15          MR. ROSENBERG:  No further questions at this

16  time, your Honor.

17                      RECROSS-EXAMINATION

18  BY MR. HERMAN:

19  Q   Detective, do you have in your case file the 911 tape?

20  A   The tape?  No.

21  Q   Or the -- were there 911 calls that night?

22  A   Yes.

23  Q   And have you listened to them?

24  A   Yes.

25  Q   And did Parrish Young make one of the calls, and his

1          LAS VEGAS, NEVADA, THURSDAY, APRIL 18, 2013, 12:41 P.M.

2                              ---o0o---

3

4                      (The jury is present.)

5                 THE COURT:  Thank you.  Please be seated, and

6    thank you for that recess and the early lunch period.  I

7    appreciate that indulgence.

8           And, Counsel, are you ready to proceed?

9                 MR. SMITH:  Yes, your Honor.  The government

10   next calls Kiaana Griffin to the stand, please.

11                THE COURT:  Yes, please.  Thank you, ma'am.

12   Thank you for coming.  If you'll come forward, please, to the

13   witness stand.  Be careful of the step.

14                THE WITNESS:  Thank you.

15                THE COURT:  Thank you, ma'am.  Madam Clerk will

16   swear you in.

17                  K I A A N A   G R I F F I N,
                called as a witness on behalf of the Government,
18                was sworn and testified as follows:

19                THE CLERK:  Please be seated.

20           Please state your name for the record.

21                THE WITNESS:  Kiaana Griffin.

22                THE CLERK:  Please spell your last name.

23                THE WITNESS:  G-r-i-f-f-i-n.

24                THE CLERK:  And the city and state you reside

25   in.

```
 1              THE WITNESS:  Las Vegas, Nevada.
 2              THE COURT:  Thank you, ma'am.  Thank you for
 3   coming.  You may ask questions, please.
 4              MR. SMITH:  Thank you, your Honor.
 5                     DIRECT EXAMINATION
 6   BY MR. SMITH:
 7    Q   Ms. Griffin, just some background information.  Did you
 8   used to go by Kiaana Liggins-Bell?
 9    A   Yes.
10    Q   I understand that you're married now and that's why you
11   go by Griffin?
12    A   Correct.
13    Q   Okay.  Ms. Griffin, did you ever live in an apartment
14   complex known as the Pecos Terrace?
15    A   Yes.
16    Q   When did you live in that apartment complex?
17    A   Roughly the end of 2003 until the end of 2004, I believe.
18    Q   Okay.  So you lived -- how long did you live there, about
19   a year?
20    A   Yeah, just about.
21    Q   And who did you live there with?
22    A   My sister.
23    Q   What's your sister's name?
24    A   Kadecia.  It was Twitty then, it's Williams now.
25    Q   Okay.  Did she get married, too?
```

1   THE COURT:  Have you ever had any custody of

2   those items before?

3   THE WITNESS:  No, sir, I did not.

4   THE COURT:  And you didn't mark the envelope?

5   THE WITNESS:  No, sir, I did not.

6   THE COURT:  Okay.  I'll just sustain the

7   objection.

8   MR. SMITH:  Thank you, your Honor.

9   Thank you, your Honor.  I pass the witness.

10  MR. HERMAN:  No questions, Judge, thank you.

11  THE COURT:  Thank you, sir, that's all, and

12  thank you for coming.

13  THE WITNESS:  Thank you, your Honor.

14  (The witness was excused.)

15  THE COURT:  Thank you.  You may call your next

16  witness.

17  MR. DICKINSON:  The government calls Genell

18  McGilbra, your Honor.

19  THE COURT:  Yes, please.

20  Thank you, ma'am.  If you would just come forward,

21  please, up to the witness stand.  Careful of the step.

22  Thank you, ma'am.  If you'll raise your right hand

23  and be sworn.

24  G E N E L L   M c G I L B R A,
    called as a witness on behalf of the Government,
25  was sworn and testified as follows:

Case 16-17282, 07/07/2021, ID: 12165768, DktEntry: 23-1, Page 162 of 267
Case 2:08-cr-00283-RCJ-PAL Document 923 Filed 07/23/15 Page 181 of 295

-1611-

1              THE CLERK:  Please be seated.

2         Please state your name.

3              THE WITNESS:  Genell McGilbra.

4              THE CLERK:  Please spell your first and last

5    name.

6              THE WITNESS:  G-e-n-e-l-l, last name,

7    M-c-G-i-l-b-r-a.

8              THE CLERK:  And the city and state you reside

9    in.

10              THE WITNESS:  Las Vegas, Nevada.

11              THE CLERK:  Thank you.

12              THE COURT:  Thank you.  You may ask questions.

13         Thank you, ma'am.  Just be mindful you need to speak

14   into the microphone so that madam court reporter can take your

15   testimony.

16              MR. DICKINSON:  Ms. McGilbra, good afternoon.

17              THE WITNESS:  Good afternoon.

18              MR. DICKINSON:  And like the judge said, you've

19   got to speak into the microphone so we can all hear you,

20   especially the court reporter.

21                    DIRECT EXAMINATION

22   BY MR. DICKINSON:

23    Q    Ms. McGilbra, where are you from?

24    A    Las Vegas.

25              MR. HERMAN:  Judge, I'm going to have trouble

1  Mr. Jomaine Bobbitt, did you know him as Jomaine Bobbitt or

2  Flap or both?

3   A   Both.

4   Q   And was he a Playboy Blood member?

5   A   Yeah.

6   Q   And how about Steven Booth, Stevie?

7   A   Yeah.

8   Q   He was a Playboy Blood member?

9   A   Yes.

10  Q   And Demichael Burks, Mikey-P?

11  A   Yeah.

12  Q   And Quaza Burns?

13  A   Quaza Burns.

14  Q   Quaza Burns?  He was a Playboy Blood?

15  A   Yeah.

16  Q   And Reginald Dunlap?

17  A   I didn't know him back then, but I met him through Quaza

18  back in probably 2006.

19  Q   You met him through Quaza in 2006?

20  A   Yeah, I think so, or -- I don't know what year, but I met

21  him through Quaza, and he wasn't a Blood or a Playboy when I

22  was hanging over there.

23  Q   And Charles Jackson, do you know X?

24  A   Yeah.

25  Q   Was he a Playboy Blood?

1   A   Yeah.

2   Q   How about Marcus Larry, Fresh?

3   A   He was a Blood but he was from the Hood.

4   Q   Is that a different Blood group?

5   A   Yes.

6   Q   Is the Hood short for 004 Hoodsmen?

7   A   Yes.

8   Q   Did you ever see him hanging around the Jets?

9   A   Yes.

10  Q   How was he able to hang around in the Jets if he wasn't a

11  Playboy Blood, or was that okay with 004 Hoodsmen?

12  A   Because he's still a Blood so he was able to hang out.

13  Q   Because he was still a Blood you said?

14  A   Yes.

15  Q   Anthony Mabry?

16  A   He was in and out of prison, but he was a Blood, yes.

17  Q   Playboy Blood?

18  A   Yes, I believe so.

19  Q   Okay.  Fred Nix, June-P?

20  A   Yeah, he was a Playboy.

21  Q   Jacorey Taylor, Mo-B?

22  A   Yeah, he was a Playboy.

23  Q   We asked about Terrence Thomas.  Markette Tillman,

24  Ketty-P?

25  A   Yeah, he was a Playboy.

1   Q   Delvin Ward, D-Love?

2   A   Yeah, he was a Playboy.

3   Q   Sebastian Wigg, Rock?

4   A   I don't know what he was, but I remember seeing him over

5   there.

6   Q   What did you see him over there doing?

7   A   Hanging out.

8   Q   Carnelius Williams, Kaos?

9   A   Yeah.

10  Q   And do you recall ever buying crack cocaine from any of

11  these people?

12  A   Yep.

13  Q   Any in particular?

14  A   Bowlie, Mo-B, Ketty, Delvin.

15  Q   And did Bowlie, Mo-B, Ketty and Delvin, did they sell

16  crack in and around the Jets?

17  A   Yep.

18  Q   Ms. McGilbra, I asked -- I had asked you if you had dated

19  anybody that was a Playboy Blood, and you said yes?

20  A   Yeah.

21  Q   Did you date Quaza Burns?

22  A   Yep.

23  Q   And approximately when did you date Quaza Burns?

24  A   2003, I believe, 2002, 2003.

25  Q   Starting in 2003?

1   Q   And did you see anyone else at the hospital that you
2   knew?
3   A   Yes.
4   Q   Who did you see?
5   A   I seen a lot of his friends, and I seen Reginald Dunlap,
6   Steven -- no, wait.  They got there later.  But I seen Jacorey
7   Taylor and his baby mama.  My mother came with my aunt and --
8   Q   And at some point did you learn that Quaza had died?
9   A   Yes.
10  Q   Do you recall what time that was?
11  A   It was after midnight, but they had told us that he had
12  died.
13  Q   And what happened then?  What did you do after you
14  learned that news?
15  A   We sat there because they was supposed to let us see his
16  body, and they ended up not letting us see his body.  So
17  Jacorey Taylor and Bowlie, they said for us to meet up at
18  Fabi's house.
19  Q   And so Jacorey Taylor, Bowlie -- that would be Reginald
20  Dunlap?
21  A   Yes.
22  Q   And you said, said for "we."  Besides you, who else do
23  you mean by "we"?
24  A   It was me and Sandra that was with me.
25  Q   Okay.  And when you say Fabi's house, who is Fabi?

1  A   It was Steven's girlfriend at the time.

2  Q   And where was her house at?

3  A   On Doolittle in the Jets.

4  Q   When you say Steven's girlfriend, you mean Steven Booth?

5  A   Yes.

6  Q   So did you then go to the Jets to Fabi and -- Fabi's

7  house?

8  A   Yes.

9  Q   And what happened when you got there?

10  A   Well, when I got there, I was told that we was going to

11  go and put in some work.

12  Q   And let me step back.  When you got there, who was there?

13  A   Steven Booth, Reginald Dunlap, Charles Jackson, Marcus

14  Larry, Jacorey Taylor.

15  Q   You were there?

16  A   And J-Nut.

17  Q   J-Nut?

18  A   Yeah.

19  Q   That's not someone that's on this -- the picture in front

20  of you?

21  A   No.

22  Q   And who is J-Nut?

23  A   Joshua -- I think his name is Joshua Manor.

24  Q   Was he a Playboy Blood?

25  A   No -- I'm not sure what he was, but I know he was a

1    Blood.

2    Q    And you said that you -- somebody said that you were

3    going to go put in some work?

4    A    Yeah.

5    Q    Do you recall who said that, or multiple people?

6    A    It was multiple people.

7    Q    And what does "put in some work" mean?

8    A    Well, put in work means we was going to go and do a

9    drive-by.

10   Q    And when you say drive-by, what do you mean?

11   A    We was going to go and find somebody to shoot.

12   Q    And why were you going to go find somebody to shoot?

13   A    Because they had figured a Crip had killed Quaza so they

14   was going to go find a Crip to kill.

15   Q    When you say "they," people figured a Crip had killed

16   him, was that the people in the house at the time?

17   A    Yes.

18   Q    And why did -- why did the people that you -- the people

19   that you named being in the house think a Crip had killed

20   Quaza?

21   A    Because when Quaza was out there serving, they said some

22   type of car pulled up and said that he wanted to buy some

23   rocks or whatever, and when Quaza had went in his pocket to

24   get the rocks or whatever, people had the gun and said

25   something kind of --

1       MR. HERMAN:  Objection, no foundation or basis

2    for this testimony.

3       MR. DICKINSON:  I'm not offering it for the

4    truth of the matter, your Honor, I'm offering it for the state

5    of mind of Ms. McGilbra and the people there for why they went

6    out to go look for a Crip to kill.

7       MR. HERMAN:  There's still -- I understand --

8    but there's still no foundation where this came from.

9       THE COURT:  Why don't you rephrase --

10      MR. DICKINSON:  Okay.

11      THE COURT:  Why did you go after a Crip.

12   BY MR. DICKINSON:

13    Q   Ms. McGilbra --

14      THE COURT:  In other words, we don't want to

15   know what other people said, ma'am, we want to know what you

16   knew, what -- why you would go look for a Crip.

17   BY MR. DICKINSON:

18    Q   When you were --

19      MR. DICKINSON:  Thank you, your Honor.

20      THE COURT:  Go ahead, please.

21   BY MR. DICKINSON:

22    Q   How long after -- at this point when the topic first gets

23   brought up about we need to go put in some work and find a

24   Crip, how long after Quaza died at the hospital was this

25   conversation going on with people at Fabi Tillman's house?

1   A   From the time I got to the hospital?

2   Q   Yeah, how long from when you learned Quaza died and you

3   left the hospital until when ultimately you're at Fabi's

4   apartment and this conversation is occurring between people?

5   A   Probably, like, 1:30 in the morning.

6   Q   And you stated that your recollection, Quaza died after

7   midnight, so an hour give or take?

8   A   Yeah.

9   Q   And my question to you is why -- why did people think

10  Quaza was killed by a Crip?

11  A   Because he was a Blood, so why would a Blood kill him.

12  Q   So it was just as simple as Quaza was a Blood, got shot,

13  a Crip must have done it?

14  A   Yeah.

15  Q   So if you recall, who first said we should go put in some

16  work?

17  A   I don't recall who first said it.

18  Q   Once the topic was brought up, were -- did anybody

19  disagree or say no, maybe we shouldn't go do this?

20  A   No.

21  Q   Okay.  What happened next?

22  A   They got to get they guns ready so that we could go out.

23  Q   And were there guns at Fabi's apartment?

24  A   Yes.

25  Q   And how many guns do you recall seeing?

1   A    Between three and four.

2   Q    Do you recall seeing between three to four guns?

3   A    Yes.

4   Q    And who had the guns?

5   A    Stevie, Reginald, I believe Fresh and Jacorey Taylor.

6   Q    And after the guns were brought out, what happened?

7   A    They was loading them up, and after that we decided that

8   we was going to leave.

9   Q    And did everybody leave?

10  A    Yeah.

11  Q    And where did you go?  Did you get in the cars?

12  A    Yes.

13  Q    How many cars?

14  A    Two.

15  Q    And what were the two cars?

16  A    It was Reginald's Cutlass, a blue -- I think it's a

17  Cutlass, but it's blue, and my Kia Spectra.

18  Q    You were driving a Kia Spectra?

19  A    I wasn't driving at this time, but --

20  Q    I mean, you owned the Kia --

21  A    Yes.

22  Q    -- that you drove to the hospital and back to Fabreonne's

23  apartment?

24  A    Yeah.

25  Q    What color was your Kia Spectra?

1  A   White.

2  Q   Two or four doors?

3  A   Four.

4  Q   Do you recall the car that you said Mr. Dunlap or Bowlie

5  was driving, was that two or four doors?

6  A   Four.

7  Q   And who was in your car?

8  A   Jacorey Taylor, Sandra Taylor, Steven Booth and myself.

9  Q   And you said you weren't driving.  Where were you

10  sitting?

11  A   In the passenger seat.

12  Q   Who was driving?

13  A   Jacorey Taylor.

14  Q   And Steven Booth and Sandra Taylor were in the back?

15  A   Yes.

16  Q   The same name Taylor, to the best of your knowledge, is

17  there any relation between Sandra Taylor and Jacorey Taylor?

18  A   No.

19  Q   And who -- if you know, who was driving the other car?

20  A   Bowlie.

21  Q   And who were the other -- did everyone else that was in

22  the apartment get in the other car?

23  A   Yes.

24  Q   And that was X?

25  A   X.

Case 2:16-17302 07/07/2021 ID: 12165768 DktEntry: 23-1 Page 173 of 267
Case 2:08-cr-00283-RCJ-PAL Document 923 Filed 07/23/13 Page 203 of 295

1633

1    Q    Fresh?

2    A    Fresh.

3    Q    J-Nut?

4    A    And J-Nut.

5    Q    Where did you go?

6    A    We drove to Carey Arms Apartments and after that --

7    Q    Why did you go to the Carey Arms Apartments?

8    A    Because Crips hang out there.

9    Q    Were you looking for any particular Crip?

10   A    No.

11   Q    Did you know if there were -- in Las Vegas, were there

12   more than one Crip group?

13   A    Yes.

14   Q    You were aware of that?

15   A    Yes.

16   Q    But there wasn't any specific Crip group that the group

17   was looking for?

18   A    No.

19   Q    So you went to the Carey Arms?

20   A    Yes.

21   Q    And what happened at the Carey Arms?

22   A    There was nobody outside.

23   Q    And so what happened then?

24   A    We went to the Little Carey Arms on Lake Mead, and after

25   there we went to the Big Carey Arms on Carey and, like, Martin

1  Luther King, and there was nobody out there, so we went --

2   Q   Let me stop you there.  The Little Carey Arms is the

3  first place.  The second Carey Arms, was that also a place

4  where you believed you -- a Crip would be found?

5   A   Yeah.

6   Q   And then you said you didn't find anyone there.  Where

7  did you go next?

8   A   To Donna Street.

9   Q   Do you recall where?

10   A   Donna Street Apartments.

11   Q   Oh, I apologize.  You said Donna Street, Donna Street

12  Apartments?

13   A   Yeah.

14   Q   And why did you go there?

15   A   Because the Crips hang out there.

16   Q   Specifically the Donna Street Crips?

17   A   Yeah.

18   Q   And did anything happen when you drove in and around the

19  area of Donna Street?

20   A   No.

21   Q   Where did you go next?

22   A   To Pecos Terrace Apartments.

23   Q   Do you recall where the Pecos Terrace apartment complex

24  is?

25   A   Do I recall what?

Case 2:16-17292 07/07/2021 ID: 12165768 DktEntry: 23-1 Page 175 of 267
Case 2:08-cr-00283-RCJ-PAL Document 923 Filed 07/23/15 Page 205 of 295

1635

1   Q   Do you recall the general area of where the Pecos Terrace

2   apartment complex is?

3   A   On Lake Mead and Pecos.

4   Q   And you drove into the complex?

5   A   Yeah.

6   Q   Or you were in the car that drove into the complex?

7   A   Yeah.

8   Q   As you entered the complex, do you recall which car --

9   were the cars following each other?

10  A   We was following Bowlie.

11  Q   So the car you were in --

12  A   Was the second car.

13  Q   -- was the second car?

14  A   Yeah.

15  Q   So you pull into the apartment complex?

16  A   Yes.

17  Q   And what happens?

18  A   We made a left, and then we made a right, and we went

19  down, and we made another right, and we went down a little

20  more and made another right, and that's when someone was

21  outside fixing on their car.

22  Q   All right.  When you left Donna and went to Pecos, why

23  did you go to Pecos Terrace?

24  A   Because I guess that's where Crips hang out.

25  Q   You didn't know at that point in time?

MARGARET E. GRIENER, RDR, CCR NO. 3, OFFICIAL REPORTER
(775) 329-9980

ER-175

```
 1   A   No.

 2   Q   Now, you said you saw someone working on their car?

 3   A   Yes.

 4   Q   You personally saw somebody working on their car?

 5   A   Yeah.

 6   Q   And you were in the driver's seat?

 7   A   I was in the passenger seat.

 8   Q   I mean the front passenger seat.

 9   A   Yeah.

10   Q   And what happened after -- you saw someone working on the

11   car, what happened next?

12   A   That's when Bowlie, Stevie and Jacorey got out of the

13   car.

14   Q   So Jacorey was next to you -- Jacorey Taylor was next to

15   you in the car?

16   A   Yeah.

17   Q   Stevie was behind you -- I mean, he was --

18   A   Behind Jacorey.

19   Q   Behind Jacorey in the car, and you were in the car so you

20   saw and heard them get out of car?

21   A   Yeah.

22   Q   And then was the car that Reginald Dunlap, Bowlie driving

23   in front of you?

24   A   Yes.

25   Q   You saw him get out of car?
```

1    A    Yes.

2    Q    Do you recall if anyone else got out of the car?

3    A    No.

4    Q    What were Jacorey, Stevie and Reginald Dunlap wearing?

5    A    All black, a black hoodie and some black jeans probably.

6    Q    And when you say black hoodie, what do you mean?

7    A    Like a sweatshirt with a hood.

8    Q    And were the hoods -- did they have the hoods up or down?

9    A    They had them up.

10   Q    And when they got out of the car, were they carrying

11   anything?

12   A    Yes.

13   Q    And what was that?

14   A    Guns.

15   Q    All three of them?

16   A    Yes.

17   Q    What happened next?

18   A    They walked up to the dude, and that's when I turned my

19   head, and after that, that's when I heard shots.

20   Q    What -- do you recall where the person -- you said the

21   person working on their car, where they were?

22   A    He was on, like, the side, the left side of his car.

23   Q    And the car was outside?

24   A    Yes.

25   Q    Was there anything -- was it parked under anything or --

```
 1    A    It was parked under a little parking area, a little
 2   shaded area.
 3    Q    You say he was to the left of it?
 4    A    Yes.
 5    Q    From your vantage point?
 6    A    Yes.
 7    Q    And what did you hear?  Did you hear anybody say
 8   anything?
 9    A    I heard Bowlie, he said, "What's up, cuz," and I heard
10   the dude say -- he said, "What's up," and --
11    Q    If you would back just a little bit from the -- too
12   close, too far.
13            You said Bowlie -- you heard him say, "What up,
14   cuz"?
15    A    Yes, and the dude said, "What's up," and that's when
16   Bowlie said, "Get him."
17    Q    You recognized Bowlie's voice?
18    A    Yes.
19    Q    Were the windows in the car up or down?  How did you hear
20   this?
21    A    My window was cracked a little bit.
22    Q    And what, if anything, did you hear next?
23    A    Gunshots.
24    Q    Do you recall approximately how many gunshots?
25    A    No.
```

1   Q   One, two, a few?

2   A   A few.

3   Q   More than five?

4   A   Huh?

5   Q   More than five?

6   A   Yeah.

7   Q   Can you approximate how long the gunshots lasted?

8   A   No.

9   Q   Did you see anything else?

10  A   Huh-uh.

11  Q   You saw the individual before -- before you heard

12  gunshots when you came in you said?

13  A   Yeah.

14  Q   Had you ever seen this individual before?

15  A   No.

16  Q   Do you recall what that person was wearing?

17  A   No.

18              MR. DICKINSON:  One second, your Honor.

19              THE COURT:  Uh-huh.

20                  (Discussion held off the record.)

21              MR. DICKINSON:  I apologize, your Honor, just

22  one more second.

23  BY MR. DICKINSON:

24  Q   So, Ms. McGilbra, as you sit here today, you don't recall

25  actually seeing the person get shot?

1   A    No, because I turned my head.

2   Q    When -- at some point after this occurred, you had --

3   skipping ahead to 2007, you had -- the FBI came and talked to

4   you?

5   A    Yes.

6   Q    And detectives with Las Vegas Metro?

7   A    Yes.

8   Q    And they asked you some questions, and eventually you

9   told them what you have so far been telling us today?

10  A    Yes.

11  Q    Do you recall telling them that you actually saw -- saw

12  the person being shot and saw actually one of the three walk

13  up on top of him and shoot?

14  A    I don't -- I don't recall.  I don't remember, actually,

15  to tell you the truth.

16  Q    When -- when you stopped hearing the shooting, what

17  happened next?

18  A    We got back in the car -- well, they got back in the car

19  and --

20  Q    Did the same two people, Jacorey Taylor and Steven Booth,

21  get back into your car?

22  A    Yes.

23  Q    Did you see Reginald Dunlap get back into the blue car?

24  A    Yes.

25  Q    And what happened?  Did anybody say anything?

```
 1   A   No.

 2   Q   When -- backing up, before -- before they got back in the

 3   car and you heard the sound, did you say anything to

 4   Ms. Taylor?

 5   A   Yes.

 6   Q   What did you say?

 7   A   I said, "Oh, my God, Bitch."

 8   Q   So nothing was said when they got back into the car?  If

 9   you recall.

10   A   I don't recall.

11   Q   So what happened, then, after they got back into the car?

12   Did you leave the scene?

13   A   Yeah.

14   Q   Do you remember anything -- where did you go to?

15   A   To Fabi's house.

16   Q   Do you remember anything from when you left the scene to

17   Fabi's house?

18   A   What do you mean?

19   Q   Excuse me?

20   A   What do you mean?

21   Q   Just -- did they say anything, was there anything in

22   particular?  Were you just -- on the drive back to Fabi's

23   house.

24   A   I just remember the drive back.

25   Q   Was there any music playing?
```

Case 2:08-cr-00283-RCJ-PAL Document 923 Filed 07/23/15 Page 212 of 295
Case 16-17298, 07/07/2021, ID: 12165768, DktEntry: 29-1, Page 182 of 267

1642

1   A    Yes.

2   Q    What kind of music?

3   A    It was a song by the Franchize Boyz called White Tee.

4   Q    And how, sitting here today, can you remember there was a

5   song by the Franchize Boyz called Black Tee [sic] playing?

6   A    Because that was, like, a song that me and -- me and

7   Sandra, and me and Stevie and sometimes Jacorey Taylor and

8   Bowlie would listen to after that happened.

9   Q    You listened to it after it happened?

10  A    Yeah.

11  Q    After the incident that night?

12  A    Yeah.

13  Q    Why, because it was playing at the time right after the

14  incident?

15  A    Yes.

16  Q    When you got back to Fabi's house, what happened?

17  A    We all got out of the car.  We went inside.  Jacorey, I

18  believe, Stevie and Bowlie, they was in the kitchen doing

19  something with the guns, and we sat there for a minute.  We

20  started to drink some Hennesee, and -- yeah, they was talking.

21  Q    Who was at the house when you got back?  Did everyone

22  come in that were in the two cars?

23  A    Yes.

24  Q    Do you have any idea what -- you say Jacorey and Stevie

25  were doing something with the guns?

1   A    Uh-huh.

2   Q    Do you have any idea what they were doing with the guns?

3   A    They was putting them in the kitchen counter.

4   Q    Put them on the kitchen counter?

5   A    Put them inside the counter, the cabinet.

6   Q    Did you ever see any of those guns again?

7   A    No.

8   Q    Do you know what happened to the guns?

9   A    When the police busted Fabi's house, I believe they was

10  taken.

11  Q    I'm sorry, you said something about the police and Fabi's

12  house?

13  A    Yeah, her house had got raided.

14  Q    And that had something to do with the guns based on what

15  you heard or knew?

16  A    Yeah.

17  Q    What did you hear?

18             MR. HERMAN:  Objection, hearsay, Judge.

19             THE COURT:  Who from?

20  BY MR. DICKINSON:

21  Q    Who -- did you ever hear about what happened -- did

22  anybody ever comment about the guns in relation to a raid or

23  search of Fabi's apartment?

24  A    Yes.

25  Q    And who was that?

1   A   Jacorey Taylor and Reginald Dunlap.

2   Q   Do you recall what they said?

3   A   That -- that the police had raided the house, and that

4   they hoped that they wiped the guns down good because the guns

5   was tooken from under the mattress.

6   Q   Did you ever talk to any of the people, let's say,

7   within -- between 2004 and 2007, did you ever talk to any of

8   the people that you were with that night about what had

9   happened?

10  A   From that night I know we was told not to say nothing

11  about what had happened.  But, I mean, yeah, they would just

12  say that me and Sandra was, like, riders because we had been

13  there when it went down so --

14  Q   When you say "they," who would say that?

15  A   Because it was like a Full Throttle Clique that hung

16  together so that was Bowlie, Stevie and Jacorey Taylor and

17  sometimes J-Nut, but it was mostly, like, us five that would

18  hang together.

19  Q   And after this occurred they would say that you and

20  Sandra were riders because you were out that night?

21  A   Yeah.

22  Q   And what's a rider?

23  A   A rider is like a person that's down to do whatever for

24  the neighborhood.

25  Q   Have you ever heard the term related to that night of

1   A    They just -- no, they wasn't certain that he was a Crip.

2   I guess by his saying -- when they said, "What up, Crip," by

3   him saying "what up" back I guess how they took it he was a

4   Crip.

5   Q    You've testified that you heard Mr. Dunlap say, "What up,

6   cuz"?

7   A    Yeah.

8   Q    What does, "What up, cuz," mean?

9   A    It means -- when you're a Crip, they say, "What up, cuz,"

10  and when you're a Blood, they say, "What up, Blood."  So

11  that's how you identify yourself as being a Crip or a Blood.

12  Q    Now, I just want to go back, and you stated that you

13  didn't remember seeing anything, that you had turned your

14  head.

15          Do you recall you had testified before the grand

16  jury in this case?

17  A    Yes.

18  Q    You testified in front of the grand jury under oath, you

19  came over and swore to tell the truth in front of a group of

20  people?

21  A    Yes.

22  Q    No judge, no defendant.  The prosecutor, Ms. Bliss, I

23  believe, at the time asked you some questions?

24  A    Yes.

25  Q    And do you recall telling the grand jury when asked if

1    in, sir.

2                    THE WITNESS:  Las Vegas, Nevada.

3                    THE COURT:  You may inquire.

4                    MR. ROSENBERG:  Thank you, your Honor.

5             Good afternoon, sir.

6                    THE WITNESS:  Yes, sir.

7                           DIRECT EXAMINATION

8    BY MR. ROSENBERG:

9     Q    Where do you work?

10    A    Currently employed by the LVMPD.

11    Q    And back in November 2004, were you also working for

12   Las Vegas Metropolitan Police Department?

13    A    I was, sir.

14    Q    And were you assigned any particular unit or region?

15    A    I was.  I was assigned to the Gang Crimes Section of the

16   Las Vegas Metropolitan Police Department.

17    Q    And at that time were you working with Detectives Kinch

18   and -- is it Majewski?

19    A    Yes, sir.

20    Q    All right.  At around November 17th, 2004, around

21   2200 hours, did the three of you have cause to go over to an

22   address at 1005 West Doolittle?

23    A    Yes, sir, we did.

24    Q    What was the purpose of that?

25    A    We had a rash of shootings in the area.

1   Q   Did you receive information that a firearms might be at

2   this address?

3   A   We did.

4   Q   All right.  Based on that did you go to the address and

5   knock on the front door?

6   A   Yes, sir, we did.

7   Q   Did you speak to the -- a female at that address by the

8   name of Helenia Tillman?

9   A   We did.

10   Q   Okay.  And upon speaking with her, did you observe any

11   ammunition or smell any controlled substances?

12   A   We did.  When we made contact at the front door, a strong

13   odor of burnt marijuana was coming from inside the residence.

14   Also there was a .22 shell on the ground as we entered into

15   the front door if I remember correctly.

16   Q   Okay.  And after observing that, did you ask her if she

17   would consent to the officers searching her home?

18   A   Yes, sir.

19   Q   All right.  And did she, in fact, consent?

20   A   She did.

21   Q   Did she fill out a consent to search card?

22   A   Yes, sir.

23   Q   Okay.  And in a second I'll hand you this full pile of

24   evidence, but I'll move on for the time.

25   A   Yes, sir.

Case 2:08-cr-00283-RCJ-PAL Document 923 Filed 07/23/15 Page 248 of 295
Case 16-17292, 07/07/2021, ID: 12165768, DktEntry: 29-1, Page 188 of 267

-1678

1  Q   Did you, yourself, Detective Kinch, as well as Detective

2  Majewski, all search the home?

3  A   We did.  We search it as team, and then there was a team

4  number two with gang crimes.

5  Q   Before you searched, did you ask Ms. Tillman if anyone

6  else was in the home?

7  A   We did.

8  Q   Did she respond if anybody was in the home or just

9  recently left?

10 A   She did.  She stated --

11           MR. HERMAN:  Objection, Judge, hearsay.  Thank

12 you.

13           THE COURT:  Well, it's foundational.

14           MR. HERMAN:  He's about to say what she said.

15 That's my objection, Judge, it's hearsay.

16           THE COURT:  I have no idea what you're going to

17 elicit, but especially if it's hearsay that Mr. Taylor was

18 present, that's hearsay, right.

19           MR. ROSENBERG:  Okay.  Yeah, I was --

20           THE COURT:  Sustained.

21 BY MR. ROSENBERG:

22 Q   No one else was present in the home at that time?

23 A   There was a small child.

24 Q   Okay.  Small child, but no one else besides Ms. Tillman?

25 A   Correct.

1   Q   Okay.  Did the three of you search of the home?

2   A   We did.

3   Q   Were firearms found?

4   A   There was.

5   Q   All right.  Are you aware of whether or not a

6   9-millimeter was found and a .45-caliber semiautomatic pistol

7   were found?

8   A   Yes, they were.  I found the 9-millimeter Glock 26.

9   Q   All right.  Did Detective Majewski discover the Ruger

10  .45-caliber firearm?

11  A   Yes, he did.

12  Q   Did you also find rounds of ammunition?

13  A   We did.

14  Q   Okay.  And was -- did Ms. Tillman claim ownership of

15  that?

16              MR. HERMAN:  Objection, Judge.

17              THE WITNESS:  No.

18              MR. HERMAN:  It's hearsay.

19              THE COURT:  I'm going to overrule it.  He can

20  exclude -- he can exclude that, but he's not tying the hearsay

21  for the truth that Mr. Taylor owned it.  I'm going to let him

22  testify.

23          The answer, please.  Exception noted.

24          The answer, sir?

25              THE WITNESS:  Yes, sir.

```
 1                   UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
 2       BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                            ---o0o---
 3

 4    UNITED STATES OF AMERICA,      :
                                     :
 5                 Plaintiff,        : No. 2:08-CR-283-RCJ
                                     :
 6            -vs-                    : April 17, 2013
                                     :
 7    JACOREY TAYLOR,                : Las Vegas, Nevada
                                     :
 8              Defendant.           : Volume 8
      _____:
 9

10

11                     TRANSCRIPT OF JURY TRIAL

12

13    APPEARANCES:

14    FOR THE PLAINTIFF:    NICHOLAS D. DICKINSON and
                            PHILLIP SMITH
15                          Assistant United States Attorneys
                            Las Vegas, Nevada
16

17                          KEVIN L. ROSENBERG
                            Assistant United States Attorney
18                          Washington, D.C.

19

20    FOR THE DEFENDANT:    CARL J. HERMAN
                            Attorney at Law
21                          West Orange, New Jersey

22

23    Reported by:         Margaret E. Griener, CCR #3, RDR
                            Official Reporter
24                          400 South Virginia Street
                            Reno, Nevada 89501
25                          (775)329-9980
```

Case 16-17203, 07/07/2021, ID: 12165760, DktEntry: 23-1, Page 181 of 267
Case 2:08-cr-00283-RCJ-PAL Document 922 Filed 07/23/13 Page 185 of 234

-1409-

1          MR. DICKINSON:  We have one more witness that I

2     don't think will be too long, your Honor.

3          THE COURT:  Okay.  We'll try to fit that in.

4     It's getting late in the day so, if you can, be brief.

5          MR. DICKINSON:  Detective Jensen, your Honor.

6     The government calls Detective Jensen.

7          THE COURT:  Yes, please.  Thank you, sir, and

8     good afternoon.  If you'll come forward to the witness stand,

9     please.  Be careful of the step.

10                 B A R R Y   J E N S E N,
           called as a witness on behalf of the Government,
11               was sworn and testified as follows:

12          THE CLERK:  Please be seated.

13          Please state your name for the record.

14          THE WITNESS:  My name is Barry Jensen;

15     J-e-n-s-e-n.

16          THE CLERK:  And the city and state you reside

17     in.

18          THE WITNESS:  I live in Las Vegas, Nevada.

19          THE COURT:  Thank you, sir.  You may ask

20     questions.

21                    DIRECT EXAMINATION

22     BY MR. DICKINSON:

23     Q    Good afternoon.  Detective Jensen, correct?

24     A    That's correct.

25     Q    Where do you work?

Case 2:16-17202 07/07/2021 ID: 12165368 DktEntry: 231 Page 192 of 267
Case 2:08-cr-00283-RCJ-PAL Document 922 Filed 07/23/15 Page 195 of 234

-1419-

1  Nathan Smith.  I'd have to check my report to be sure.

2  Q   If you checked your report, would that refresh your

3  recollection which one you interviewed?

4  A   Yes, it would.

5  Q   Do you have a copy of it?

6  A   I do.  I did, I interviewed Nathan Smith at 0135 hours.

7  Q   Did you or your partner interview Reginald Dunlap?

8  A   I believe my partner, Steve Popp, did.

9  Q   And if I could pull up Government Exhibit 158.

10          Looking at that, Detective Jensen, on the top row

11 there's a picture of an individual states Quaza Burns.  Do you

12 have a recollection if the Quaza Burns that was murdered that

13 night is that same person?

14 A   It is.

15 Q   And there's also a person identified as Reginald Dunlap

16 right next to him.

17 A   That's correct.

18 Q   Do you recall if that is the Reginald Dunlap that was one

19 of the witnesses that night?

20 A   It was.

21 Q   Now, other than speaking with those two witnesses at the

22 crime scene, did you get much of any other evidence in your

23 investigation?

24 A   No, we did not.

25 Q   And is the murder of Quaza Burns -- is it correct it's

1    unsolved?

2    A    It's unsolved, yes.

3    Q    Do you use the term cold case in Metro?

4    A    We do.  However, Metro defines a cold case as a case

5    that's ten years old or older.

6    Q    So this one is not quite there?

7    A    Not yet.

8    Q    And are you able -- how many homicide scenes have you

9    caught in your time as a homicide detective?

10   A    In my 12 years, I've investigated 450 death scenes.  Out

11   of those, approximately 170 of them have turned out to be

12   murders.

13   Q    And based on that experience, are you able to draw any

14   conclusions regarding this case based on the scene itself?

15   A    Yes, I am.

16   Q    And what are those?

17   A    This appears to be a gang-related murder.

18   Q    And why do you say that?

19   A    Because the gang involvement of the witnesses and the

20   suspects, it's in a high crime area, high gang frequency area

21   of Las Vegas, being Naked City, and another factor is the lack

22   of information coming in.

23   Q    And why do you say the lack of information coming in?

24   A    Generally, with a gang-related murder, it's very rare

25   that the other gang members will provide a statement to law

```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2        BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                              ---o0o---
 3

 4    UNITED STATES OF AMERICA,      :
                                     :
 5                  Plaintiff,       :  No. 2:08-CR-283-RCJ
                                     :
 6            -vs-                    :  April 16, 2013
                                     :
 7    JACOREY TAYLOR,                 :  Las Vegas, Nevada
                                     :
 8                  Defendant.        :  Volume 7
      _____:
 9

10

11                       TRANSCRIPT OF JURY TRIAL

12

13    APPEARANCES:

14    FOR THE PLAINTIFF:    NICHOLAS D. DICKINSON and
                            PHILLIP SMITH
15                          Assistant United States Attorneys
                            Las Vegas, Nevada
16

17                          KEVIN L. ROSENBERG
                            Assistant United States Attorney
18                          Washington, D.C.

19

20    FOR THE DEFENDANT:    CARL J. HERMAN
                            Attorney at Law
21                          West Orange, New Jersey

22

23    Reported by:         Margaret E. Griener, CCR #3, RDR
                            Official Reporter
24                          400 South Virginia Street
                            Reno, Nevada 89501
25                          (775)329-9980
```

Case: 16-17292, 07/07/2021, ID: 12165762, DktEntry: 22, Page 195 of 367
Case 2:06-cr-00283-RCJ-PAL Document 921 Filed 07/23/139 Page 9 of 207

-1043-

1          THE COURT:  Thank you, ma'am.  Just be careful

2     of the step as you come, up by the witness stand, please, and

3     welcome.

4               N I C O L E   R E N E   F O U N T A I N,
            called as a witness on behalf of the Government,
5                  was sworn and testified as follows:

6               THE CLERK:  Please be seated.

7            State your name for the record.

8               THE WITNESS:  My name is Nicole Fountain, Nicole

9     Rene Fountain.

10              THE CLERK:  Please spell your last name.

11              THE WITNESS:  F-o-u-n-t-a-i-n, like a water

12    Fountain.

13              THE CLERK:  And the city and state you reside

14    in.

15              MR. SMITH:  Your Honor, she has also been

16    relocated.

17              THE COURT:  Very good.  Thank you.  And, thank

18    you, Ms. Fountain.

19           You may inquire.

20              MR. SMITH:  Thank you, your Honor.

21           Good morning, Ms. Fountain.

22              THE WITNESS:  Good morning.

23                       DIRECT EXAMINATION

24    BY MR. SMITH:

25     Q   Can you tell the members of the jury where you're

1   calling the shots means, for instance, someone who is in

2   higher ranking.

3            How can I say it?  Calling the shots, someone that's

4   making the high demands for us to do what we need to get done.

5   Q   And when you say "us," do you mean fellow gang members?

6   A   Yes.

7   Q   Okay.  Looking on your screen here on Exhibit 158, are

8   any of these individuals what you would consider to be shot

9   callers within the Playboy Bloods?

10  A   Yes.

11  Q   Can you circle -- you can actually touch your screen and

12  circle.

13  A   (Witness complies.)

14  Q   And for the record, you've circled Markette Tillman, aka

15  Ketty-P, Delvin Ward, aka D-Love, Anthony Mabry, aka Akim

16  Slim, Jacorey Taylor, aka Mo-B, and Quaza Burns, aka Quaz; is

17  that correct?

18  A   Yes.

19  Q   And to your knowledge, those five individuals were what

20  one might call shot callers within the Playboy Bloods gang?

21  A   Yes.

22  Q   Are you familiar with an individual, Ms. Fountain, named

23  Ricky Cooper?

24  A   Yes, I am.

25  Q   Tell us who Ricky Cooper is.

1            UNITED STATES DISTRICT COURT
                DISTRICT OF NEVADA
2    BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                   ---o0o---
3

4    UNITED STATES OF AMERICA,      :
                                    :
5              Plaintiff,           : No. 2:08-CR-283-RCJ
                                    :
6         -vs-                      : April 15, 2013
                                    :
7    JACOREY TAYLOR,                : Las Vegas, Nevada
                                    :
8              Defendant.           : Volume 6
     _____:
9

10

11                 TRANSCRIPT OF JURY TRIAL

12

13   APPEARANCES:

14   FOR THE PLAINTIFF:   NICHOLAS D. DICKINSON and
                          PHILLIP SMITH
15                        Assistant United States Attorneys
                          Las Vegas, Nevada
16

17                        KEVIN L. ROSENBERG
                          Assistant United States Attorney
18                        Washington, D.C.

19

20   FOR THE DEFENDANT:   CARL J. HERMAN
                          Attorney at Law
21                        West Orange, New Jersey

22

23   Reported by:         Margaret E. Griener, CCR #3, RDR
                          Official Reporter
24                        400 South Virginia Street
                          Reno, Nevada 89501
25                        (775)329-9980

1          LAS VEGAS, NEVADA, MONDAY, APRIL 15, 2013, 12:52 P.M.

2                            ---o0o---

3

4               THE COURT:  Thank you, and the jury, please.

5          So, again, we'll recess around 3:00 and then at

6     5:00.

7                      (The jury is present.)

8               THE COURT:  Thank you for that rather lengthy

9     recess.  Please be seated.

10          And we'll continue.  You may call your next witness,

11    please.

12               MR. DICKINSON:  The government calls Carnelius

13    Williams, your Honor.  It will be Mr. Rosenberg's witness.  I

14    think he just ran down the hall to the restroom.

15               THE COURT:  Go ahead.

16          Good afternoon, sir.  Thank you for coming.  If

17    you'll just come forward, please, to the witness stand.  Thank

18    you.  Be careful of the step as you come, please.  And if

19    you'll just remain standing by the chair, Madam Clerk will

20    swear you in.

21               C A R N E L I U S   W I L L I A M S,
                 called as a witness on behalf of the Government,
22                    was sworn and testified as follows:

23               THE CLERK:  Please be seated.

24          State your name for the record.

25               THE WITNESS:  Carnelius Williams.

Case 16-17008 07/07/2021 ID: 12165760 DktEntry: 33 Page 199 of 267

875

```
 1   Q    What's an OG?

 2   A    Original gangster.

 3   Q    Out of our Government's Exhibit 158 that's on the board,

 4   were any of these individuals considered OGs?

 5   A    Yeah, a couple of them.

 6   Q    Who would that be?

 7   A    In my book, this dude, this dude, this dude and this

 8   dude.

 9   Q    All right.  And for the record are you circling Quaza

10   Burns, Fred Nix, aka June-P, Anthony Mabry, aka Akim Slim, and

11   Delvin Ward, also known as D-Love?

12   A    Correct.

13   Q    Why did you consider these individuals OGs?

14   A    I mean, when I was young and I was growing up, that was

15   the foundation.  They was the people that was more or less on

16   the frontline.  They know everything, they help with

17   everything.  I mean, they basically raised me when I was away

18   from home so --

19   Q    Was there anything you had to do to become an OG?

20   A    I'm not a OG.

21   Q    You're not an OG?

22   A    No.

23   Q    Are you aware of how these people became OGs?

24   A    Not completely.  I know one of them was a beast, I know.

25   Q    One of them was what?
```

Case 16-17998, 07/07/2021, ID: 12165769, DktEntry: 33, Page 200 of 267
Case 2:08-cr-00283-RCJ-PAL Document 920 Filed 07/23/13 Page 48 of 238

876

1  A  A beast.

2  Q  Who was that?

3  A  At the top right here, Quaz.

4  Q  Why do you say that Quaz was a beast?

5  A  I mean, he tolerate nothing.  He didn't tolerated no

6  bullshit.

7  Q  What do you mean that he didn't tolerate anything?

8  A  He not going to let you talk to him in any kinda way, he

9  not going to let you push him around.  He will fight.  You

10  might kill if he ask you to.

11  Q  Did you ever see any of this happen?

12  A  I seen some fights.

13  Q  Did that get him more respect and status in the gang?

14  A  He had more respect than you can imagine.

15  Q  How did D-Love become an OG or get that respect?

16  A  Same thing.

17  Q  And Akim Slim?

18  A  Same thing.

19  Q  What about June-P?

20  A  Same thing.

21  Q  Were there any other status levels aside from OGs?

22  A  Yeah, you got OG, you got BGs, you got YGs, you got Gs.

23  Q  Now, if we could briefly pull up Government's Exhibit

24  157-18 which has been previously admitted into evidence and

25  ask you if you recognize this individual as well.  Do you

Case 2:16-17203-07-07-2021 ID: 12165760 DktEntry: 29-1 Page 201 of 267
Case 2:08-cr-00283-RCJ-PAL Document 920 Filed 07/23/13 Page 106 of 238

934

1    They wanted me to hit the lick.  The money was supposedly in

2    the floor.  So they went in there, they got the money and they

3    left.

4     Q   What do you mean it was my lick?

5     A   I was supposed to be one of the people that went, but

6    because I got locked up, I couldn't go.

7             So at a later time, one of the people that did go,

8    he ended up getting locked up for it, and we was cellies so

9    now this my roommate, and he telling me about a lick that I

10   was supposed to hit with him.

11                 MR. HERMAN:  Objection, hearsay.

12                 MR. ROSENBERG:  Your Honor, we're only offering

13   this under the coconspirator statements.

14                 MR. HERMAN:  I don't know who the coconspirator

15   is, Judge.

16                 THE COURT:  This coconspirator what?

17                 MR. HERMAN:  I don't know who he is.

18                 MR. ROSENBERG:  I can follow up.

19                 THE COURT:  Please.

20   BY MR. ROSENBERG:

21    Q   Who was this that you were having the conversation with?

22    A   Little John.

23    Q   Do you know what Little John's name is?

24    A   Melvin Killings.

25    Q   Was Melvin Killings a Playboy Blood?

1    Playboy Bloods?

2    A   Yeah, everybody in that picture are Playboys.

3    Q   Who are these individuals?

4    A   I can't see her face, but that look like Tish, that's

5    Tywan, that's Mo-B, that's Ray-P, that's Flap.

6                THE COURT:  I'm sorry, sir, one more time,

7    please.  That's --

8                THE WITNESS:  Flap, Ray-P, Mo-B, Tywan, and I

9    don't know who this is, I can't see her face.

10   BY MR. ROSENBERG:

11   Q   All four of those individuals are Playboy Blood members?

12   A   Correct.

13               MR. ROSENBERG:  You can scroll to 65-005.

14   BY MR. ROSENBERG:

15   Q   Who is this in the middle?

16   A   D-Love.

17   Q   Do you recognize any of the other people here?

18   A   Rock, D-Love wife.

19   Q   When you circled Rock, is that Sebastian Wigg?

20   A   Correct.

21   Q   006, please.

22   A   I can't really see who in that picture.

23   Q   Okay.  007?

24   A   Mo-B, Rich-P, Smile-Mac.

25   Q   Are any of these individuals Playboy Bloods?

1  Quaz. Who -- is this Quaz, Quaza Burns, the individual on

2  Government's Exhibit 158?

3   A   Yeah.

4   Q   All right. Now, was he part of any special clique of the

5  Playboy Bloods?

6   A   Full Throttle.

7   Q   How did you know Quaza Burns?

8   A   Grew up around him. When I was growing up, he was one of

9  the homies everybody looked up to.

10   Q   Did you look up to him?

11   A   Correct.

12   Q   Why did you look up to him?

13   A   Because even though -- I mean, he was a cool person, but

14  he put in a lot of work.

15   Q   What do you mean that he put in a lot of work?

16   A   He didn't take no -- he had zero tolerance. He took no

17  mess with nobody.

18   Q   Did he commit criminal acts?

19   A   Yeah.

20   Q   What did he do?

21   A   Rob, stole, kill, whatever he had to.

22   Q   Did he sell drugs?

23   A   Yeah.

24   Q   Do you know if he had any drug houses in Las Vegas?

25   A   Yeah.

Case 2:16-17092-07:07:2021 ID: 12165760 DktEntry: 23:1 Page 204 of 267
Case 2:08-cr-00283-RCJ-PAL Document 920 Filed 07/23/13 Page 194 of 238

962

1    Q    Do you know where?

2    A    I never been to none of them really.

3    Q    Okay.  So did you ever see him commit crimes?

4    A    Yep.

5    Q    When or what did you see him do?

6    A    We was at the Forbidden in his car one day, and we had to

7    shoot at somebody in his car.

8    Q    You had to shoot at somebody in his car?

9    A    Correct.

10   Q    Like out of his car?

11   A    Correct.

12   Q    When was this?

13   A    Before I went to juvenile the first time.  I was like 15;

14   14, 15.

15   Q    Where is this club the Forbidden?

16   A    It used to be behind the Palace Station.

17   Q    And why did you have to shoot at somebody?

18   A    Because he got disrespected inside the club.

19   Q    Was it a rival gang member?

20   A    Correct.

21   Q    From what gang?

22   A    They had to be from Northtown somewhere.

23   Q    So did you shoot at the people?

24   A    We both did.

25   Q    So did you both have guns?

1    A    Correct.

2    Q    Was Quaz -- was Quaz older or younger than you?

3    A    Older.

4    Q    Did other people look up to Quaz?

5    A    Correct, everybody.

6    Q    Okay.  Did you know him to sell large quantities of

7    drugs?

8    A    Yeah.

9    Q    What was his drug of choice to sell?

10   A    Anything.

11   Q    While you were in prison on your -- on the robbery

12   conviction, did you learn that Quaz was murdered?

13   A    Correct.

14   Q    Was this in 2004, around Halloween?

15   A    Correct.

16   Q    How did you learn that Quaz was murdered?

17   A    Through other gang members that was inside with me.

18   Q    Was this a big deal to the Bloods?

19   A    Huge deal.

20   Q    Why was it such a big deal?

21   A    Because he was, like, one of their elite.  So when you

22   knock -- when you knock the head off, you knock the head off

23   the dragon, the dragon fall.  He was elite, and if you kill

24   somebody's leader then it's going to hurt the organization.

25             He was a leader, he was a natural leader.  So when

1  A   Correct.

2  Q   All right.  And what did you take that to mean that he

3  said that they went out and put in some work?

4  A   They went and killed someone.

5  Q   All right.  Did you ask him any more questions about the

6  specifics of the murder?

7  A   Yeah, from time to time.

8  Q   What would you ask him?

9  A   I mean, I would ask him, like, who all went, who all was

10  riding, who went riding.  You would want to know, like, who

11  would have love for him, who didn't.

12       So at the time, like I say, I was on the other side

13  of the fence.  I wanted to know what was going on.  I wanted

14  to know who was really a gangster, who wasn't.

15  Q   That's why you asked Mo-B about who put in work?

16  A   Right.

17  Q   During that time did he ever deny that they went and put

18  in work for Quaz?

19  A   Nah.

20  Q   Did he tell you if two girls by the name of Genell and

21  Sandy were with them?

22       MR. HERMAN:  Objection, Judge, hearsay -- I'm

23  sorry, objection, leading.

24       THE COURT:  Overruled.

25       THE WITNESS:  Yeah.

1   BY MR. ROSENBERG:

2   Q   Okay.  What did he tell you?

3   A   He just told me that they was driving.

4   Q   Did you know these girls, Genell and Sandy?

5   A   Yeah.

6   Q   Who were they to you?

7   A   One girl was -- really, they was nobody to me, but one

8   girl was one of Quaz's ex-girlfriends, and one girl was one of

9   the girls who used to live at the Carter whose house they used

10  to be at.

11  Q   All right.  Which one was which?

12  A   Sandy is the one that used to live at the Carter.  We

13  used to just chill at her house, and we could have our guns at

14  her house and shit.

15          Genell was the girl that used to mess with Quaz.

16  She was actually supposedly there when he got killed.

17  Q   And Mo-B told you that Genell and Sandy were there?

18  A   Correct.

19  Q   Did Mo-B tell you whether or not there were -- or how

20  many people went and rode out for Quaz?

21  A   Nah, he didn't tell me how many people.

22  Q   Okay.

23  A   But he made sure that I knew he was there.

24  Q   He told you he was there?

25  A   Yeah.

Case 2:16-cr-17292-RCJ-PAL Document 920 DktEntry: 23-1 Page 208 of 267
Case 2:08-cr-00283-RCJ-PAL Document 920 Filed 07/23/13 Page 144 of 238

972

1    Q   Did you ever speak with Bowlie, Reginald Dunlap, about

2    what happened that night?

3    A   Yeah, I asked him the same questions.

4    Q   All right.  What did -- you asked him -- what questions

5    did you ask him?

6    A   Like, did y'all put in some work.

7    Q   What did he tell you?

8    A   He told me yeah.

9             THE COURT:  I'm sorry, you asked him what?

10            THE WITNESS:  I asked him did they put in some

11   work.

12            THE COURT:  Did they put it to work.

13   BY MR. ROSENBERG:

14   Q   And by work, what do you mean?

15   A   Did they go out and kill someone.

16   Q   Okay.  And what did he tell you?

17   A   Yeah.

18   Q   Did he tell you anything else about the person they

19   killed?

20   A   Well, he told me that we don't know who he is, we don't

21   know if it's the right person or not.

22   Q   This person, Reginald Dunlap, told you they killed

23   someone but they didn't know if it was the right person?

24   A   Correct.

25   Q   Did you ever talk with D-Love about Genell and Sandy

1    possibly talking with the cops?

2    A    Yeah.

3    Q    And tell us about this conversation.

4    A    I don't remember when it was exactly, but I remember a

5    conversation.  He was, like, he think that they tell them.

6    Q    Who is "they" and who is "he"?

7    A    D-Love told me that he thought that the females that was

8    telling, the two females that was with them when they rode, so

9    Genell and Sandy.

10   Q    Why would this have been, you know, a concern to D-Love?

11   A    Because somebody died.  He was worried about the Feds

12   coming to pick him up, also.

13   Q    Did you ever confront Mo-B about the way they committed

14   this?

15   A    Yeah, I told him it was sloppy.

16   Q    Why was it sloppy?

17   A    Because there was too many people.

18   Q    Why would you confront him about this and say, you know,

19   why was it sloppy?

20   A    Because Mo-B was -- he wasn't like -- he wasn't the

21   dumbest person, you know what I'm saying.  But he used to do

22   stuff like impulsive, like, he'll just go out and do

23   something, not thinking, and having a whole bunch of people

24   around going to do something, it's kind of reckless.

25             So I approached him, like, look, what happened, why

```
 1    y'all have all these people.

 2              And he's, like, well, it ain't like that, they

 3    wanted to go, everybody wanted to go put in work for Quaz.

 4              And I'm, like, man, that's kind of sloppy though,

 5    like.

 6    Q   Is it -- is it out of the norm to take women to put in

 7    work?

 8    A   Not really, not really.  The women can hold the guns.

 9    The police ain't going to search the women the way they search

10    the men.

11              MR. ROSENBERG:  One brief moment, your Honor.

12              THE COURT:  Uh-huh.

13                   (Discussion held off the record.)

14    BY MR. ROSENBERG:

15    Q   So, sir, how exactly did you learn that Quaz had been

16    murdered?

17    A   Through another prison member.  I was in prison when it

18    happened, and we call home, and when we call home, me and

19    Little John got on the phone, and everybody -- everybody we

20    called was telling us that Quaz got killed.

21    Q   Was this -- like the news spread quick throughout the

22    prison?

23    A   Absolutely.

24    Q   And was there like a general feeling among the Playboy

25    Bloods after Quaz was murdered?
```

Case 2:08-17-00283-07-07/2021 ID-13165760 DktEntry-13 Page 211 of 267

1   DANIEL G. BOGDEN
    United States Attorney
2   KATHLEEN BLISS
    Assistant United States Attorney
3   NICHOLAS D. DICKINSON
    Assistant United States Attorney
4   KEVIN L. ROSENBERG
    Trial Attorney, Department of Justice
5   Lloyd D. George United States Courthouse
6   333 Las Vegas Blvd. South, Suite 5000
    Las Vegas, Nevada 89101
7   (702) 388-6336/Fax: (702) 388-6418



8
# UNITED STATES DISTRICT COURT
9
# DISTRICT OF NEVADA
10
## -oOo-
11

12  UNITED STATES OF AMERICA,               ) SUPERSEDING
                                            ) CRIMINAL INDICTMENT
13              Plaintiff,                   )
                                            ) 2:08-cr-283-RCJ-RJJ
14      v.                                   )
                                            ) **VIOLATIONS:**
15                                           )
    **MARKETTE TILLMAN,**                    )
16  a/k/a "KETTY P",                         ) 18 U.S.C. § 1962(d): Conspiracy to
    **JACOREY TAYLOR,**                      ) Engage in a Racketeer Influenced
17  a/k/a "MO-B",                            ) Corrupt Organization
    **REGINALD DUNLAP,**                     )
18  a/k/a "BOWLIE",                          ) 18 U.S.C. § 1959: Violent Crime in Aid
    **STEVEN BOOTH,**                        ) of Racketeering
19  a/k/a "STEVIE-P",                        )
                                            ) 18 U.S.C. §§ 924(c) and (j): Use of
20              Defendants.                  ) Firearm during a Crime of Violence
                                            )
21  _____     )

22                                          21 U.S.C. § 846: Conspiracy to Engage
                                            in Drug Trafficking
23
                                            21 U.S.C. § 841(a)(1)(iii): Possession
24                                          with Intent to Distribute a Controlled
                                            Substance
25
26

ER-211

**THE GRAND JURY CHARGES THAT:**

**COUNT ONE**
Rico Conspiracy
The Enterprise

1.     At all times relevant to this Indictment the Defendants, **MARKETTE TILLMAN, A/K/A "KETTY P"; JACOREY TAYLOR, A/K/A "MO-B"; REGINALD DUNLAP, A/K/A "BOWLIE"; STEVEN BOOTH, A/K/A "STEVIE-P";** and others known, including Delvin Ward, A/K/A, "D-Luv"; Anthony Mabry, a/k/a "AK" and "Akim Slim"; DeMichael Burks, a/k/a "Mikey P"; Fred James Nix, a/k/a "June P"; Sebastian Wigg, a/k/a "Rock"; and Terrence Thomas, a/k/a "Seven" AND "Seven A"; and unknown to the Special Grand Jury, have been members and associates of the Playboy Bloods, a criminal organization whose members engage in acts of violence, including acts involving murder, extortion and robbery, and deal in controlled substances. Members and associates of the Playboy Bloods operate within and about the metropolitan area of Las Vegas, Nevada.

2.     The Playboy Bloods, including its leadership, members, and associates, constitutes an enterprise within the meaning of Title 18, United States Code, Section 1961(4); that is, a group of individuals associated in fact, although not a legal entity. The enterprise constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise is engaged in, and its activities affect, interstate commerce.

**GENERAL BACKGROUND AND STRUCTURE**

3.     The Bloods is a nationally known criminal street organization whose members engage in drug trafficking and acts of violence. The Playboy Bloods are a local "set" or

2

afiliate of the Bloods, with local control and operation within the Las Vegas, Nevada, metropolitan area. Other Bloods sets within the Las Vegas metropolitan area are Pirus and West Cost Bloods. A subset of the Playboy Bloods is Full Throttle Clique, a group made up of Playboy Bloods members who engage in acts of violence, including murder.

4.     The Playboy Bloods operate primarily in a housing complex (Sherman Gardens Annex) at H and Doolittle, commonly called the "Jets." Playboy Bloods are involved in murder, attempt murder, robberies and drug trafficking.

5.     The Playboy Bloods' colors are red and black. The Playboy Bloods' symbol is the Playboy bunny. Members use monikers or street names to avoid detection by law enforcement. The monikers typically end in P or B (e.g. Ketty-P, Mo-B). The Playboy Bloods' structure includes O.G. (original gangster and shot caller or leader); Y.G. (young gangster or mid-level member ); and B.G. (baby gangster or new recruit). Rival street gangs of the Playboy Bloods have included GPK's, Rolling 60's, Piru Bloods, and the Donna Street Crips. As such, most violent conflicts with other gangs stem from rival gang members invasion of the Playboy Bloods' drug territory.

6.     The Playboy Bloods have a history of violence and conflict with the security officers assigned to patrol the Jets. These conflicts have resulted in murder, attempted murder, and assault and battery. Security Officers are subject to almost daily harassment from the Playboy Bloods members. The conflict between the Playboy Bloods and the security officers arose from the security officers attempts to curtail the drug trafficking trade in the Jets by trespassing all those individuals who did not live in the Jets neighborhood.

7.     The main financial activity of the Playboy Bloods is the trafficking of narcotics, primarily crack cocaine. Members of the Playboy Bloods establish "drug spots" in their

3

ER-213

neighborhood where they sell crack cocaine. The drug sellers use apartments or hotel rooms that are rented in the names of other people. These renters of the drug spots are frequently "smokers" who are given crack cocaine or money for allowing the Playboy Bloods members to deal drugs from their apartment or hotel room. Cooperating female Playboy Bloods members are often given money to pay their bills for allowing the gang members to deal drugs from their residences. Playboy Bloods members use these residences in other peoples name to conceal their illegal activity.

## ROLES OF THE DEFENDANTS

8.   The defendants participated in the operation and management of the enterprise.

A.   **MARKETTE TILLMAN, A/K/A, "KETTY P"** is an O.G. of the Playboy Bloods who manufactures and distributes narcotics, primarily crack cocaine. As an O.G. member of the enterprise, **TILLMAN** calls "shots" or otherwise approves and directs criminal conduct by other Playboy Bloods members. **TILLMAN** also engages directly and indirectly in criminal acts of the enterprise, including but not limited to acts involving murder, extortion, and robbery.

B.   **JACOREY TAYLOR, A/K/A "MO-B"** is a Y.G. of the Playboy Bloods. As a Y.G. member of the enterprise, **TAYLOR** engages in acts of violence, including acts involving murder, and he aids and assists O.G. members of the enterprise in manufacturing and distributing narcotics, including operating drug houses within the Playboy Bloods' turf. **TAYLOR** is also a member of Full Throttle Clique, a group within the Playboy Bloods that commits acts of violence, including acts involving murder, for the

4

ER-214

purpose of controlling and expanding the territory of the Playboy Bloods and retaliating against the enterprise's enemies and rivals.

  C.  **REGINALD DUNLAP, A/K/A "BOWLIE"** is a Y.G. of the Playboy Bloods. As a Y.G. member of the enterprise, **DUNLAP** engages in acts of violence, including acts involving murder, and he aids and assists O.G. members of the enterprise in manufacturing and distributing of narcotics, including operating drug houses within the Playboy Bloods' turf. **DUNLAP** is also a member of Full Throttle Clique, a group within the Playboy Bloods that commits acts of violence, including acts involving murder, for the purpose of controlling and expanding the territory of the Playboy Bloods and retaliating against the enterprise's enemies and rivals.

  D.  **STEVEN BOOTH, A/K/A "STEVIE-P"** is a Y.G. of the Playboy Bloods. As a Y.G. member of the enterprise, **BOOTH** engages in acts of violence, including acts involving murder, and he aids and assists O.G. members of the enterprise in manufacturing and distributing of narcotics, which includes including operating drug houses within the Playboy Bloods' turf. **BOOTH** is also a member of Full Throttle Clique, a group within the Playboy Bloods that commits acts of violence, including acts involving murder, for the purpose of controlling and expanding the territory of the Playboy Bloods and retaliating against the enterprise's enemies and rivals.

## PURPOSES OF THE ENTERPRISE

  9.  The purposes of the Playboy Bloods enterprise included the following:

  A.  to enrich the members and associates of the enterprise through the trafficking of illegal drugs, primarily cocaine base, also known as crack cocaine;

5

ER-215

B.      to preserve and protect the power, territory, and profit of the enterprise through the use of violence, intimidation, threats, robbery, and acts involving murder;

C.      to create, maintain, and control a marketplace for the distribution of controlled substances;

D.      to protect the enterprise and its members from detection, apprehension and prosecution by law enforcement;

E.      to prevent, thwart, and retaliate against acts of violence perpetrated by rivals against the enterprise and its members; and

F.      to promote and enhance the reputation and standing of the enterprise and its members.

## MEANS AND METHODS OF THE ENTERPRISE

10.      Members of the Playboy Bloods and their associates use various means and methods to conduct the affairs of the enterprise, which further their wealth and control, secure their protection and dominance, and contribute to the growth and expansion of the enterprise's criminal operations within the Las Vegas, Nevada, metropolitan area. Among the means and methods by which the defendants and their associates conduct and participate in the conduct of the affairs of the enterprise include the following:

A.      Members of the enterprise and their associates have used, attempted to use, and conspired to use extortion, which affected interstate commerce.

B.      Members of the enterprise and their associates have committed, attempted and threatened to commit acts of violence, including murder, robbery and extortion, to protect and to expand the enterprise's criminal operations.

6

ER-216

C.   Members of the enterprise and their associates have promoted a climate of fear through violence and threats of violence.

D.   Members of the enterprise and their associates have used and threatened to use physical violence against various individuals.

E.   Members of the enterprise and their associates have trafficked in crack cocaine, marijuana and guns.

### THE RICO CONSPIRACY

11.   Beginning in at least 1999, up through and including the date of this Indictment, the defendants and others known and unknown to the Special Grand Jury, being persons employed by and associated with the Playboy Bloods, an enterprise, which engaged in, and the activities of which affected, interstate commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961(1) and (5). The pattern of racketeering activity through which the defendants agreed to conduct the affairs of the enterprise consisted of multiple acts involving murder, in violation of Nevada Revised Statutes, Sections 195.020 (aiding and abetting), 199.480 (conspiracy), 200.030 (murder) and 193.330 (attempted murder); extortion, in violation of Nevada Revised Statutes, Section 205.320; acts indictable under Title 18, United States Code, Section 1951 (interference with commerce by robbery and and extortion); and offenses involving the felonious manufacturing, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance, in violation of Title 21, United States Code, Sections 841, 846 and 856.

7

ER-217

12.   It was a part of the conspiracy that the Defendants, **MARKETTE TILLMAN, A/K/A "KETTY P"; JACOREY TAYLOR, A/K/A "MO-B"; REGINALD DUNLAP, A/K/A "BOWLIE"; STEVEN BOOTH, A/K/A "STEVIE-P";** and others known, including  Delvin Ward, A/K/A, "D-Luv"; Anthony Mabry, a/k/a "AK" and "Akim Slim"; DeMichael Burks, a/k/a "Mikey P"; Fred James Nix, a/k/a "June P"; Sebastian Wigg, a/k/a "Rock"; and Terrence Thomas, a/k/a "Seven" AND "Seven A"; and unknown  to the Special Grand Jury, agreed that at least two acts of racketeering activity would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1962(d).

**COUNT TWO**
Violent Crime in Aid of Racketeering Activity

At all times relevant to this Indictment, the Playboy Bloods, as more fully described in Paragraphs 1 through 12 of this Indictment, which are re-alleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate commerce.

At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of Nevada Revised Statutes, Sections 195.020 (aiding and abetting), 199.480 (conspiracy), 200.030 (homicide) and 193.330 (attempted murder); extortion, in violation of Nevada Revised Statutes, Section 205.320;  acts indictable under Title 18, United States Code,

8

ER-218

Section 1951 (interference with commerce by robbery and extortion); and offenses involving the felonious manufacturing, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance, in violation of Title 21, United States Code, Sections 841, 846 and 856.

On or about January 20, 2004, in the State and District of Nevada, the Defendants, **MARKETTE TILLMAN, A/K/A "KETTY P," and STEVEN BOOTH, A/K/A "STEVIE P,"** and others known and unknown to the Special Grand Jury, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Playboy Bloods, and for the purpose of gaining entrance to and maintaining and increasing position in the Playboy Bloods, an enterprise engaged in racketeering activity, did unlawfully, knowingly and intentionally murder Brian Wilcox, in violation of Nevada Revised Statutes 195.020 and 200.030.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 1959(a)(1) and 2.

## COUNT THREE
### Use of a Firearm During a Crime of Violence

On or about January 20, 2004, in the State and District of Nevada, the Defendant, **MARKETTE TILLMAN, A/K/A "KETTY P,"** during and in relation to a crime of violence, that is, the offense set forth in Count Two of this Indictment, which Count is incorporated herein by reference, did knowingly use and carry and discharge a firearm, causing the death of Brian Wilcox.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 924(c)(1) and 924(j)(1) and (2).

9

ER-219

**COUNT FOUR**
Use of a Firearm During and in Relation to a Crime of Violence

On or about January 20, 2004, in the State and District of Nevada, the Defendant, **STEVEN BOOTH, A/K/A "STEVE P,"** during and in relation to a crime of violence, that is, the offense set forth in Count Two of this Indictment, which Count is incorporated herein by reference, did knowingly use and carry and discharge a firearm, causing the death of Brian Wilcox.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 924(c)(1) and 924(j)(1) and (2).

**COUNT FIVE**
Violent Crime in Aid of Racketeering Activity

At all times relevant to this Indictment, the Playboy Bloods, as more fully described in Paragraphs 1 through 12 of this Indictment, which are re-alleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact which was engaged in, and that activities of which affected, interstate commerce.

At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder, in violation of Nevada Revised Statutes, Sections 195.020 (aiding and abetting), 199.480 (conspiracy), 200.030 (homicide) and 193.330 (attempted murder); extortion, in violation of Nevada Revised Statutes, Section 205.320; acts indictable under Title 18, United States Code, Section 1951 (interference with commerce by robbery and extortion); and offenses

10

ER-220

1 involving the felonious manufacturing, importation, receiving, concealment, buying, selling

2 and otherwise dealing in a controlled substance, in violation of Title 21, United States

3 Code, Sections 841, 846 and 856.

4      On or about November 1, 2004, in the State and District of Nevada, the Defendants,

5 **JACOREY TAYLOR A/K/A "MO-B"; REGINALD DUNLAP A/K/A "BOWLIE"; and**

6 **STEVEN BOOTH, A/K/A "STEVIE-P";** and others known and unknown to the Special

7

8 Grand Jury, as consideration for the receipt of, and as consideration for a promise and an

9 agreement to pay, anything of pecuniary value from the Playboy Bloods, and for the

10 purpose of gaining entrance to and maintaining and increasing position in the Playboy

11 Bloods, an enterprise engaged in racketeering activity, did unlawfully, knowingly and

12 intentionally murder Billy Thomas, in violation of Nevada Revised Statutes 195.020 and

13 200.030.

14     ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 1959(a)(1)

15 and 2.

16
<div align="center">

**COUNT SIX**

Use of a Firearm During a Crime of Violence
</div>

17

18     On or about November 1, 2004, in the State and District of Nevada, the Defendant,

19 **JACOREY TAYLOR, A/K/A "MO-B,"** during and in relation to a crime of violence, that is,

20 the offense set forth in Count Five of this Indictment, which Count is incorporated herein

21 by reference, did knowingly use and carry and discharge a firearm, causing the death of

22 Billy Thomas.

23     ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 924(c)(1)

24 and 924(j)(1) and (2).

25

26                         11

ER-221

## COUNT SEVEN
Use of a Firearm During a Crime of Violence

On or about November 1, 2004, in the State and District of Nevada, the Defendant, **REGINALD DUNLAP, A/K/A "BOWLIE,"** during and in relation to a crime of violence, that is, the offense set forth in Count Five of this Indictment, which Count is incorporated herein by reference, did knowingly use and carry and discharge a firearm, causing the death of Billy Thomas.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 924(c)(1) and 924(j)(1) and (2).

## COUNT EIGHT
Use of a Firearm During a Crime of Violence

On or about November 1, 2004, in the State and District of Nevada, the Defendant, **STEVEN BOOTH, A/K/A "STEVIE-P,"** during and in relation to a crime of violence, that is, the offense set forth in Count Five of this Indictment, which Count is incorporated herein by reference, did knowingly use and carry and discharge a firearm, causing the death of Billy Thomas.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 924(c)(1) and 924(j)(1) and (2).

## COUNT NINE
Drug Conspiracy

Beginning at an unknown time in on or about 1998, up through and including October 28, 2008, the Defendants, **MARKETTE TILLMAN, A/K/A "KETTY P"; JACOREY TAYLOR, A/K/A "MO-B"; REGINALD DUNLAP, A/K/A "BOWLIE"; STEVEN BOOTH,**

12

ER-222

1  A/K/A "STEVIE-P"; and others known, including Delvin Ward, A/K/A, "D-Luv"; Anthony

2  Mabry, a/k/a "AK" and "Akim Slim"; DeMichael Burks, a/k/a "Mikey P"; Fred James Nix,

3  a/k/a "June P"; Sebastian Wigg, a/k/a "Rock"; and Terrence Thomas, a/k/a "Seven" AND

4  "Seven A"; and unknown to the Special Grand Jury, did knowingly and intentionally

5  conspire to distribute 280 grams or more of a mixture and substance containing a

6  detectible amount of cocaine base, also known as "rock" and "crack cocaine."

7  ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 846.

8
### COUNT TEN
9  Possession with Intent to Distribute a Controlled Substance

10  On or about June 14, 2006, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-**

11  **P,"** did knowingly and intentionally possess with intent to distribute a mixture and

12  substance containing a detectible amount of cocaine base, a controlled substance.

13  ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1)

14  & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

15
### COUNT ELEVEN
16  Possession with Intent to Distribute a Controlled Substance

17

18  On or about July 24, 2006, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-**

19  **P,"** did knowingly and intentionally possess with intent to distribute a mixture and

20  substance containing a detectible amount of cocaine base, a controlled substance.

21  ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION

22  841(a)(1) & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

23

24

25

26                                        13

## COUNT TWELVE
Possession with Intent to Distribute a Controlled Substance

On or about August 4, 2006, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-P"** did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

## COUNT THIRTEEN
Possession with Intent to Distribute a Controlled Substance

On or about August 8, 2006, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-P,"** did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

## COUNT FOURTEEN
Possession with Intent to Distribute a Controlled Substance

On or about August 15, 2006, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-P,"** did knowingly and intentionally possess with intent to distribute 28 or more grams of a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(B)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

14

ER-224

**COUNT FIFTEEN**
Possession with Intent to Distribute a Controlled Substance

On or about October 4, 2006, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-P,"** did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

**COUNT SIXTEEN**
Possession with Intent to Distribute a Controlled Substance

On or about January 3, 2007, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-P,"** did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

**COUNT SEVENTEEN**
Possession with Intent to Distribute a Controlled Substance

On or about January 4, 2007, the defendant, **JACOREY TAYLOR, A/K/A, "MO-B,"** did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

15

ER-225

**COUNT EIGHTEEN**
Possession with Intent to Distribute a Controlled Substance

On or about January 31, 2007, the defendant, **JACOREY TAYLOR, A/K/A, "MO-B,"** did knowingly and intentionally possess with intent distribute a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(C)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

**COUNT NINETEEN**
Possession with Intent to Distribute a Controlled Substance

On or about June 21, 2007, the defendant, **MARKETTE TILLMAN, A/K/A "KETTY-P,"** did knowingly and intentionally possess with intent to distribute 28 or more grams of a mixture and substance containing a detectible amount of cocaine base, a controlled substance.

ALL IN VIOLATION OF TITLE 21, UNITED STATES CODE, SECTION 841(a)(1) & (b)(1)(A)(iii), AND TITLE 18, UNITED STATES CODE, SECTION 2.

**DATED:**   this the 24th day of January 2012.

**A TRUE BILL:**

_____/S/_____
FOREPERSON OF THE GRAND JURY

DANIEL G. BOGDEN
United States Attorney

KATHLEEN BLISS
Assistant United States Attorney

16

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

UNITED STATES OF AMERICA,        Case No.2:08-CR-00283-RCJ-

PAL

   vs.

JACOREY TAYLOR;

      Defendant.



ORIGINAL
DISTRICT
COURT

FILED ____ RECEIVED
ENTERED ____ SERVED ON
COUNSEL/PARTIES OF RECORD

NOV 2 8 2016

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

---

NOTICE TO APPEAL THE COURT'S ORDER OF 10/18/2016 RECEIVED ON

11/22/2016 DENYING PETITIONER'S 28 USCS 2255 IN VIOLATION OF

DUE PROCESS.

---

    Now Comes; pro-se defendant Taylor and does hereby gives

formal "Notice To Appeal" the court's order denying a timely

filed 28 USCS 2255 in violation of Taylor's due process

rights as follows:

    1)   Ineffective Counsel claims are properly adjudicated

via 28 USCS 2255 as limned in defendant's petition on Claims

One thru Six.


    2)   The United States Supreme Court under <u>United States</u>

<u>v Johnson 192 L.Ed.2d 569</u> made retroactive in <u>Welch v United</u>

<u>States 193 L.Ed2d 5</u> to allow adjudication via 28 USCS 2255

Ground Three showing a conviction and sentence for 18 USCS

924 is <u>"VOID FOR VAGUENESS"</u> and was properly before the

district court.

<span style="color:red">ER-227</span>

3)  Ground Two a violation of 18 USCS 1951(a) as a predicate act is a "Case Of First Impression" and is void for vagueness and must be dismissed a "Void Ab Initio".

4)  The district court's decision on and denial on Ground One is in violation of "Roe v Flores-Ortega" _____ U.S. _____ and defendant is entitled to an "OUT OF TIME DIRECT APPEAL" of an illegal sentence as presented, without the need to identify what claims would be brought on direct appeal.

5)  Petitioner's claim Ground Six that AEDPA 1996 is unconstitutional as applied is a "Case of First Impression" of it constitutionally and is void in violation of due process, equal protection under the law.

7)  GROUND FIVE claims that Count Nine a violation of 21 USCS 846 is void for vagueness as it defined as a element a "Mixture or Substance" containing a "Detectable Amount" (only) of cocaine base .... not more.

Federal Question? How much cocaine is a "Detectable Amount" to warrant a "LIFE SENTENCE"?

See" USSG Amentments 304, 370, 484, 488, 518, 555, 640, 748, 270.

WHEREFORE; defendant Taylor does hereby gives this formal
"Notice To Appeal" as limned in the forgoing this 20th day of
November 2016.

Respectfully Submitted;

_____

Jacorey Taylor

#05263-748

USP Box 3900

Adelanto, California

92301

Leonard Taylor #05263-748
U.S.P. (Victorville)
P.O. Box 3900
Adelanto CA 92301

B9101-706934

SAN BERNARDINO CA 924
22 NOV 2016 PM 4 L

(Clerk) U.S. District Court
District of Nevada
(Lloyd D. George US Courthouse
333 Las Vegas Blvd So.
RM 1334
Las Vegas, NV 89101)

ER-230

# United States District Court
## District of Nevada (Las Vegas)
## CRIMINAL DOCKET FOR CASE #: 2:08-cr-00283-RCJ-PAL-5

Case title: USA v. Ward et al                              Date Filed: 10/28/2008
Related Cases: 2:16-cv-02204-RCJ
               2:19-cv-00369-RCJ

Assigned to: Chief Judge Robert C. Jones
Referred to: Magistrate Judge Peggy A. Leen

Appeals court case numbers: 13-10572 USCA,
16-10364 9th Circuit Court of Appeals

### Defendant (5)

**Jacorey Taylor**                     represented by  **Julian R Gregory**
05263-748                                              Law Office of Julian Gregory, L.L.C.
ATWATER                                                411 South 6th Street
U.S. PENITENTIARY                                      Las Vegas, NV 89101
Inmate Mail/Parcels                                    702-625-1183
P.O. BOX 019001                                        Email: julian@jglawlv.com
ATWATER, CA 95301                                      *LEAD ATTORNEY*
*also known as*                                        *ATTORNEY TO BE NOTICED*
Mo-B                                                   *Designation: CJA Appointment*
*TERMINATED: 10/31/2013*

                                                       **Carl J Herman**
                                                       Carl J. Herman, Esq.
                                                       443 Northfield Avenue
                                                       West Orange, NJ 07018
                                                       973-324-1011
                                                       Fax: 973-324-1133
                                                       Email: Cjherman@carlherman.com
                                                       *TERMINATED: 08/18/2016*
                                                       *Designation: CJA Appointment*

                                                       **Mace J Yampolsky**
                                                       Mace Yampolsky, LTD
                                                       625 S. Sixth St.
                                                       Las Vegas, NV 89101-
                                                       702-385-9777
                                                       Fax: 702-385-3001
                                                       Email: Mace@macelaw.com
                                                       *TERMINATED: 12/21/2009*
                                                       *Designation: CJA Appointment*

                                                       **Mario D Valencia**
                                                       Mario D. Valencia, Attorney at Law, LLC
                                                       40 S. Stephanie St.
                                                       Suite 201
                                                       Henderson, NV 89012
                                                       (702) 384-7494
                                                       Fax: (702) 384-7545
                                                       Email: valencia.mario@gmail.com
                                                       *TERMINATED: 06/18/2020*
                                                       *Designation: CJA Appointment*

                                                       **Rene Valladares**
                                                       Federal Public Defender
                                                       411 E Bonneville

<span style="color:red">ER-231</span>

Suite 250
Las Vegas, NV 89101-
702-388-6577
Fax: 702-388-6261
Email: Rene_Valladares@fd.org
*TERMINATED: 02/11/2015*
*Designation: FPD*

**Sylvia A. Irvin**
Federal Public Defender
411 E. Bonneville, Ste 250
Las Vegas, NV 89101
702-388-6577
Fax: 702-388-6261
Email: sylvia_Irvin@fd.org
*TERMINATED: 06/18/2020*
*Designation: FPD*

**Thomas F. Pitaro**
PITARO & FUMO, CHTD
601 Las Vegas Blvd. South
Las Vegas, NV 89101
702-382-9221
Fax: 702-382-9961
Email: kristine.fumolaw@gmail.com
*TERMINATED: 03/11/2011*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1962(d) - Rico Conspiracy (1) | Dismissed 10/22/2013 |
| 18:1962(d) - Conspiracy to Engage in a Racketeer Influenced Corrupt Organization (1s) | Sentenced 10/22/2013 |
| 18:1959(a)(1) and 2 - Violent Crime in Aid of Racketeering Activity and Aiding and Abetting (5) | Dismissed 10/22/2013 |
| 18:1959(a)(1) and 2 - Violent Crime in Aid of Racketeering & Aiding & Abetting (5s) | Sentenced 10/22/2013 |
| 18:924(c)(1) and 924(j)(1) and (2) - Use of a Firearm During a Crime of Violence (6) | Dismissed 10/22/2013 |
| 18:924(c)(1) and 924(j)(1) and (2) - Use of Firearm during a Crime of Violence & Aiding and Abetting (6s) | Sentenced 10/22/2013 |
| 21:846 - Drug Conspiracy (9) | Dismissed 10/22/2013 |
| 21:846 - Conspiracy to Engage in Drug Trafficking (9s) | Sentenced 10/22/2013 |
| 21:841(a)(1) & (b)(1)(C)(iii) and 18:2 - Possession with Intent to Distribute a Controlled Substance & Aiding and Abetting (17s-18s) | Sentenced 10/22/2013 |
| 21:841(a)(1) & (b)(1)(B)(iii) And 18:2 - Possession with Intent to Distribute a Controlled Substance And Aiding and Abetting (26-27) | Dismissed 10/22/2013 |

ER-232

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                        **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                               **Disposition**

None

---

**Interested Party**

**Attorney General**                        represented by   **Roger R Madsen**
*TERMINATED: 10/14/2010*                                     Office of the Attorney General
                                                             555 East Washington Avenue
                                                             Suite 710
                                                             Las Vegas, NV 89101
                                                             702-486-3420
                                                             Fax: 702-486-3773
                                                             Email: rmadsen@ag.nv.gov
                                                             *TERMINATED: 05/09/2012*

                                                             **Ruth Miller**
                                                             Nevada Attorney General's Office
                                                             555 E. Washington Ave
                                                             Suite 3900
                                                             Las Vegas, NV 89101-
                                                             702-486-3792
                                                             Fax: 702-486-3914
                                                             Email: RMiller2@ag.nv.gov
                                                             *TERMINATED: 09/13/2011*

---

**Interested Party**

**Las Vegas Metropolitan Police Department**   represented by   **Nicholas Crosby**
*TERMINATED: 10/14/2010*                                       Marquis & Aurbach
                                                               10001 Park Run Drive
                                                               Las Vegas, NV 89145-
                                                               702-382-0711
                                                               Fax: 702-382-5816
                                                               Email: ncrosby@maclaw.com
                                                               *TERMINATED: 07/02/2012*

---

**Plaintiff**

**USA**                                    represented by     **Adam M Flake**
                                                             United States Attorney
                                                             501 Las Vegas Blvd. South
                                                             Suite 1100
                                                             Las Vegas, NV 89101
                                                             702-388-6336
                                                             Email: adam.flake@usdoj.gov
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Designation: USA*

<span style="color:red">ER-233</span>

**Elizabeth Olson White**
United States Attorneys Office -- District of Nevada
400 South Virginia Street
Ste. 900
Reno, NV 89501
775-784-5438
Fax: 775-784-5181
Email: elizabeth.o.white@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Kevin L. Rosenberg**
United States Department of Justice
1301 New York Avenue, NW
Washington, DC 20005
202-445-9850
Email: Kevin.Rosenberg2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Nicholas D Dickinson**
US Attorneys Office
501 Las Vegas Blvd. South
Suite 1100
Las Vegas, NV 89101
702-388-6336
Email: nicholas.dickinson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Peter S. Levitt**
U.S. Attorney
501 Las Vegas Blvd. South
Suite 1100
Las Vegas, NV 89101-
702-388-6336
Email: peter.s.levitt@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Roger Yang**
U.S. Attorney's Office
333 Las Vegas Blvd. South
Las Vegas, NV 89101
(702) 388-6336
Email: Roger.Yang@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: USA*

**Bradley W. Giles**
U. S. Attorneys Office
333 Las Vegas Blvd. South
Las Vegas, NV 89101
(702) 388-6311
Email: bradley.giles@usdoj.gov
*TERMINATED: 10/11/2011*
*Designation: USA*

**Eric Johnson**
U.S. Attorney's Office
333 Las Vegas Blvd So
Suite 5000
Las Vegas, NV 89101-
702-388-6336
Fax: 702-388-6418
Email: Ashlin.Brown@usdoj.gov
*TERMINATED: 12/18/2020*
*Designation: USA*

**Kathleen Bliss , Govt**
U.S. Attorney's Office
333 Las Vegas Blvd So., Ste 5000
Las Vegas, NV 89101-
Email: kathleen.bliss@usdoj.gov
*TERMINATED: 11/12/2014*
*Designation: USA*

**Phillip N. Smith , Jr.**
United States Attorney's Office
501 Las Vegas Blvd. South, Ste. 1100
Las Vegas, NV 89101
702-388-6503
Fax: 702-388-6418
Email: phillip.smith@usdoj.gov
*TERMINATED: 12/18/2020*
*Designation: USA*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/28/2008 | | Case assigned to Judge Robert C. Jones and Magistrate Judge Robert J. Johnston. (OXC) (Entered: 10/28/2008) |
| 10/28/2008 | 1 | INDICTMENT as to Delvin Ward (1) counts 1, 9-12, 22, 28, Anthony Mabry (2) counts 1, 9, 13-15, Markette Tillman (3) counts 1-3, 9, 16-21, 25, 31, Demichael Burks (4) counts 1, 9, 17-19, 25, Jacorey Taylor (5) counts 1, 5-6, 9, 26-27, Fred James Nix (6) counts 1, 9, 11, 23, Sebastian Wigg (7) counts 1, 9, 29-30, Reginald Dunlap (8) counts 1, 5, 7, 9, Steven Booth (9) counts 1-2, 4-5, 8-9, Terrence Thomas (10) counts 1, 9, 22, 24, 32. (OXC) Modified to correct counts on 11/6/2008 (OXC). (Entered: 10/28/2008) |
| 10/28/2008 | 12 | MINUTES OF PROCEEDINGS - Grand Jury Return as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 10/28/2008 before Magistrate Judge Peggy A. Leen. Crtrm Administrator: Denise Saavedra; AUSA: Kathleen Bliss; Court Reporter/FTR #: Joyce Dennehy; Time of Hearing: 1:16 pm; Warrant to issue as to Delvin Ward, Demichael Burks, Fred James Nix, and Sebastian Wigg.Defendants Anthony Mabry, Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth, and Terrence Thomas are in local federal custody. Writ to issue. Arraignment/Plea set for 11/7/2008 08:30 AM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. (Copies have been distributed pursuant to the NEF - OXC) (Entered: 10/29/2008) |
| 10/28/2008 | 17 | PETITION for Writ of Habeas Corpus ad Prosequendum by USA as to Jacorey Taylor. Motion ripe 10/28/2008. (OXC) (Entered: 10/29/2008) |
| 10/28/2008 | 18 | ORDER granting 17 Petition for Writ of Habeas Corpus ad Prosequendum as to Jacorey Taylor (5). Signed by Magistrate Judge Peggy A. Leen on 10/28/08. (Copies have been distributed pursuant to the NEF - OXC) (Entered: 10/29/2008) |
| 10/28/2008 | 19 | WRIT of Habeas Corpus ad Prosequendum issued as to Defendant Jacorey Taylor by Magistrate Judge Peggy A. Leen. Arraignment/Plea set for 11/7/2008 08:30 AM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. (OXC) (Entered: 10/29/2008) |
| 11/07/2008 | 62 | MINUTES OF PROCEEDINGS - Initial Appearance/Arraignment & Plea as to Jacorey Taylor held on 11/7/2008 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *J. Ries*; AUSA: *Timothy Vasquez*; Def Counsel: *Mace Yampolsky*; Court Reporter/FTR #: *9:10 - 9:25*; Time of Hearing: *8:30 a.m.*; Courtroom: *3D*; Defendant is present in custody. Financial Affidavit filed. CJA panel attorney is appointed as defense counsel. Government moves for detention and the defendant submits. ORDERED that the defendant is DETAINED. Defendant is arraigned on Indictment. Defendant pleads NOT GUILTY to count(s) 1,5,6,9,26 & 27. Counsel for |

ER-235

| | | |
|---|---|---|
| | | the government advises the Court that this case has or should be deemed COMPLEX. The parties will be contacted by the judicial assistant of this Court in setting a scheduling and budgeting conference in this case. The U.S. Probation Office is directed to prepare a report detailing the defendant's criminal history, if any. Defendant is remanded to custody. Calendar Call set for 12/17/2008 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. Jury Trial set for 12/23/2008 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones.**(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 11/08/2008) |
| 11/07/2008 | 72 | WAIVER of Temporary Right to Custody Under Interstate Agreement on Detainers Act by Jacoey Taylor. (OXC) (Entered: 11/10/2008) |
| 11/07/2008 | 73 | ORDER APPOINTING COUNSEL as to Jacorey Taylor. CJA Mace Yampolsky, Esq. appointed as counsel for Defendant, subpoenas issued upon request with exception to out of state subpoenas which will require court approval Signed by Magistrate Judge Robert J. Johnston on 11/7/08. (Copies have been distributed pursuant to the NEF - OXC) (Entered: 11/10/2008) |
| 11/07/2008 | 88 | Warrant Returned Executed on 11/7/08 in case as to Jacoey Taylor. (OXC) (Entered: 11/12/2008) |
| 11/07/2008 | 101 | ORDER OF DETENTION as to Jacoey Taylor. Defendant shall be detained pending trial. Signed by Magistrate Judge Robert J. Johnston on 11/7/08. (Copies have been distributed pursuant to the NEF - ES) (Entered: 11/18/2008) |
| 12/12/2008 | 111 | ORDER REGARDING TRIAL as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas Jury Trial set for 12/23/2008 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. Calendar Call set for 12/17/2008 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. Exhibit List due by 12/18/2008. Proposed Voir Dire due by 12/18/2008. Proposed Jury Instructions due by 12/18/2008. Trial Briefs due by 12/18/2008. Signed by Judge Robert C. Jones on 12/12/2008. (Copies have been distributed pursuant to the NEF - KXG) (Entered: 12/12/2008) |
| 12/12/2008 | 112 | STIPULATION *to Vacate Trial Date* by USA as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas. (Bliss, Kathleen) (Entered: 12/12/2008) |
| 01/13/2009 | 115 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 1/13/2009. By Judicial Assistant: MXS. SEALED Motion Hearing set for 1/13/2009, at 03:00 PM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. RE: 114 **SEALED** MOTION. Only counsel for Defendants Tillman, Taylor, Dunlap and Booth are required at this hearing. **(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 01/13/2009) |
| 01/13/2009 | 124 | ORDER APPOINTING COUNSEL as to Jacoey Taylor. Carl Herman appointed as CJA (pro hac vice) counsel for Defendant, subpoenas issued upon request with exception to out of state subpoenas which will require court approval. Signed by Magistrate Judge Robert J. Johnston on 1/13/09. (Copies have been distributed pursuant to the NEF - ASB) (Entered: 03/05/2009) |
| 01/14/2009 | 116 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 1/14/2009. By Judicial Assistant: MXS. Scheduling and Budgeting Conference set for 2/5/2009, at 09:00 AM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. Attorneys for all defendants must be present in Court for this hearing. Counsel for Plaintiff, United States of America is not required to attend this hearing. No defendants are required for this hearing.**(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 01/14/2009) |
| 01/29/2009 | 118 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 1/29/2009. By Judicial Assistant: MXS. At the request of counsel the Scheduling and Budgeting Conference set for 2/5/2009, at 9:00 a.m. is VACATED and RESCHEDULED to 2/17/2009 01:30 PM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. Attorneys for all defendants must be present in court for this hearing. Counsel for Plaintiff, United States of America is not required to attend this hearing. No defendants are required for this hearing. **(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 01/29/2009) |
| 02/13/2009 | 119 | MEMORANDUM *Letter* filed as to Jacoey Taylor ~~Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas.~~ (HERMAN, CARL) Modified on 2/17/2009 to show document filed on behalf of defendant Taylor only (LMC). (Entered: 02/13/2009) |

<span style="color:red">ER-236</span>

| | | |
|---|---|---|
| 02/17/2009 | | NOTE as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas: Memorandum 119 filed on behalf of defendant Taylor only. **(no image attached)** (LMC) (Entered: 02/17/2009) |
| 02/19/2009 | 121 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 2/19/2009. By Judicial Assistant: MXS. Status Conference set for 3/23/2009 09:00 AM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. Only defense counsel need to attend this hearing. Learned counsel may participate by telephone.**(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 02/19/2009) |
| 03/05/2009 | 122 | ORDER TO CONTINUE - Ends of Justice - Granting 112 Stipulation to Continue Trial as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, and Terrence Thomas. Time excluded from 12/23/08 until 8/4/09. Jury Trial set for 8/4/2009 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. Calendar Call set for 7/29/2009 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. Signed by Judge Robert C. Jones on 3/4/09. (Copies have been distributed pursuant to the NEF - ASB) (Entered: 03/05/2009) |
| 03/23/2009 | 131 | MINUTES OF PROCEEDINGS - Hearing re budget and scheduling conference as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 3/23/2009 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *J. Ries*; Def Counsel: *Osvaldo E. Fumo, Joel Mann, Bret O. Whipple, Chad A. Bowers, Mace J. Yampolsky, Natalie M. Smoot, Jacqueline S. Naylor, Daniel J. Albregts, Shari L. Kaufman, Jess R. Marchese and appearing telephonically are John R. Grele, Carl J. Herman, William D. Matthewman and Richard Kammen*; Court Reporter/FTR #: *9:36 - 9:48 (sealed)*; Time of Hearing: *9:00 a.m.*; Courtroom: *3D*; Defendants are not present. The Court canvasses and hears representations of counsel regarding budgeting and scheduling in this case. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 03/24/2009) |
| 03/30/2009 | 133 | MOTION to Continue Government's Response Time and Request for the Court to Issue a Scheduling Order which Specifically Addresses the Timing of Severance Pleadings by USA as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas. Responses due by 4/13/2009. (Bliss, Kathleen) (Entered: 03/30/2009) |
| 04/14/2009 | 136 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston on 4/14/2009. By Deputy Clerk: MXS. Budgeting and Scheduling Conference set for 4/27/2009, at 09:00 AM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. Defendants are NOT required to be present. Learned counsel may participate by telephone. **(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 04/14/2009) |
| 04/14/2009 | 137 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston on 4/14/2009. By Judicial Assistant: MXS. Parties are advised that the Court will entertain argument at the hearing set for 4/27/2009, at 09:00 AM on 133 MOTION to Continue Government's Response Time and Request for the Court to Issue a Scheduling Order Which Specifically Addresses the Timing of Severance Pleadings.**(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 04/14/2009) |
| 04/27/2009 | 143 | MINUTES OF PROCEEDINGS - Hearing re motion to continue government response time and request court to issue sheduling order 133 and budget and scheduling conference as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 4/27/2009 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *J. Ries*; AUSA: *Nicholas Dickinson, Kathleen Bliss, and Bradley Giles*; Def Counsel: *Osvaldo Fumo, Joel Mann, Bret Whipple, Chad Bowers, Mace Yampolsky, Natalie Smoot, Jacqueline Naylor, Daniel Albregts, Shari Kaufman, Rene Valladares, and appearing telephonically John Grele, Carl Herman, William Matthewman and Richard Kammen*; Court Reporter/FTR #: *9:30 - 10:51 (SEALED 10:23:10 - 10:36:17 AND 10:39:12 - 10:50:58)*; Time of Hearing: *9:00 a.m.*; Courtroom: *3D*; Defendants are not present. The Court canvasses and hears representations of counsel. ORDERED that motion 133 is GRANTED IN PART and DENIED IN PART. Responses shall be due 5/15/09 and replies due 5/29/09. The parties will be contacted by the judicial assistant of this Court in setting a future status hearing for sometime in the month of May. The parties are to meet and confer regarding discovery and if the parties are in contest as to what should be disclosed they are to file the appropriate motion prior to the future status check hearing that will be scheduled in May. Government counsel are excused from the courtroom and the budget and scheduling conference with defense counsel begins and concludes under seal. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 05/01/2009) |
| 05/05/2009 | 150 | NOTICE OF ATTORNEY APPEARANCE Roger Yang appearing for USA. (Yang, Roger) (Entered: 05/05/2009) |

**ER-237**

| | | |
|---|---|---|
| 05/14/2009 | 154 | RESPONSE to 147 MOTION for Relief from Prejudicial Joinder, 130 MOTION for Joinder to Defendant Mabry Motion For Joinder In Defendant Fred Nix's Motion For Relief From Prejudicial Joinder, 128 MOTION to Sever Defendant *Fred Nix*, 140 MOTION for Joinder to Defendant Nix's motion for severance and response to Government, 129 MOTION for Joinder to Defendant Fred Nix's Motion For Relief From Prejudicial Joinder ; filed by USA as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas. *Government's Omnibus Response to Defendants' Motion to Sever from Co-Defendants* Replies due by 5/20/2009. (Giles, Bradley) (Entered: 05/14/2009) |
| 05/15/2009 | 156 | PARTIAL TRANSCRIPT (Excludes sealed portions) of Proceedings, 143 Miscellaneous Hearing as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on April 27, 2009 before Magistrate Judge Robert J. Johnston. Court Reporter/Transcriber: NW Transcripts, LLC, 208-466-4148. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/5/2009. Redacted Transcript Deadline set for 6/15/2009. Release of Transcript Restriction set for 8/13/2009. (Rivera, Summer) (Entered: 05/15/2009) |
| 07/21/2009 | 182 | STIPULATION *to Continue Trial* by USA as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas. (Bliss, Kathleen) (Entered: 07/21/2009) |
| 07/29/2009 | 185 | STIPULATION *for Joint Protective Order regarding Statements of Undersigned Defendants* by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Bliss, Kathleen) (Entered: 07/29/2009) |
| 07/30/2009 | 187 | ORDER ON STIPULATION Granting 185 Stipulation for Joint Protective Order Regarding Statements. Signed by Magistrate Judge Robert J. Johnston on 7/29/09. (Copies have been distributed pursuant to the NEF - EDS) (Entered: 07/30/2009) |
| 07/31/2009 | | NOTICE of Docket Correction to 188 Ex Parte MOTION for Rule 17(b) Subpoenas by Jacory Taylor: **ERRORS: Wrong event used & linked to all defendants. CORRECTED BY COURT. Attorney Mace Yampolsky advised to use correct event (EXPARTE MOTION for rule 17(b) subpoenas) and link only to the defendant(s) to which document pertains. (no image attached)**(LMC) (Entered: 08/03/2009) |
| 08/13/2009 | 190 | ORDER TO CONTINUE - Ends of Justice - Granting 182 Stipulation to Continue Trial as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, and Terrence Thomas. Time excluded from 8/5/09 until 3/9/10. Jury Trial set for 3/9/2010 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. Calendar Call set for 3/3/2010 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. Signed by Judge Robert C. Jones on 8/12/09. (Copies have been distributed pursuant to the NEF - EDS) (Entered: 08/13/2009) |
| 09/09/2009 | 204 | RESPONSE *to Trial Date; Notice of Unavailability of Counsel* filed by Markette Tillman ~~as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas.~~ (Grele, John) Modified to show document only pertains to Defendant Tillman on 9/16/2009 (LMC). (Entered: 09/09/2009) |
| 09/16/2009 | | NOTICE of Docket Correction to 204 Response - Other, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas: **ERROR: Linked to all defendants. CORRECTED BY COURT. Counsel reminded that when filing a document, link only to the defendant(s) to which it pertains. (no image attached)**(LMC) (Entered: 09/16/2009) |
| 09/17/2009 | 206 | MOTION to Quash *Subpoenas* by Las Vegas Metropolitan Police Department as to Jacorey Taylor. Motion ripe 9/17/2009. (Crosby, Nicholas) (Entered: 09/17/2009) |
| 09/21/2009 | 209 | RESPONSE to 203 MOTION *to Quash or Modify Subpoena Duces Tecum* filed by Steven Booth ~~as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas.~~ Replies due by 9/27/2009. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kaufman, Shari) Modified to show response is only as to defednat Booth on 9/21/2009 (LMC). (Entered: 09/21/2009) |
| 09/21/2009 | | NOTICE of Docket Correction to 209 Response to Motion as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas: **ERROR: Response linked to all defendants; CORRECTED BY COURT. Counssl reminded when filing documents, link ONLY to the defendnat(s) to which it pertains. (no image attached)**(LMC) (Entered: 09/21/2009) |

<span style="color:red">ER-238</span>

| 09/23/2009 | 210 | SUPPLEMENT to 206 MOTION to Quash *Subpoenas*, 209 Response to Motion, by Steven Booth as to Jacorey Taylor, Steven Booth. (Attachments: # 1 Exhibit C)(Kaufman, Shari) (Entered: 09/23/2009) |
| 09/28/2009 | 215 | RESPONSE to 206 MOTION to Quash *Subpoenas* ; filed by Jacorey Taylor. Replies due by 10/4/2009. (Attachments: # 1 Opposition document continued)(Yampolsky, Mace) (Entered: 09/28/2009) |
| 10/05/2009 | 219 | REPLY to Response to 206 MOTION to Quash *Subpoenas* ; filed by Las Vegas Metropolitan Police Department as to Jacorey Taylor. (Crosby, Nicholas) (Entered: 10/05/2009) |
| 10/06/2009 | 220 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 10/6/2009. By Judicial Assistant: MXS. Scheduling and Budgeting Conference set for 10/23/2009, at 01:30 PM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. **(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 10/06/2009) |
| 10/23/2009 | 228 | MEMORANDUM filed by Jacorey Taylor Re 220 Scheduling Hearing, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas. (Attachments: # 1 Exhibit Richard Kammen Letter 9/9/09, # 2 Exhibit AUSA email 5/12/09, # 3 Exhibit Richard Kammen letter 5/13/09)(Herman, Carl) . (Entered: 10/23/2009) |
| 10/23/2009 | 229 | MINUTES OF PROCEEDINGS - Hearing re scheduling and budgeting conference as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 10/23/2009 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *J. Ries*; AUSA: *Nicholas D. Dickinson and Bradley W. Giles*; Def Counsel: *Osvaldo E. Fumo, Bret O. Whipple, Chad A. Bowers, Mace J. Yampolsky, Natalie M. Smoot, Jacqueline S. Naylor, Daniel J. Albregts, Shari L. Kaufman, Jess R. Marchese and appearing telephonically are Richard Kammen, Carl J. Herman, John R. Grele and William D. Matthewman*; Court Reporter/FTR #: *1:59 - 2:41*; Time of Hearing: *1:30 p.m.*; Courtroom: *3D*; Defendants are not present. The Court canvasses and hears representations of counsel regarding the scheduling and status of this case. Parties for the four death penalty eligible defendants are to file under seal a memorandum giving an update outling what has been accomplished and the feasibility of the 2/15/10 date. The government should begin to identify dates for the presentation as quickly as possible. The government is directed to provide defense counsel with the ballistic evidence by 10/26/09. Once the U.S. Attorney makes his presentation counsel for the government is to submit to the Court and defense counsel the availability of when the U.S. Attorney will make his decision. Government counsel are excused and the budgeting conference in this case proceeds under seal 2:28:34 - 2:41. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 10/28/2009) |
| 11/12/2009 | 243 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 11/12/2009. By Deputy Clerk: MXS. Scheduling and Budgeting Conference set for 12/9/2009, at 09:00 AM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. NO Defendants are to be present for this hearing. Only attorneys of record shall be present in court. **(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 11/12/2009) |
| 11/16/2009 | 247 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 11/16/2009. By Judicial Assistant: MXS. Budgeting and Scheduling Conference scheduled for December 9, 2009, at 9:00 AM is VACATED and RESCHEDULED to 11/24/2009, at 1:30 PM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. **(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 11/16/2009) |
| 11/19/2009 | 250 | MOTION for Appointment of New Counsel by Jacorey Taylor. Motion ripe 11/19/2009. (EDS) (Entered: 11/20/2009) |
| 11/24/2009 | 267 | MINUTES OF PROCEEDINGS - Hearing re budgeting and scheduling conference and motion/request for guidance on discovery 238 as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 11/24/2009 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *J. Ries*; AUSA: *Bradley Giles and Nicholas Dickinson*; Def Counsel: *Osvaldo Fumo, Todd Leventhal, Bret Whipple, Chad Bowers, Scott Steinhoff, Daniel Albregts, Shari Kaufman, and appearing telephonically are John R. Grele, Carl J. Herman, and William D. Matthewman*; Court Reporter/FTR #: *1:50 - 2:15*; Time of Hearing: *1:30 p.m.*; Courtroom: *3D*; Defendants are not present. The Court hears representations from the government and Ms. Kaufman regarding the motion/request for guidance on discovery 238 . After discussion with the parties the motion/request for guidance on discovery 238 has been resolved. The Court makes inquiry of the government and counsel for Terrence Thomas and Anthony Mabry as to the status of the offers made by the government. The parties are to advise the Court by 12/31/09 as to the status of the offers made by the government. Completion date for the presentation to the U.S. Attorney for the District of Nevada is set for 3/19/10. Government counsel is excused from the |

**ER-239**

| | | |
|---|---|---|
| | | remaining portion of this hearing and the budget portion continues under seal 2:10:18 - 2:14:36.**(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 12/03/2009) |
| 12/21/2009 | 272 | ORDER APPOINTING COUNSEL as to Jacorey Taylor. CJA Attorney Thomas F. Pitaro appointed as counsel for Jacorey Taylor, subpoenas issued upon request with exception to out of state subpoenas which will require court approval. Attorney Mace J Yampolsky terminated in case as to Jacorey Taylor. Signed by Magistrate Judge Robert J. Johnston on 12/18/09. (Copies have been distributed pursuant to the NEF - EDS) (Entered: 12/21/2009) |
| 01/28/2010 | 279 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Anthony Mabry, Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth, Terrence Thomas on 1/28/2010. By Deputy Clerk: K. Goetsch. Based on scheduling needs of the Court, IT IS HEREBY ORDERED the current Calendar Call setting in this matter is ADVANCED from 3/3/2010, to Monday, 3/1/2010, at 08:30 AM in LV Courtroom 7D before Judge Robert C. Jones. **(no image attached)** (Copies have been distributed pursuant to the NEF - KXG) (Entered: 01/28/2010) |
| 02/03/2010 | 285 | MOTION for Scheduling Conference with the Court Regarding Pending Issues by USA as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas. Responses due by 2/20/2010. (Attachments: # 1 Attachment)(Bliss, Kathleen) (Entered: 02/03/2010) |
| 02/08/2010 | 287 | ORDER Granting 285 Motion for Scheduling Conference; as to Delvin Ward (1), Anthony Mabry (2), Markette Tillman (3), Demichael Burks (4), Jacorey Taylor (5), Fred James Nix (6), Sebastian Wigg (7), Reginald Dunlap (8), Steven Booth (9), Terrence Thomas (10). Scheduling Conference set for 2/12/10 at 1:30pm in LV Courtroom 3D. Signed by Magistrate Judge Robert J. Johnston on 2/8/10. (Copies have been distributed pursuant to the NEF - AXM) (Entered: 02/08/2010) |
| 02/09/2010 | 291 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 2/9/2010. By Deputy Clerk: J. Ries. If learned counsel wishes to participate telephonically for the scheduling conference set for 2/12/10 at 1:30 (pacific time) p.m., learned counsel must call the telephonic conferencing system at (702) 868-4906 and utilize conference code number 123456. This call must be made at least 10 minutes prior to the scheduled hearing time. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 02/09/2010) |
| 02/12/2010 | 292 | MINUTES OF PROCEEDINGS - Scheduling Conference as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth, Terrence Thomas held on 2/12/2010 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *Melissa Jaime*; AUSA: *Kathleen Bliss; Bradley Giles*; Def Counsel: *Bret Whipple; John Grele; Carl Herman; Mike Miceli; Thomas Pitaro; Daniel Albregts; William Matthewman; Shari Kaufman; Richard Kammen; Jess Marchese*; Court Reporter/FTR #: *1:36-1:52*; Time of Hearing: *1:30 p.m.*; Courtroom: *3D*; Defendants are not present. IT IS HEREBY ORDERED that defendant Terrance Thomas is SEVERED from the death penalty defendants. Trial as to Terrance Thomas remains as set for 3/9/2010, with Calendar call on 3/1/2010. Discussions are held by the Court and counsel as to scheduling issues. FURTHER ORDERED trial as to the remaining death penalty defendants will be continued, and the parties are directed to file a stipulation in that regard. There being no further scheduling issues the Government is excused. (1:47-1:52pm) The remaining portion of this hearing is SEALED. **(no image attached) (no image attached)** (Copies have been distributed pursuant to the NEF - MAJ) (Entered: 02/16/2010) |
| 02/23/2010 | 297 | Submission of PROPOSED ORDER filed by Defendant Jacorey Taylor *Joint Protective Order Re: Statements of Undersigned Defendants*. (Pitaro, Thomas) (Entered: 02/23/2010) |
| 03/01/2010 | 298 | LETTER *regarding March 15, 2010 meeting with AUSA* filed by Jacorey Taylor ~~as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas.~~ (Herman, Carl) Modified to show letter from D/Taylor's attorney only on 3/2/2010 (LMC). (Entered: 03/01/2010) |
| 03/01/2010 | 299 | Joint Protective ORDER RE: Statements of Undersigned Defendant. Signed by Magistrate Judge Robert J. Johnston on 3/1/10. (Copies have been distributed pursuant to the NEF - AXM) (Entered: 03/01/2010) |
| 03/02/2010 | | NOTICE of Docket Correction to 298 Memorandum, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas: **ERROR: Linked to all defendants. CORRECTED BY COURT. Counsel reminded to link documents only to the defendants to which they pertain. (no image attached)**(LMC) (Entered: 03/02/2010) |
| 03/02/2010 | 301 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 3/2/2010. Calendar Call in this case was advanced from 3/3/2010 to 3/1/2010, pursuant to 279 the Court's Minute Order. The Court was informed that a stipulation to continue the trial date would be filed by counsel. Accordingly, the calendar call scehduled for 3/1/2010 (previously scheduled 3/3/2010) was removed from the Court's calendar. No stipulation was submitted and the Court is now informed the parties will not be filing a stipulation. The matter of rescheduling calendar call and trial will be addressed by |

<span style="color:red">ER-240</span>

| | | |
|---|---|---|
| | | the Court at a later date. **(no image attached)** (Copies have been distributed pursuant to the NEF - MAJ) (Entered: 03/02/2010) |
| 03/09/2010 | 312 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston on 3/9/2010. By Judicial Assistant: MXS. Motion Hearing set for 3/11/2010, at 10:00 AM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston RE: 300 MOTION for PreAuthorization Discovery filed by Steven Booth. Individual defendants are not required to be present for this hearing. Learned counsel may participate by telephone by dialing into the court's meet-me-line at: (702)868-4906, conference code: 123456. **(no image attached)** (Copies have been distributed pursuant to the NEF - MXS) (Entered: 03/09/2010) |
| 03/11/2010 | 317 | MINUTES OF PROCEEDINGS - Hearing re motion for preauthorization discovery 300 as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 3/11/2010 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *J. Ries*; AUSA: *Nicholas D. Dickinson and Kathleen Bliss*; Def Counsel: *Daniel J. Albregts, Shari L. Kaufman, Rene Valladares, and appearing telephonically are John R. Grele, Carl J. Herman, and William D. Mattewman*; Court Reporter/FTR #: *10:17 - 11:38*; Courtroom: *3D*; Defendants are not present. Mr. Albregts makes an oral joinder to the motion for preauthorization discovery 300 . The court canvasses and hears representations and arguments of counsel. Mr. Herman makes an oral joinder to the motion for preauthorization discovery 300 . The court notes a suggestion that there may be a need for additional briefing on a couple of issues raised at this hearing. Mr. Grele advises that the <u>BRADY</u> issue may need additional briefing. Mr. Grele and any other defendant may file additional briefing by 3/25/10 and the government will have until 4/8/10 to file a response. The court will issue a separate order. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 03/16/2010) |
| 03/26/2010 | <u>318</u> | First MOTION for Release of Brady Materials by Markette Tillman ~~as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas~~. Responses due by 4/12/2010. (Whipple, Bret) Modified to show motion filed as to defendant Tillman only on 3/30/2010 (LMC). (Entered: 03/26/2010) |
| 03/26/2010 | | NOTICE of Docket Correction to <u>318</u> MOTION for Release of Brady Materials as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas: **ERROR: Linked to all defendants. Document only filed as to defendant Tillman. CORRECTED BY COURT. Counsel reminded when filing documents, they should only be linked to the defendant(s) to which they pertain. (no image attached)**(LMC) (Entered: 03/30/2010) |
| 06/10/2010 | 351 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 6/10/2010. By Deputy Clerk: Lesa Ettinger.<br><br>IT IS ORDERED that a Status Conference is scheduled for Tuesday, 7/6/2010 02:30 PM in LV Courtroom TBA before Judge Robert C. Jones.<br><br>IT IS FURTHER ORDERED that the defendants' must be present for this hearing.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 06/10/2010) |
| 06/18/2010 | 358 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 6/18/2010. By Deputy Clerk: Lesa Ettinger.<br><br>Learned counsel may participate telephonically for the Status Conference scheduled for Tuesday, 7/6/2010 2:30 PM (Pacific Time) in LV before Judge Robert C. Jones.<br><br>To connect to the proceedings via telephone, Learned counsel shall call 702-464-5625 approximately five minutes prior to the time set for the hearing in order to enter your appearance with the clerk. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 06/18/2010) |
| 07/01/2010 | 361 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 7/1/2010.<br>Status Conference scheduled for Tuesday, 7/6/2010 2:30 PM in Las Vegas will be conducted in Courtroom 3D before Judge Robert C. Jones. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 07/01/2010) |
| 07/06/2010 | 365 | MINUTES OF PROCEEDINGS - Status Conference as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 7/6/2010 before Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Kathleen Bliss*; Def Counsel: *Bret Whipple, Mace Yampolsky, Thomas Pitaro, Carl Herman, Daniel Albregts, Shari Kaufman, Rene Valladares. Also present telephonically are: John Grele, William Matthewman*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *2:30 - 2:46 PM*; Courtroom: *3D*; Defendant are present in custody.<br><br>The Court addresses counsel, advising of its concerns with the progress of the case as it relates to the four death |

ER-241

|  |  |  |
|---|---|---|
|  |  | penalty eligible defendants. Representations of counsel are heard regarding the matter. Discussion follows with respect to 363 Order relieving Mr. Albregts as counsel for defendant Reginald Dunlap. Based upon the representation of counsel, IT IS ORDERED that the matter is referred for the appointment of a local panel attorney to represent defendant Reginald Dunlap forthwith. IT IS FURTHER ORDERED that new counsel and learned counsel shall present their presentation to the U.S. Attorney for the District of Nevada immediately.

IT IS FURTHER ORDERED that the U.S. Attorney for the District of Nevada shall have a period of forty-five (45) days from the date of this Minute Order within which to submit their recommendations to the Department of Justice. Thereafter, the Department of Justice shall have a period of ninety (90) days within which to issue a determination on whether to seek the death penalty.

The Court advises counsel that in light of today's hearing and deadlines having been set, all matters as it relates to the death penalty eligible defendants shall be before this Court. Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 07/08/2010) |
| 07/12/2010 | 367 | TRANSCRIPT of Proceedings, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 7/6/2010 before Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/2/2010. Redacted Transcript Deadline set for 8/12/2010. Release of Transcript Restriction set for 10/10/2010. (MG) (Entered: 07/12/2010) |
| 07/16/2010 | 368 | REQUEST for Review of Magistrate Judge Decision re 364 Order on Motion, by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. Motion ripe 7/16/2010. (Dickinson, Nicholas) (Entered: 07/16/2010) |
| 07/21/2010 | 370 | STIPULATION *to Continue Preauthorized Discovery Deadline* by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Bliss, Kathleen) (Entered: 07/21/2010) |
| 08/13/2010 | 379 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 8/13/2010. By Deputy Clerk: Lesa Ettinger.
IT IS ORDERED that oral argument RE: 368 REQUEST for Review of Magistrate Judge Decision re 364 Order on Motion, filed by USA. scheduled RE: 8/13/2010 11:00 AM is rescheduled to 2:00 PM (SAME DATE) LV Courtroom 6A before Judge Robert C. Jones. Defendants shall be present with counsel of record for the hearing.**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 08/13/2010) |
| 08/13/2010 | 380 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 8/13/2010. By Deputy Clerk: Lesa Ettinger.
IT IS ORDERED that oral argument RE: 368 REQUEST for Review of Magistrate Judge Decision re 364 Order on Motion, filed by USA, currently scheduled for 8/13/2010 2:00 PM is RESCHEDULED to Thursday, 8/26/2010 02:00 PM in LV Courtroom TBD before Judge Robert C. Jones. Defendants shall be present in the courtroom with counsel of record for the hearing. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 08/13/2010) |
| 08/24/2010 | 381 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 8/24/2010. By Deputy Clerk: Lesa Ettinger.

IT IS ORDERED that oral argument RE: 368 REQUEST for Review of Magistrate Judge Decision re 364 Order on Motion, scheduled for Thursday, 8/26/2010 02:00 PM in LV will be conducted in Courtroom 6B before Judge Robert C. Jones.

IT IS FURTHER ORDERED that defendants shall be present in the courtroom with counsel of record.

IT IS FURTHER ORDERED that learned counsel may participate telephonically for oral arguments. To connect to the proceedings via telephone, learned counsel shall call 702-464-5625 approximately five minutes prior to the time set for the hearing and remain on the line until such time as the Court joins the call and convenes the proceedings.**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 08/24/2010) |
| 08/26/2010 | 385 | MINUTES OF PROCEEDINGS - Motion Hearing as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 8/26/2010 before Judge Robert C. Jones. Crtrm Administrator: *Melissa Jaime*; AUSA: *Nicholas Dickinson*; Def Counsel: *Rene Valladares, Shari Kaufman, Thomas Pitaro, Cheryl Field-Lang, Appearing Telephonically: Carl Herman, William Matthewman, John Grele*; Court Reporter/FTR #: *Joy Garner*; Time of Hearing: *2:12 - 2:48 p.m.*; Courtroom: *6B*; Defendants' are present in custody. The Court makes preliminary remarks regarding 368 Request for Review of Magistrate Judge 364 and hears arguments of counsel. The Court advises counsel that a written order will issue. Defendants' are remanded to custody. **(no image** |

ER-242

| | | |
|---|---|---|
| | | **attached)** (Copies have been distributed pursuant to the NEF - MAJ) (Entered: 08/31/2010) |
| 09/24/2010 | 396 | TRANSCRIPT of Proceedings, 317 Miscellaneous Hearing, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on Thursday, March 11, 2010 before Magistrate Judge Robert J. Johnston. Court Reporter/Transcriber: Exceptional Reporting Services, Inc., 361-949-2988. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/15/2010. Redacted Transcript Deadline set for 10/25/2010. Release of Transcript Restriction set for 12/23/2010. (SLR) (Entered: 09/24/2010) |
| 09/30/2010 | 397 | STIPULATION by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Bliss, Kathleen) (Entered: 09/30/2010) |
| 11/18/2010 | 413 | MOTION for Joinder to 412 by Jacorey Taylor. Motion ripe 11/18/2010. (Herman, Carl) **Modified to link to motion on 11/18/2010 (LMC).** (Entered: 11/18/2010) |
| 11/30/2010 | 419 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 11/30/2010. By Deputy Clerk: Lesa Ettinger.

IT IS ORDERED that oral argument RE: 412 MOTION for District Judge to Reconsider Order *Doc 403* filed by Markette Tillman, 413 MOTION for Joinder to 412 filed by Jacorey Taylor, 415 MOTION for Joinder to Document 412 *for Reconsideration* filed by Reginald Dunlap, is scheduled for Friday, 3/11/2011 01:00 PM in LV Courtroom TBD before Judge Robert C. Jones.

IT IS FURTHER ORDERED that defendants shall be present in the courtroom with counsel of record.

**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 11/30/2010) |
| 01/05/2011 | 434 | TRANSCRIPT of Proceedings, 385 Motion Hearingas to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 8/26/2010 before Judge Robert C. Jones. Court Reporter/Transcriber: Joy Garner, 702-384-3188. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/16/2010. Redacted Transcript Deadline set for 9/26/2010. Release of Transcript Restriction set for 11/24/2010. (ABB) Modified to correct file date on 1/5/2011 (LMC). (Entered: 01/05/2011) |
| 02/07/2011 | 461 | PARTIAL TRANSCRIPT of Proceedings, 229 Miscellaneous Hearing, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 10/23/09 before Magistrate Judge Robert J. Johnston. Court Reporter/Transcriber: Donna Davidson, 775-329-0132. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/28/2011. Redacted Transcript Deadline set for 3/10/2011. Release of Transcript Restriction set for 5/8/2011. (DD) (Entered: 02/07/2011) |
| 02/07/2011 | 462 | TRANSCRIPT of Proceedings, 292 Scheduling Conference, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth, Terrence Thomas held on 2/12/10 before Magistrate Judge Robert J. Johnston. Court Reporter/Transcriber: Donna Davidson, 775-329-0132. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/28/2011. Redacted Transcript Deadline set for 3/10/2011. Release of Transcript Restriction set for 5/8/2011. (DD) (Entered: 02/07/2011) |
| 02/10/2011 | 470 | TRANSCRIPT of Proceedings, 267 Miscellaneous Hearing,,,,,, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 11-24-09 before Magistrate Judge Robert J. Johnston. Court Reporter/Transcriber: Kathy French, 775-786-5584. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/3/2011. Redacted Transcript Deadline set for 3/13/2011. Release of Transcript Restriction set for 5/11/2011. (KF) (Entered: 02/10/2011) |
| 02/17/2011 | 472 | NOTICE re: Death Penalty; filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Attachments: # 1 Letter)(Bliss, Kathleen) (Entered: 02/17/2011) |

**ER-243**

| 03/02/2011 | 480 | ORDER that the Motion to Reconsider and Joinders thereto 412 413 415 420 are DENIED as moot as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, and Steven Booth. Signed by Judge Robert C. Jones on 3/2/11. (Copies have been distributed pursuant to the NEF - ECS) (Entered: 03/03/2011) |
|---|---|---|
| 03/03/2011 | 481 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 3/3/2011. By Deputy Clerk: Lesa Ettinger.

Pursuant to 480 Order denying as moot the Motion to Reconsider and Joinders thereto 412 , 413 , 415 and 420 , IT IS ORDERED that the Oral Argument hearing re: said motions currently scheduled for 3/11/2011 1:00 pm in Las Vegas before Judge Robert C. Jones is hereby converted to a Status Conference *(re: setting a trial date and to discuss which court-appointed attorneys will continue to represent Defendants in this case)* and shall remain as scheduled for **Friday, 3/11/2011 1:00 p.m. Las Vegas Courtroom 3C** before Robert C. Jones. IT IS FURTHER ORDERED that 479 Government's Motion to Vacate the March 11, 2011 Oral Argument hearing is deemed as moot. IT IS FURTHER ORDERED Defendants shall be present in court with their counsel of record for said hearing.

(Copies have been distributed pursuant to the NEF - LE) (Entered: 03/03/2011) |
| 03/10/2011 | 484 | NOTICE OF HEARING LOCATION as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth: The hearing currently scheduled for 3/11/2011 01:00 PM in LV before Judge Robert C Jones, will be conducted in **LV Courtroom 3C**<br>**(no image attached)**(LE) (Entered: 03/10/2011) |
| 03/11/2011 | 486 | MINUTES OF PROCEEDINGS - Status Conference as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 3/11/2011 before Judge Robert C. Jones. Crtrm Administrator: *L. Ettinger*; AUSA: *Kathleen Bliss*; Def Counsel: *Thomas Pitaro and Carl Herman for defendant Jacorey Taylor, Cheryl Field-Lang and via telephone William Matthewman for defendant Reginald Dunlap, Shari Kaufman and Richard Kammer for defendant Steven Booth, Bret Whipple and via telephone John Grele for defendant Markette Tillman*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *1:00 p.m.*; Courtroom: *3C*;

Defendants are present in custody.The Court addresses the parties regarding the purpose of this hearing. The Court further states that the Attorney General has directed the Government NOT to seek the death penalty against the four Defendants (Jacory Taylor, Reginald Dunlap, Steven Booth, and Markette Tillman) in this case. Therefore, the Defendants are now entitled to only one court-appointed attorney apiece; discussion between the Court and counsel ensues. Having heard from the parties, the Court approves the following court-appointed attorneys to continue to represent the Defendants in this case: Carl Herman shall remain as counsel for defendant Jacorey Taylor; Cheryl Field-Lang shall remain as counsel for defendant Reginald Dunlap; Shari Kaufman shall remain as counsel for defendant Steven Booth; and John Grele shall remain as counsel for defendant Markette Tillman.

Discussion is then held in relation to trial setting and related deadlines. Ms. Bliss moves to sever defendant Markette Tillman from the remaining co-defendants; co-defendants present no opposition. IT IS SO ORDERED. The parties estimate defendant Markette Tillman's trial taking 2 weeks and the three remaining co-defendants (Jacory Taylor, Reginald Dunlap, and Steven Booth) trial taking 7 - 8 weeks. Discussion continues with respect to related deadlines.

Finally, the Court canvasses the Defendants with regard to their understanding of, and agreement with today's proceedings.

Accordingly, IT IS ORDERED Jury Trial as to defendants Reginald Dunlap, Jacorey Taylor, and Steven Booth, is set FIRMLY to begin on 2/6/2012 08:30 AM in LV Courtroom TBD before Judge Robert C. Jones. Calendar Call set for 1/20/2012 08:30 AM in LV Courtroom TBD before Judge Robert C. Jones.

IT IS FURTHER ORDERED Jury Trial as to defendant Markette Tillman, is set FIRMLY to begin on 4/23/2012 08:30 AM in LV Courtroom TBD before Judge Robert C. Jones. Calendar Call set for 4/13/2012 08:30 AM in LV Courtroom TBD before Judge Robert C. Jones.

IT IS FURTHER ORDERED Government shall submit, after consultation with counsel for Defendants, a proposed scheduling order that **includes the speedy trial provisions** on or before 5:00 p.m. 3/18/2011. Defendants are remanded to custody.

**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 03/18/2011) |
| 03/18/2011 | 485 | STIPULATION to Continue Complex Case Schedule; filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Bliss, Kathleen) (Entered: 03/18/2011) |

<span style="color:red">ER-244</span>

| 03/18/2011 | 487 | MINUTE ORDER IN CHAMBERS of the Honorable Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 3/18/2011. By Deputy Clerk: L. Ettinger. <br><br> The Court, having reviewed the parties 485 Stipulation to Continue Complex Case Schedule, finds good cause to give the parties until March 25, 2011 to file the Complex Case Schedule. IT IS SO ORDERED. <br><br> **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 03/18/2011) |
| 03/25/2011 | 488 | Proposed Complex Case Schedule; filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth.. (Bliss, Kathleen) (Entered: 03/25/2011) |
| 03/25/2011 | 489 | Proposed Complex Case Schedule *Corrected* filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth.. (Bliss, Kathleen) **Modified to remove duplicate wording on 3/29/2011 (LMC).** (Entered: 03/25/2011) |
| 04/01/2011 | 491 | ORDER for Complex Case Schedule. Signed by Judge Robert C. Jones on 4/1/11. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 04/01/2011) |
| 04/14/2011 | 494 | ORDER that counsel's compensation rates are reduced to the standard rate of $125 per hour from the date of this order. Signed by Magistrate Judge Robert J. Johnston on 4/14/11. (Copies have been distributed pursuant to the NEF - EDS) (Entered: 04/14/2011) |
| 09/01/2011 | 503 | STIPULATION *to Continue Motion Deadlines and Trial Dates (First Request)* by Steven Booth as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Kaufman, Shari) (Entered: 09/01/2011) |
| 09/02/2011 | 511 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 9/2/2011, by Carrie Lipparelli, Judicial Assistant. IT IS HEREBY ORDERED that ORAL ARGUMENT RE: 203 Motion to Quash or Modify Subpoena Duces Tecum (Steven Booth); 206 Real Party In Interest Las Vegas Metropolitan Police Departments Motion to Quash Subpoenas; 251 Real Party In Interest Las Vegas Metropolitan Police Departments Ex Parte, Sealed Motion to Quash Subpoenas; 430 Application for Preservation Order; 492 Real Party In Interest Las Vegas Metropolitan Police Departments Sealed Motion to Quash Subpoena; 504 Motion in Limine; 505 Motion to Dismiss Counts One, Two, Four, Five and Eight for Insufficiency of Indictment; 506 Motion to Suppress Statement; 507 Motion in Limine; and 508 Motion to Sever Steven Booth, Jr., is set for FRIDAY, 9/30/2011 03:00 PM in LAS VEGAS COURTROOM TBD before Chief Judge Robert C. Jones. IT IS SO ORDERED. Signed Chief Judge Robert C. Jones.**(no image attached)**(Copies have been distributed pursuant to the NEF - CL) (Entered: 09/02/2011) |
| 09/07/2011 | 514 | **ERROR: Not filed properly.** NOTICE OF ATTORNEY APPEARANCE Kathleen Bliss appearing for USA. *Notice for Kevin L. Rosenberg, Trial Attoreny* (Bliss, Kathleen) Modified on 9/7/2011 (LMC). (Entered: 09/07/2011) |
| 09/07/2011 | 516 | NOTICE: Attorney Action Required to 514 Notice of Attorney Appearance - USA. **ERROR: Not filed properly. If an AUSA wishes to become co-counsel on as case, he must file his own Notice of Attorney Appearance using his own CM/ECF account. (no image attached)**(LMC) (Entered: 09/07/2011) |
| 09/08/2011 | 517 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 9/8/2011 by Carrie Lipparelli, Judicial Assistant. IT IS HEREBY ORDERED that 509 Motion to Continue Date for Filing Supplemental Motions is GRANTED. IT IS FURTHER ORDERED that 512 Motion to Continue Oral Argument Set for September 30, 2011 is GRANTED. IT IS FURTHER ORDERED that ORAL ARGUMENT RE: 203 Motion to Quash or Modify Subpoena Duces Tecum (Steven Booth); 206 Real Party In Interest Las Vegas Metropolitan Police Departments Motion to Quash Subpoenas; 251 Real Party In Interest Las Vegas Metropolitan Police Departments Ex Parte, Sealed Motion to Quash Subpoena; 430 Application for Preservation Order; 492 Real Party In Interest Las Vegas Metropolitan Police Departments Sealed Motion to Quash Subpoena; 504 Motion in Limine; 505 Motion to Dismiss Counts One, Two, Four, Five and Eight for Insufficiency of Indictment; 506 Motion to Suppress Statement; 507 Motion in Limine; and 508 Motion to Sever Steven Booth, Jr., currently scheduled for FRIDAY, 9/30/2011 03:00 PM in LAS VEGAS COURTROOM TBD is VACATED and RESCHEDULED to FRIDAY, 12/02/2011 1:00PM in LAS VEGAS COURTROOM TBD before Chief Judge Robert C. Jones. IT IS SO ORDERED. Signed Chief Judge Robert C. Jones.**(no image attached)**(Copies have been distributed pursuant to the NEF - CL) (Entered: 09/08/2011) |
| 09/13/2011 | 518 | NOTICE OF ATTORNEY APPEARANCE Kevin L. Rosenberg appearing for USA. *Entry of Co-Counsel* (Rosenberg, Kevin) (Entered: 09/13/2011) |
| 10/11/2011 | 529 | MOTION to remove attorney(s) Mace J. Yampolsky, Esq.; Jasmine Smith; Ida Coleman from the Electronic Service List in this case, by Jacorey Taylor. Motion ripe 10/11/2011. (Yampolsky, Mace) (Entered: 10/11/2011) |

**ER-245**

| 10/14/2011 | 543 | MOTION for Joinder to 504 by Jacorey Taylor. Motion ripe 10/14/2011. (Herman, Carl) Modified to link to motion on 10/18/2011 (LMC). (Entered: 10/14/2011) |
| 10/14/2011 | 544 | MOTION for Joinder to 505 by Jacorey Taylor. Motion ripe 10/14/2011. (Herman, Carl) Modified to link to motion on 10/18/2011 (LMC). (Entered: 10/14/2011) |
| 10/14/2011 | 545 | MOTION for Joinder to 507 by Jacorey Taylor. Motion ripe 10/14/2011. (Herman, Carl) Modified to link to motion on 10/18/2011 (LMC). (Entered: 10/14/2011) |
| 10/14/2011 | 546 | MOTION for Joinder to 521 by Jacorey Taylor. Motion ripe 10/14/2011. (Herman, Carl) Modified to link to motion on 10/18/2011 (LMC). (Entered: 10/14/2011) |
| 10/14/2011 | 547 | MOTION for Joinder to 531 by Jacorey Taylor. Motion ripe 10/14/2011. (Herman, Carl) Modified to link to motion on 10/18/2011 (LMC). (Entered: 10/14/2011) |
| 10/14/2011 | 548 | MOTION for Joinder to #532 by Jacorey Taylor. Motion ripe 10/14/2011. (Herman, Carl) Modified to link to motion on 10/18/2011 (LMC). (Entered: 10/14/2011) |
| 10/14/2011 | 549 | MOTION for Joinder to 536 by Jacorey Taylor. Motion ripe 10/14/2011. (Herman, Carl) Modified to link to motion on 10/18/2011 (LMC). (Entered: 10/14/2011) |
| 10/27/2011 | 567 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 10/27/2011, by Carrie Lipparelli, Judicial Assistant.<br><br>IT IS HEREBY ORDERED that a MOTION HEARING RE:<br><br>203 Motion to Quash or Modify Subpoena Duces Tecum (Steven Booth);<br><br>206 Real Party In Interest Las Vegas Metropolitan Police Departments Motion to Quash Subpoenas;<br><br>251 Real Party in Interest Las Vegas Metropolitan Police Departments Ex Parte, Sealed Motion to Quash Subpoena;<br><br>430 Application for Preservation Order;<br><br>492 Real Party In Interest Las Vegas Metropolitan Police Departments Sealed Motion to Quash Subpoena;<br><br>504 Motion in Limine;<br><br>505 Motion to Dismiss Counts One, Two, Four, Five and Eight for Insufficiency of Indictment;<br><br>506 Motion to Suppress Statement;<br><br>507 Motion in Limine;<br><br>508 Motion to Sever Steven Booth, Jr.;<br><br>531 Motion for Disclosure of Rule 404(b) Evidence;<br><br>532 Motion to Inspect and Produce Personnel Files of Federal Law Enforcement and Task Force Officers;<br><br>533 Motion for Severance;<br><br>551 Defendant Tillmans Motion to Strike Suplusage;<br><br>554 Defendant Tillmans Motion to Dismiss Counts One, Two, Three and Nine of the Indictment;<br><br>566 Governments Motion to Strike Document No. 557 From Court Records<br><br>is set for FRIDAY, DECEMBER 2, 2011 @ 1:00PM in LAS VEGAS COURTROOM TBD, before the Honorable Chief Judge Robert C. Jones. IT IS SO ORDERED. Signed Chief Judge Robert C. Jones.**(no image attached)**(Copies have been distributed pursuant to the NEF - CL) (Entered: 10/27/2011) |
| 10/28/2011 | | NOTICE of Docket Correction to 559 Response to Motion, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas: **ERROR: Not linked to motion. CORRECTED BY COURT. Attorney Kathleen Bliss reminded that all responses, replies, addendums, supplements, erratas, etc. MUST be linked to the document to which they pertain. (no image attached)**(LMC) (Entered: 10/28/2011) |

<span style="color:red">ER-246</span>

| 10/31/2011 | 569 | MOTION to remove attorney(s) Mace J. Yampolsky, Esq. from the Electronic Service List in this case, by Jacorey Taylor. Motion ripe 10/31/2011. (Yampolsky, Mace) (Entered: 10/31/2011) |
|---|---|---|
| 11/01/2011 | 570 | NOTICE *of Intent to Introduce Expert Witness Testimony* by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Attachments: # 1 Exhibit A - Curriculum Vitae - Bordelon, # 2 Exhibit B - Curriculum Vitae - Zhivago, # 3 Exhibit C - Curriculum Vitae - Martinez, # 4 Exhibit D- Statement of Qualifications - Melville, # 5 Exhibit E - Curriculum Vitae - Conway, # 6 Exhibit F - Statement of Qualifications - Moses, # 7 Exhibit G - Statement of Qualifications - Krylo, # 8 Exhibit H - Curriculum Vitae - Martinez, # 9 Exhibit I - Statement of Qualifications - Brotherson, # 10 Exhibit J - Curriculum Vitae - Maldonado, # 11 Exhibit K - Statement of Qualifications - Boyd, # 12 Exhibit L - Statement of Qualifications - Farnham, # 13 Exhibit M - Statement of Qualifications - Fickies, # 14 Exhibit N - Statement of Qualifications - Geller, # 15 Exhibit O - Statement of Qualifications - Johnson, # 16 Exhibit P - Statement of Qualifications - Maceo, # 17 Exhibit Q - Statement of Qualifications - Narechania, # 18 Exhibit R - Statement of Qualifications - Rees, # 19 Exhibit S - Statement of Qualifications - Welch, # 20 Exhibit T - Curriculum Vitae - Dahn, # 21 Exhibit U - Curriculum Vitae - Kern, # 22 Exhibit V - Curriculum Vitae - Martin, # 23 Exhibit W - Curriculum Vitae - Schellberg, # 24 Exhibit X - Curriculum Vitae - Speas, # 25 Exhibit Y - Curriculum Vitae - Ford, # 26 Exhibit Z - Personal Information - Simms, # 27 Exhibit AA - Curriculum Vitae - Reed, # 28 Exhibit BB - Statement of Qualifications - Callo, # 29 Exhibit Attachment 1 - Results of Analysis, # 30 Exhibit Attachment 2 - Results of Analysis, # 31 Exhibit Attachment 3 - Summary Chart)(Bliss, Kathleen) Corrected image 575 added on 11/2/2011 (RFJ). Modified to remove duplicate wording on 11/3/2011 (LMC). (Entered: 11/01/2011) |
| 11/01/2011 | 571 | STIPULATION FOR EXTENSION OF TIME (First Request) *for Initial Defense Discovery Motions* by Markette Tillman as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Grele, John) Modified text on 11/3/2011 (LMC). (Entered: 11/01/2011) |
| 11/01/2011 | 573 | NOTICE of Corrected Image/Document re 570 Notice (Other), filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Service of corrected image is attached). (Bliss, Kathleen) (Entered: 11/01/2011) |
| 11/01/2011 | 574 | NOTICE *of Enterprise Acts* filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Bliss, Kathleen) Modified to correct event on 11/3/2011 (LMC). (Entered: 11/01/2011) |
| 11/02/2011 | 575 | NOTICE of Corrected Image/Document re 570 Notice (Other), 573 Notice of Corrected Image/Document, filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Service of corrected image is attached). (Attachments: # 1 Exhibit Lab Reports & Documents, # 2 Exhibit Summary Chart)(Bliss, Kathleen) (Entered: 11/02/2011) |
| 11/02/2011 | 576 | ORDER Denying 508 and 533 Motions to Sever. Signed by Chief Judge Robert C. Jones on 10/31/11. (Copies have been distributed pursuant to the NEF - EDS) (Entered: 11/02/2011) |
| 11/03/2011 | | NOTICE of Docket Correction to 574 Response - Other as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth: **ERROR: Filed under wrong event. CORRECTED BY COURT. Document is not a response, it is entitled Notice and should have been filed using the Notice event. (no image attached)**(LMC) (Entered: 11/03/2011) |
| 11/09/2011 | 584 | MOTION to Withdraw as Attorney *for Delvin Ward, Cocaine Base Resentencing Proceedings,* by Jason F. Carr. by Delvin Ward ~~as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas.~~ Motion ripe 11/9/2011. (Carr, Jason) Modified on 11/9/2011 (LMC). **CORRECTED IMAGE 586 added on 11/9/2011 (LMC).** (Entered: 11/09/2011) |
| 11/09/2011 | 585 | NOTICE: Attorney Action Required to 584 MOTION to Withdraw as Attorney. **ERROR: Document not signed, Header shows counsel for a defendant not on this case, document linked to all defendants. Attorney Jason Carr to refile a signed and corrected document and file ONLY as to the defendant to which it pertains. (no image attached)**(LMC) (Entered: 11/09/2011) |
| 11/29/2011 | 615 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 11/29/2011.

Due to a conflict in the Court's calendar, IT IS ORDERED that Oral Argument RE: 430 MOTION to Compel *Preservation of Evidence* filed by Markette Tillman, 251 **SEALED** MOTION to Quash filed by Las Vegas Metropolitan Police Department, 492 **SEALED** MOTION to Quash filed by Las Vegas Metropolitan Police Department, 545 MOTION for Joinder to (CR. 507) filed by Jacorey Taylor, 543 MOTION for Joinder to (CR. 504) filed by Jacorey Taylor, 544 MOTION for Joinder to (CR. 505) filed by Jacorey Taylor, 206 MOTION to Quash *Subpoenas* filed by Las Vegas Metropolitan Police Department, 507 MOTION in Limine *and Memorandum of Points and Authorities* filed by Steven Booth, 203 MOTION *to Quash or Modify Subpoena Duces Tecum (Steven Booth)* filed by Attorney General, 505 MOTION to Dismiss *Dismiss Counts One, Two, Four, Five and Eight for Insuffiency of Indictment and Memorandum of Points and Authorities in Support of the* |

<span style="color:red">ER-247</span>

| | | |
|---|---|---|
| | | *Motion* filed by Steven Booth, 504 MOTION in Limine *and Memorandum of Points and Authorities in Support of the Motion* filed by Steven Booth, CURRENTLY SCHEDULED FOR 12/2/2011 AT 1:00 PM IS RESCHEDULED (IN TIME ONLY) TO 1:30 PM (SAME DATE) IN LV COURTROOM 7C BEFORE CHIEF JUDGE ROBERT C. JONES.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 11/29/2011) |
| 11/29/2011 | 616 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 11/29/2011.<br><br>IT IS ORDERED that Oral Argument RE: 551 MOTION to Strike filed by Markette Tillman, 554 MOTION to Dismiss *Counts* filed by Markette Tillman, 532 MOTION to Inspect and Produce Personnel Files of Federal Law Enforcement and Task Force Officers filed by Reginald Dunlap, 531 MOTION for Disclosure of Rule 404b Evidence filed by Reginald Dunlap, 566 **SEALED** MOTION to Strike filed by USA, CURRENTLY SCHEDULED FOR 12/2/2011 AT 1:00 PM IS RESCHEDULED (IN TIME ONLY) TO 1:30 PM AND IN CONJUNCTION WITH ORAL ARGUMENT ON PREVIOUSLY SCHEDULED PENDING MOTIONS IN LV COURTROOM 7C BEFORE CHIEF JUDGE ROBERT C. JONES.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 11/29/2011) |
| 11/30/2011 | 617 | MOTION for Joinder to Defendant Markette Tillman's Motion for Discovery [#588] by Jacorey Taylor. Motion ripe 11/30/2011. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Herman, Carl) Modified to link to motion on 11/30/2011 (LMC). (Entered: 11/30/2011) |
| 11/30/2011 | 618 | MOTION to Continue trial (First Request) by Jacorey Taylor. Motion ripe 11/30/2011. (Attachments: # 1 Exhibit Exhibit A)(Herman, Carl) Modified to show type of motion on 11/30/2011 (LMC).*****Motion as to one defendant only, No speedy trial cited*****. (Entered: 11/30/2011) |
| 12/01/2011 | 620 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, on December 1, 2011, by Carrie Lipparelli, Judicial Assistant. IT IS HEREBY ORDERED that 569 Motion for Mace J. Yampolsky, Esq. Removal From CM/ECF Service List is GRANTED. IT IS FURTHER ORDERED that 529 Motion for Removal from Service list is DENIED AS MOOT. IT IS SO ORDERED. Signed by Chief Judge Robert C. Jones.(Copies have been distributed pursuant to the NEF - CL) (Entered: 12/01/2011) |
| 12/02/2011 | 633 | MINUTES OF PROCEEDINGS - Motion Hearing RE: 203 Motion to Quash or Modify Subpoena Duces Tecum (Steven Booth); 206 Real Party In Interest Las Vegas Metropolitan Police Departments Motion to Quash Subpoenas; 430 Application for Preservation Order; 504 Motion in Limine; 505 Motion to Dismiss Counts One, Two, Four, Five and Eight for Insufficiency of Indictment; 506 Motion to Suppress Statement; 507 Motion in Limine; 508 Motion to Sever Steven Booth, Jr.; 531 Motion for Disclosure of Rule 404(b) Evidence; 532 Motion to Inspect and Produce Personnel Files of Federal Law Enforcement and Task Force Officers; 533 Motion for Severance; 551 Defendant Tillmans Motion to Strike Suplusage; 554 Defendant Tillmans Motion to Dismiss Counts One, Two, Three and Nine of the Indictment; as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 12/2/2011 before Chief Judge Robert C. Jones. Crtrm Administrator: *L. Ettinger*; AUSA: *Kathleen Bliss and Nicholas Dickinson*; Def Counsel: *John Grele, CJA by telephone for Markette Tillman; Carl Herman, CJA for Jacorey Taylor; Cheryl Field-Lang, CJA for Reginald Dunlap; Shari Kaufman and Rebecca Rosenstein, AFPD for Steven Booth*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *1:33 - 2:26 p.m.*; Courtroom: *7C*;<br><br>Defendants are present in custody. The Court makes preliminary statements and hears arguments of counsel with respect to the thirteen motions and various joinders pending before this Court. After considering the comments of counsel, the Court advises how he intends to rule. Written ruling of the Court will issue.<br><br>Discussion is then held with respect to continuing the current trial setting and revised discovery plan and scheduling order.<br><br>Finally, the Court canvasses the Defendants with regard to their understanding of, and agreement with today's proceedings.<br><br>Accordingly, IT IS ORDERED Jury Trial as to defendants Reginald Dunlap, Jacorey Taylor, and Steven Booth, currently scheduled for 2/6/2012 is RESCHEDULED to 10/01/2012 at 9:00 A.M. in Las Vegas Courtroom TBD before Chief Judge Robert C. Jones. Calendar Call currently scheduled for 1/20/2012 is RESCHEDULED to 9/14/2012 at 9:00 A.M. in Las Vegas Courtroom TBD before Chief Judge Robert C. Jones.<br><br>IT IS FURTHER ORDERED Jury Trial as to Markette Tillman, currently scheduled for 4/23/2012 is RESCHEDULED to 12/3/2012 in Las Vegas Courtroom TBD before Chief Judge Robert C. Jones. Calendar Call currently scheduled for 4/13/2012 is RESCHEDULED to 11/16/2012 in Las Vegas Courtroom TBD before Chief Judge Robert C. Jones. |

<span style="color:red">ER-248</span>

| | | |
|---|---|---|
| | | IT IS FURTHER ORDERED Government shall submit, after consultation with counsel for Defendants, a proposed revised complex case scheduling order that includes the speedy trial provisions no later than 12/23/2011.<br><br>IT IS FURTHER ORDERED that Government shall have until 1/15/2012 to file any superseding information(s) or indictment(s), as specified on the record.<br><br>Defendants are remanded to custody.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 12/15/2011) |
| 12/08/2011 | 626 | ORDER Granting 529 MOTION to remove attorney Mace J. Yampolsky, Esq. Jasmine Smith, and Ida Coleman from the Electronic Service List in this case. Signed by Magistrate Judge Robert J. Johnston on 12/8/2011. (Copies have been distributed pursuant to the NEF - SLR) (Entered: 12/08/2011) |
| 12/09/2011 | 628 | ORDER Granting 203 Motion to Quash Booths Subpoena; Granting in part and Denying in part 206 Motion to Quash Taylors Subpoenas; Denying 430 Motion for a Preservation Order; Granting 531 Motion to Compel Production of Rule 404(b) Evidence and 547 Joinder ; Granting in part and denying in part 532 Motion Motion to Compel the Production of Federal Law Enforcement witnesses Personnel Files and 548 Joinder; Granting in part and denying in part 504 Motion in Limine and 543 Joinder; Granting 581 Motion to Consolidate Reply; Denying 507 Motion in Limine and 545 Joinder; Denying 505 Motion to Dismiss and 544 Joinder; Denying 554 Motion to Dismiss; Granting 527 Motion to Extend Time; Denying without prejudice 551 Motion to Strike Surplusage from the Indictment and 553 Joinder; Denying as moot 618 Motion to Continue Trial.. Signed by Chief Judge Robert C. Jones on 12/8/2011. (Copies have been distributed pursuant to the NEF - SLR) (Entered: 12/09/2011) |
| 12/14/2011 | 632 | RESPONSE to 588 MOTION for Discovery and Joinders 617 , 619 , 621 filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. Replies due by 12/24/2011. (Bliss, Kathleen) <u>Modified to remove duplicate wording on 12/15/2011 (LMC).</u> (Entered: 12/14/2011) |
| 12/26/2011 | 635 | MOTION to Extend Time (First Request) *to file Reply* re 632 Response to Motion, by Markette Tillman ~~as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth~~. Motion ripe 12/26/2011. (Attachments: # 1 Proposed Order)(Grele, John) <u>Modified to remove duplicate wording and show motion as to defendant Tillman only on 12/29/2011 (LMC).</u> (Entered: 12/26/2011) |
| 12/29/2011 | | NOTICE of Docket Correction to 635 MOTION to Extend Time (First Request) *to file reply*MOTION to Extend Time (First Request) *to file reply* as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth: **ERROR: Linked to all defendants. CORRECTED BY COURT. Attorney John Grele reminded to link documents ONLY to the defendant to which it pertains. (no image attached)**(LMC) (Entered: 12/29/2011) |
| 01/12/2012 | 640 | STIPULATION to Continue The Trial; filed by Steven Booth as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Kaufman, Shari) (Entered: 01/12/2012) |
| 01/12/2012 | 642 | ORDER TO CONTINUE - Ends of Justice - Granting 640 Stipulation to Continue as to Jacorey Taylor, Reginald Dunlap, Steven Booth. Time excluded from 2/7/12 until 10/1/12. Jury Trial continued to 10/1/2012 09:00 AM in LV Courtroom TBD before Chief Judge Robert C. Jones. Calendar Call continued to 9/14/2012 09:00 AM in LV Courtroom TBD before Chief Judge Robert C. Jones. Motions due by 2/28/2012. Responses due by 3/28/2012. Replies due by 4/18/2012. Trial briefs, proposed voir dire questions, proposed jury instructions, and a list of the Government's prospective witnesses must be submitted to the Court by 9/14/12. Signed by Chief Judge Robert C. Jones on 1/11/12. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 01/12/2012) |
| 01/18/2012 | 648 | MOTION for Joinder to Defendant Tillman's Response to Motion for Discovery; Request for Evidentiary Hearing (CR 645) by Steven Booth ~~as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth~~. Motion ripe 1/18/2012. (Kaufman, Shari) <u>Modified to link to reply and show that this is filed as to defendant Booth only on 1/19/2012 (LMC).</u> (Entered: 01/18/2012) |
| 01/24/2012 | 650 | SUPERSEDING INDICTMENT as to Markette Tillman (3) Counts 1s-3s, 9s, 10s-16s, 19s; Jacorey Taylor (5) Counts 1s, 5s, 6s, 9s, 17s-18s; Reginald Dunlap (8) Counts 1s, 5s, 7s, 9s; Steven Booth (9) Counts 1s, 2s, 4s, 5s, 8s, 9s. (MMM) (Entered: 01/24/2012) |
| 01/24/2012 | 651 | MINUTES OF PROCEEDINGS - Grand Jury Return as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 1/24/2012 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *Araceli Bareng*; AUSA: *Kathryn Newman*; Court Reporter/FTR #: *Norm Anderson*; Time of Hearing: *1:20 pm - 1:22 pm*; Courtroom: *3D*; Defendants are in local federal custody. Arraignment/Plea set for 2/3/2012 08:30 AM in LV Courtroom 3A before Magistrate Judge George Foley Jr.. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 01/24/2012) |
| 01/24/2012 | 653 | AO 257 to 650 Superseding Indictment as to Jacorey Taylor. (MMM) (Entered: 01/24/2012) |

<span style="color:red">ER-249</span>

| | | |
|---|---|---|
| 02/01/2012 | 657 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Markette Tillman on 2/1/2012. By Judicial Assistant: MXS. Sealed Hearing set for 2/6/2012, at 01:30 PM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. Only attorney John Grele and his paralegal are required to attend this hearing. **(no image attached)** (Copies have been distributed pursuant to the NEF and sent to the defendant manually - MXS) (Entered: 02/01/2012) |
| 02/01/2012 | 658 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 2/1/2012. By Judicial Assistant: MXS. Status Conference set for 2/6/2012, 02:00 PM in LV Courtroom 3D before Magistrate Judge Robert J. Johnston. Only counsel are required to appear for this hearing. **(no image attached)** (Copies have been distributed pursuant to the NEF and sent to the defendant manually - MXS) (Entered: 02/01/2012) |
| 02/03/2012 | 662 | MINUTES OF PROCEEDINGS - Arraignment/Plea as to Jacorey Taylor held on 2/3/2012 before Magistrate Judge George Foley, Jr. Crtrm Administrator: *Heidi Jordan*; AUSA: *Kathleen Bliss, Nicholas Dickinson*; Def Counsel: *Carl Herman*; Court Reporter/FTR #: *8:44-8:48*; Courtroom: *3A*; Defendant is present in custody with counsel. Defendant is arraigned on Superseding Indictment. Defendant pleads NOT GUILTY to count(s) 1, 5, 6, 9, 17, 18.<br><br>**Calendar Call remains as currently set for 9/14/2012 09:00 AM in LV Courtroom TBD before Chief Judge Robert C. Jones. Jury Trial remains as currently set for 10/1/2012 09:00 AM in LV Courtroom TBD before Chief Judge Robert C. Jones.**<br><br>Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - HJ) Modified on 2/3/2012 (HJ). (Entered: 02/03/2012) |
| 02/03/2012 | 665 | MINUTE ORDER IN CHAMBERS of the Honorable Magistrate Judge Robert J. Johnston, as to ~~Delvin Ward, Anthony Mabry,~~ Markette Tillman, ~~Demichael Burks,~~ Jacorey Taylor, ~~Fred James Nix, Sebastian Wigg,~~ Reginald Dunlap, Steven Booth, ~~Terrence Thomas~~ on 2/3/2012. By Deputy Clerk: J. Ries. Status check hearing in this matter is set for 2/6/12 at 2:00 p.m.. Out of state counsel wishing to attend this hearing telephonically are directed to call the meet-me-line at (702) 868-4906 and enter conference code: 123456. **(no image attached)** (Copies have been distributed pursuant to the NEF and sent to the defendant manually - JAR) <u>Modified to show pertains only to 4 defendants per CRD on 2/3/2012 (LMC).</u> (Entered: 02/03/2012) |
| 02/06/2012 | 668 | MINUTES OF PROCEEDINGS - Hearing re status conference as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 2/6/2012 before Magistrate Judge Robert J. Johnston. Crtrm Administrator: *J. Ries*; AUSA: *Kathleen Bliss and Nicholas Dickinson*; Def Counsel: *John G. Grele, Shari Kaufman, Rebecca Rosenstein and appearing telephonically are Carl J. Herman and Cheryl A. Field-Lang*; Court Reporter/FTR #: *2:35 - 2:44*; Courtroom: *3D*; Defendants are not present. The court canvasses and hears representations from counsel as to the status of this case. The court makes inquiry of counsel if there is any need for additional budget discussions. This hearing is concluded. **(no image attached)** (Copies have been distributed pursuant to the NEF - JAR) (Entered: 02/07/2012) |
| 02/21/2012 | 670 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, on February 21, 2012, by Carrie Lipparelli, Judicial Assistant. IT IS HEREBY ORDERED that 546 Motion for Joinder in Defendant Markette Tillmans Motion for Disclosure (CR. 521) is DENIED AS MOOT. IT IS SO ORDERED. Signed by Chief Judge Jones.(Copies have been distributed pursuant to the NEF and sent to the defendant manually - CL) (Entered: 02/21/2012) |
| 02/21/2012 | 671 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, on February 21, 2012, by Carrie Lipparelli, Judicial Assistant. IT IS HEREBY ORDERED that 587 Request for Extension of Time to File First Discovery Motion; 596 Request for Extension of Time to File Motions; 635 Request for Extension of Time to File Reply; 644 Defendant Booths Joinder in Defendant Tillmans Third Request for Extension of Time to File Reply (CR 643); 648 Defendant Booths Joinder in Defendant Tillmans Reply to Governments Response to Motion for Discovery; Request for Evidentiary Hearing (CR 645); and 649 Joinder in Reply to Governments Response to Motion for Discovery; Request for Evidentiary Hearing (Doc. 645) are GRANTED. IT IS SO ORDERED. Signed Chief Judge Robert C. Jones.**(no image attached)**(Copies have been distributed pursuant to the NEF and sent to the defendant manually - CL) (Entered: 02/21/2012) |
| 02/24/2012 | 674 | STIPULATION *to Continue the Defendant's Response to the ment's Notice of Intent to Introduce Expert Witness Testimony 570 and the Notice of Enterprise Acts 574* by Steven Booth as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Kaufman, Shari) **CORRECTED IMAGE 676 added on 2/27/2012 (LMC).** Modified to link to notices on 2/27/2012 (LMC). (Entered: 02/24/2012) |
| 02/24/2012 | 676 | NOTICE of Corrected Image/Document re 674 Stipulation, by Steven Booth as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Service of corrected image is attached). (Kaufman, Shari) (Entered: 02/24/2012) |

**ER-250**

| | | |
|---|---|---|
| 02/28/2012 | 678 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 2/28/2012. By Deputy Clerk: Lesa Ettinger.<br><br>IT IS ORDERED that the Oral Argument RE: 588 First **SEALED** MOTION For Discovery re 491 Order *For Complex Case Schedule* filed by Markette Tillman; 591 , 617 , and 619 Motions for Joinder to (CR 588); 592 First **SEALED** MOTION to Suppress filed by Markette Tillman; 593 MOTION to Suppress *Seach of Residence* filed by Markette Tillman; 594 MOTION for Bill of Particulars filed by Markette Tillman; 595 MOTION *for Release of Grand Jury Transcripts* filed by Markette Tillman; and 597 EX PARTE MOTION for Subpoenas Decus Tecum filed by Markette Tillman, CURRENTLY SCHEDULED FOR TUESDAY, 3/6/2012 is hereby VACATED, and is RESET **for Oral Argument on MONDAY 5/21/2012 at 02:30 PM in Las Vegas Courtroom to be determined before Chief Judge Robert C. Jones.**<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 02/28/2012) |
| 04/11/2012 | 689 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 4/11/2012. By Deputy Clerk: Lesa Ettinger.<br><br>IT IS ORDERED that the Oral Argument RE: CR 588 First SEALED MOTION For Discovery re CR 491 Order For Complex Case Schedule filed by Markette Tillman; 591, 617 , 619, and 621 Motions for Joinder to (CR 588); CR 592 First SEALED MOTION to Suppress filed by Markette Tillman; CR 593 MOTION to Suppress Seach of Residence filed by Markette Tillman; CR 594 MOTION for Bill of Particulars filed by Markette Tillman; CR 595 MOTION for Release of Grand Jury Transcripts filed by Markette Tillman; and CR597 EX PARTE MOTION for Subpoenas Decus Tecum filed by Markette Tillman, CURRENTLY SCHEDULED FOR 5/21/2012 is hereby VACATED, and is RESET for Oral Argument on FRIDAY, 6/08/2012 at 01:00 PM before Chief Judge Robert C. Jones in LAS VEGAS COURTROOM TO BE DETERMINED AND NOTICED AT THE PUBLIC ELEVATORS ON HEARING DATE.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/11/2012) |
| 05/15/2012 | 698 | STIPULATION FOR EXTENSION OF TIME (Second Request) to file responses by Markette Tillman as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Grele, John) Modified to remove excessive and duplicate wording on 5/16/2012 (LMC). (Entered: 05/15/2012) |
| 05/21/2012 | 703 | MOTION for Joinder to Steven Booths RESPONSE to Governments Notice of Intent 695 by Jacorey Taylor. Motion ripe 5/21/2012. (Herman, Carl) Modified to link to motion on 5/22/2012 (LMC). (Entered: 05/21/2012) |
| 05/21/2012 | 704 | MOTION for Joinder to Reginald Dunlaps RESPONSE to Governments Notice 574 of Intent by Jacorey Taylor. Motion ripe 5/21/2012. (Herman, Carl) Modified to link to motion on 5/22/2012 (LMC). (Entered: 05/21/2012) |
| 06/01/2012 | 711 | MOTION to remove attorney(s) Thomas F. Pitaro from the Electronic Service List in this case, by Jacorey Taylor. Motion ripe 6/1/2012. (Pitaro, Thomas) (Entered: 06/01/2012) |
| 06/01/2012 | 712 | REPLY to 695 Response - Other, filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. (Bliss, Kathleen) (Entered: 06/01/2012) |
| 06/06/2012 | 715 | MOTION for Leave to Appear via Telephone Connection. Attorney: Carl J. Herman. by Jacorey Taylor. Motion ripe 6/6/2012. (Attachments: # 1 Proposed Order Proposed Order)(Herman, Carl) (Entered: 06/06/2012) |
| 06/08/2012 | 717 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones as to Jacorey Taylor on 6/8/2012, by Carrie Lipparelli, Judicial Assistant. IT IS HEREBY ORDERED that 715 Request to Appear by Telephone at June 8, 2012 Court Hearing is DENIED. IT IS SO ORDERED. Signed Chief Judge Robert C. Jones. **(no image attached)** (Copies have been distributed pursuant to the NEF - CL) (Entered: 06/08/2012) |
| 06/08/2012 | 718 | MINUTES OF PROCEEDINGS - Hearing re Oral Argument regarding the following motions: 591 , 621 , 617 , 619 , 592 , 593 , 594 , 595 , doc. # 588 and 597, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap and Steven Booth held on 6/8/2012 before Chief Judge Robert C. Jones. Crtrm Administrator: *E. Garcia*; AUSA: *Kathleen Fliss and Eva Fontanez*; Def Counsel: *John Grele, Cherly Field-Lang, Shari Kaufman and Rebecca Rosenstein*; Court Reporter/FTR #: *Joan Quiros*; Time of Hearing: *1:12pm to 3:00 pm*; Courtroom: *7C*; Defendants are present. Court addresses length of Jury Trial as to Defendants. Court canvasses and hears representations from the parties regarding motions stated on the record. Court will enter order as stated on the record.<br><br>Motion Hearing - **Video Conference, set for 6/13/2012 1:00 PM, before Chief Judge Robert C. Jones in COURTROOM TO BE DETERMINED.**<br><br>**Defendants are remanded to custody.** |

| | | |
|---|---|---|
| | | **Defendant's presence are waived for the video conference on 06/13/2012.** **The hearing has been converted to a status conference and will be held in Reno courtroom 6 and through video conference in LV courtroom 4B (no image attached) (Copies have been distributed pursuant to the NEF - EMG) Modified documents and hearing location on 6/12/2012 (EMG). (Entered: 06/08/2012)** |
| 06/12/2012 | 719 | MOTION for Leave to Appear via telephone connection at the video conference scheduled for June 13, 2012 at 1:00 pm. Attorney: Carl J. Herman, Esq. by Jacorey Taylor. Motion ripe 6/12/2012. (Herman, Carl) (Entered: 06/12/2012) |
| 06/13/2012 | 720 | TRANSCRIPT of Proceedings, 718 Miscellaneous Hearing, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 6/8/12 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Donna Davidson, 775-329-0132. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/4/2012. Redacted Transcript Deadline set for 7/14/2012. Release of Transcript Restriction set for 9/11/2012. (DD) (Entered: 06/13/2012) |
| 06/13/2012 | 721 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Jacorey Taylor on 6/13/2012. By Deputy Clerk: Lesa Ettinger.<br><br>IT IS ORDERED that 719 Motion for Leave to Appear Telephonically for the 6/13/12 Hearing as to Jacorey Taylor (5) is GRANTED.<br><br>Counsel shall dial into the Court's Meet-Me-Line (702-868-4925 passcode 123456) five (5) minutes prior to the hearing time.<br><br>(Copies have been distributed pursuant to the NEF - LE) (Entered: 06/13/2012) |
| 06/13/2012 | 724 | MINUTES OF PROCEEDINGS - Status Conference as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 6/13/2012 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Appearing in Las Vegas, Kathleen Bliss and Nicholas Dickinson*; Def Counsel: *Appearing in Las Vegas: Shari Kaufman, Rebecca Rosenstein. Appearing in Reno: Cheryl Field-Lang. Appearing by telephone: John Grele and Carl Herman*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *1:07 - 1:20 p.m.*; Courtroom: *6*;<br>Defendants are not present. Court and counsel confer with respect to the Court's 627 Sealed Order Granting 251 and 492 Motions to Quash. Discussion is then held in relation to scheduling and CJA budget matters.<br><br>IT IS ORDERED that the Court Clerk shall redistribute to counsel the Court's 627 Sealed Order Granting 251 and 492 Motions to Quash.<br><br>IT IS FURTHER ORDERED that henceforth all CJA budget matters shall be directed to and decided by this Court.<br><br>IT IS FURTHER ORDERED that Oral Argument re: 574 Government's Notice of Enterprise; and 703 , 704 , 706 , 707 , 708 , 722 Motions for Joinder, is scheduled for Friday, 7/6/2012 01:00 PM in LV Courtroom 4B before Chief Judge Robert C. Jones.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 06/15/2012) |
| 06/14/2012 | 722 | MOTION for Joinder to #713 *Defendant Tillmans objections to Notice of Enterprise Evidence 574* by Jacorey Taylor. Motion ripe 6/14/2012. (Herman, Carl) **Modified to link to motion and remove all caps on 6/15/2012 (LMC). (Entered: 06/14/2012)** |
| 06/18/2012 | 726 | REPLY to Response to 722 MOTION for Joinder to Doc 713 *defendant Tillmans objections to notice of enterprise evidence (Doc. 574)* ; filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth. *and to Sealed Documetn 713* (Bliss, Kathleen) (Entered: 06/18/2012) |
| 06/27/2012 | 727 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth on 6/27/2012. By Deputy Clerk: Lesa Ettinger.<br><br>IT IS ORDERED that Oral Argument RE: 574 Government's Notice of Enterprise; and 703 , 704 , 706 , 707 , 708 , 722 Motions for Joinder, currently scheduled for Friday, 7/6/2012 is **RESCHEDULED for FRIDAY, 8/10/2012 01:30 PM** before Chief Judge Robert C. Jones in LV Courtroom TO BE NOTICED ON HEARING DATE AT THE PUBLIC ELEVATORS.<br><br>IT IS FURTHER ORDERED that Oral Argument RE: 705 Second MOTION to Sever Defendant Steven Booth, is hereby set for hearing in conjunction with the other pending motions on FRIDAY, 8/10/2012 01:30 PM before Chief Judge Robert C. Jones in LV Courtroom TO BE NOTICED ON HEARING DATE AT THE PUBLIC |

ER-252

| | | |
|---|---|---|
| | | ELEVATORS.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 06/27/2012) |
| 07/02/2012 | [728](#) | ORDER Granting [711](#) Motion to Remove Attorney from Electronic Service List by Thomas Pitaro as to Jacorey Taylor (5). Signed by Magistrate Judge Robert J. Johnston on 7/2/12. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 07/02/2012) |
| 07/09/2012 | [730](#) | ORDER Granting in part and Denying in part 588 Motion for Discovery, as to Markette Tillman (3); and Joinders 591 as to Steven Booth; [617](#) as to Jacorey Taylor (5); 619 as to Reginald Dunlap (8); and 621 as to Steven Booth (9). FURTHER ORDERED that 592 and 593 Motions to Suppress, as to Markette Tillman (3) are DENIED. FURTHER ORDERED that 594 Motion for Bill of Particulars as to Markette Tillman (3) is DENIED. FURTHER ORDERED that 595 Motion for Release of Grand Jury Transcripts, as to Markette Tillman (3) is GRANTED. FURTHER ORDERED that 597 Ex Parte Motion for Subpoenas as to Markette Tillman (3) is GRANTED. Signed by Chief Judge Robert C. Jones on 7/9/12. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 07/09/2012) |
| 07/09/2012 | [731](#) | STIPULATION FOR EXTENSION OF TIME (First Request) *to Set Date on Objections to Enterprise Evidence* by Markette Tillman ~~as to Delvin Ward, Anthony Mabry~~, Markette Tillman, ~~Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas~~. (Grele, John) Modified filing parties on 7/10/2012 (MAJ). (Entered: 07/09/2012) |
| 08/01/2012 | [739](#) | TRANSCRIPT of Proceedings, 668 Miscellaneous Hearing, as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth held on 2/6/12 before Magistrate Judge Robert J. Johnston. Court Reporter/Transcriber: Donna Davidson, 775-329-0132. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website [www.nvd.uscourts.gov](#) before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/22/2012. Redacted Transcript Deadline set for 9/1/2012. Release of Transcript Restriction set for 10/30/2012. (DD) (Entered: 08/01/2012) |
| 08/07/2012 | [742](#) | NOTICE OF ATTORNEY APPEARANCE Phillip N Smith, Jr appearing for USA. (Smith, Phillip) (Entered: 08/07/2012) |
| 08/10/2012 | 745 | MINUTES OF PROCEEDINGS - Motion Hearing RE: [574](#) Government's Notice of Intent, [703](#) , [704](#) , 706 , [722](#) Motions for Joinder, and 705 Booth's Second Motion to Sever as to Jacorey Taylor, Reginald Dunlap, Steven Booth held on 8/10/2012 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Kathleen Bliss, Philip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, Cheryl Field-Lang, Shari Kaufman, Rebecca Rosenstein*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *1:47 - 2:25 3:04 - 3:21*; Courtroom: *4B*;<br><br>Defendants are present in custody. The Court makes preliminary remarks and hears arguments of counsel with respect to the motions at issue. (Court recesses from 2:35 p.m. to 3:04 p.m.) Following arguments, the Court advises that he intends to grant in part and deny in part defendant 695 Booth's Response to [574](#) Government's Notice of Intent and the Joinders thereto ( [703](#) , [704](#) , [722](#) defendant Taylor's Joinders, 706 defendant Dunlap's Joinder). With respect to defendant 705 Booth's Second Motion to Sever, the Court intends to deny the motion. *Written ruling of the Court will issue*.<br><br>Discussion is then held in relation to trial readiness. The Court advises counsel that it has a calendar conflict with the date currently scheduled for trial. Discussion is then held as to mutually convenient dates to reset the trial.<br><br>IT IS ORDERED Jury Trial currently scheduled for 10/01/2012 is hereby VACATED and RESET for 1/14/2013 08:30 AM in LV Courtroom 4B before Chief Judge Robert C. Jones. Calendar Call set for 1/7/2013 08:30 AM in LV Courtroom 4B before Chief Judge Robert C. Jones. DEFENDANTS SHALL BE PRESENT IN THE COURTROOM FOR CALENDAR CALL.<br><br>Defendants are remanded to custody.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 08/23/2012) |

**ER-253**

| Date | Doc # | Description |
|---|---|---|
| 08/29/2012 | 748 | TRANSCRIPT of Proceedings, 745 Motion Hearing as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacorey Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas held on 8/10/2012 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/19/2012. Redacted Transcript Deadline set for 9/29/2012. Release of Transcript Restriction set for 11/27/2012. (MG) (Entered: 08/29/2012) |
| 09/06/2012 | 749 | ORDER as to Marquette Tillman (3), Jacorey Taylor (5), and Reginald Dunlap (8), that the Motions in Limine 695 , 701 , 713 and Joinders thereto ( 703 , 704 , 706 , 707 , 708 , 722 ) are GRANTED in part and DENIED in part. FURTHER ORDERED that the Motion to Reconsider 705 as to Stephen Booth (9) is DENIED. FURTHER ORDERED that the Government shall within 14 days of the entry of this Order file a memorandum explaining its foundation for the admission of any evidence identified in the present Order with respect to which the Court has noted additional foundation may be necessary. (See Order for details). Defendants shall have 7 days after the Government files its memorandum to object.Signed by Chief Judge Robert C. Jones on 9/6/12. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 09/06/2012) |
| 09/13/2012 | 752 | TRANSCRIPT of Proceedings, 662 Arraignment/Plea, as to Jacorey Taylor held on 2/3/12 before Magistrate Judge George Foley, Jr. Court Reporter/Transcriber: Donna Davidson, 775-329-0132. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/4/2012. Redacted Transcript Deadline set for 10/14/2012. Release of Transcript Restriction set for 12/12/2012. (DD) (Entered: 09/13/2012) |
| 09/20/2012 | 753 | MEMORANDUM filed by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap, Steven Booth re 749 Order. (Dickinson, Nicholas) Modified on 9/21/2012 (LMC). (Entered: 09/20/2012) |
| 12/06/2012 | 768 | MOTION To Rejoin Defendants For Trial by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap. Responses due by 12/23/2012. (Dickinson, Nicholas) Corrected Image 769 added on 12/6/2012 (LMC). (Entered: 12/06/2012) |
| 12/06/2012 | 769 | NOTICE of Corrected Image/Document re 768 MOTION To Rejoin Defendants For Trial by USA as to Markette Tillman, Jacorey Taylor, Reginald Dunlap. (Service of corrected image is attached). (Dickinson, Nicholas) (Entered: 12/06/2012) |
| 12/18/2012 | 776 | TRANSCRIPT of Proceedings, 763 Miscellaneous Hearing as to Steven Booth held on December 5, 2012 before Judge Philip M. Pro. Court Reporter/Transcriber: NW Transcripts, LLC, 208-908-7998. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/8/2013. Redacted Transcript Deadline set for 1/18/2013. Release of Transcript Restriction set for 3/18/2013. (HE) (Entered: 12/18/2012) |
| 12/24/2012 | 781 | RESPONSE to 768 MOTION To Rejoin Defendants For Trial ; filed by Jacorey Taylor. Replies due by 12/30/2012. (Herman, Carl) (Entered: 12/24/2012) |
| 01/03/2013 | 783 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to **Markette Tillman, Jacorey Taylor** on 1/3/2013. By Deputy Clerk: Lesa Ettinger.<br><br>IT IS ORDERED that Defendant Taylor's Calendar Call currently scheduled for Monday, 1/7/2013 at 8:30 AM is hereby VACATED and RESET for Friday, 1/11/2013 at 10:45 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.<br><br>IT IS FURTHER ORDERED that Oral Argument RE: 768 MOTION To Rejoin Defendants For Trial filed by USA, 774 First **SEALED** EX PARTE MOTION *for Rule 17(c) Subpoena* filed by Markette Tillman, 775 First MOTION for Production of Evidence for Expert Examination filed by Markette Tillman, 779 First MOTION to Vacate 187 Protective Order filed by Markette Tillman, is scheduled for Friday, 1/11/2013 10:45 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 01/03/2013) |
| 01/07/2013 | 788 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to all defendants on 1/7/2013. IT IS ORDERED that this case is reassigned to Magistrate Judge Nancy J. Koppe for all further proceedings. Magistrate Judge Robert J. Johnston no longer assigned to case. All further documents must bear the correct case number 2:08-cr-00283-RCJ-NJK. **(no image attached)** (Copies have been distributed pursuant |

ER-254

| | | to the NEF and sent to the defendant manually - SLR) (Entered: 01/07/2013) |
|---|---|---|
| 01/09/2013 | 791 | ORDER as to Markette Tillman, Jacoery Taylor, Reginald Dunlap, Steven Booth that 768 MOTION To Rejoin Defendants For Trial is GRANTED. FURTHER ORDERED that 774 Motion for Subpoena is GRANTED. FURTHER ORDERED that 775 Motion for Production of Evidence for Expert Examination is DENIED. FURTHER ORDERED that 779 Motion to Vacate Protective Order is DENIED. FURTHER ORDERED that 785 Motion to Extend Time to Respond and 784 Motion Requesting Telephonic Appearance are GRANTED. Signed by Chief Judge Robert C. Jones on 1/9/13. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 01/10/2013) |
| 01/11/2013 | 794 | MINUTES OF PROCEEDINGS - Calendar Call/Motion Hearing as to Markette Tillman and Jacoery Taylor held on 1/11/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Eileen Sterba*; AUSA: *Nicholas Dickinson/Phillip Smith/Kevin Rosenberg*; Def Counsel: *Carl Herman/John Grele (telephonic)*; Court Recorder: *Joan Quiros*; Time of Hearing: *11:08-11:33 AM*; Courtroom: *4B*. Defendants Tillman and Taylor present in custody. Motions 768 775 779 have been addressed by Order 791 . The Court canvasses counsel regarding rejoinder of defendants Tillman and Taylor and discusses scheduling issues. The Order will stand and the defendants will be joined. Estimate 4 weeks for trial. No continuances will be granted. Government will provide counsel with a list of which racketeering events they intend to use by 1/31/13. The Court encourages counsel to undertake any Jencks discussions within a couple of weeks of this hearing. Calendar Call set for 3/13/2013 at 09:00 AM before Chief Judge Robert C. Jones. Jury Trial set for 4/8/2013 at 08:30 AM before Chief Judge Robert C. Jones. Defendants are remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - ECS) (Entered: 01/14/2013) |
| 01/28/2013 | 796 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Delvin Ward, Anthony Mabry, Markette Tillman, Demichael Burks, Jacoery Taylor, Fred James Nix, Sebastian Wigg, Reginald Dunlap, Steven Booth, Terrence Thomas on 1/28/2013. IT IS ORDERED that this case is reassigned to Magistrate Judge Peggy A. Leen for all further proceedings. Magistrate Judge Nancy J. Koppe no longer assigned to case. All further documents must bear the correct case number 2:08-cr-0283-RCJ-PAL. (no image attached) (Copies have been distributed pursuant to the NEF and sent to the defendant manually - EDS) (Entered: 01/28/2013) |
| 02/07/2013 | 798 | MOTION Motion for production of non-testimonial tattoo evidence by USA as to Markette Tillman, Jacoery Taylor. Responses due by 2/24/2013. (Rosenberg, Kevin) (Entered: 02/07/2013) |
| 02/20/2013 | 800 | MOTION for court order regarding defendants requested examination of cell phone by USA as to Markette Tillman ~~Jacoery Taylor~~. Responses due by 3/9/2013. (Rosenberg, Kevin) Modified to remove all caps & show motion pertains to defendant Tillman only on 2/21/2013 (LMC). (Entered: 02/20/2013) |
| 02/21/2013 | | NOTICE of Docket Correction to 800 MOTION for court order regarding cell phone as to Markette Tillman, Jacoery Taylor: **ERROR: Linked to both defendants. CORRECTED BY COURT. Attorney Rosenburg reminded to link documents only to the defendant to which it pertains. (no image attached)**(LMC) (Entered: 02/21/2013) |
| 02/22/2013 | 805 | MOTION in Limine *to Offer Prior Testimony of Unavailable Witness* by USA as to Markette Tillman, Jacoery Taylor. Responses due by 3/11/2013. (Attachments: # 1 Exhibit A)(Dickinson, Nicholas) Modified text on 2/22/2013 (LMC). (Entered: 02/22/2013) |
| 02/27/2013 | 807 | ORDER, as to Markette Tillman, that the court will immediately disappoint Mr. John Grele and cause the Clerk of the Court to appoint a new CJA panel approved attorney in his stead. FURTHER ORDERED that a Status Hearing on this case and the consolidated case of USA v. Taylor will be held on Wednesday March 13, 2013 at 09:00, in Las Vegas Courtroom 4B for consideration of further proceedings pending trial. FURTHER ORDERED that a copy of this order will be referred to the State of California Bar Association for violation of Mr. Greles ethical obligations under professional code, for abandonment of representation of his client and without prior court approval. Signed by Chief Judge Robert C. Jones on 2/27/13. (Copies have been distributed pursuant to the NEF; B. Price: CA State Bar - MMM) (CL). (Entered: 02/27/2013) |
| 03/05/2013 | 814 | ORDER REGARDING TRIAL **as to Markette Tillman, Jacoery Taylor**<br>Jury Trial set for 4/8/2013 08:30 AM in LV Courtroom 4B before Chief Judge Robert C. Jones. Calendar Call set for 3/13/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones. Exhibit List due by 3/13/2013. Witness List due by 3/13/2013. Proposed Voir Dire due by 3/13/2013. Proposed Jury Instructions due by 3/13/2013. **See attached Order for specifics.** Signed by Chief Judge Robert C. Jones on 03/05/2013. (Copies have been distributed pursuant to the NEF - LE) (Entered: 03/05/2013) |
| 03/07/2013 | 815 | TRANSCRIPT of Proceedings, 794 Motion Hearing,,,, as to Markette Tillman, Jacoery Taylor held on 1-11-13 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Kathy French, 530-913-9213. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/28/2013. Redacted Transcript Deadline set for |

ER-255

| | | |
|---|---|---|
| | | 4/7/2013. Release of Transcript Restriction set for 6/5/2013. (KF) (Entered: 03/07/2013) |
| 03/13/2013 | 820 | MINUTES OF PROCEEDINGS - Status Conference as to Markette Tillman and Jacorey Taylor held on 3/13/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Eileen Sterba*; AUSA: *Nicholas Dickinson/Phillip Smith/Kevin Rosenberg*; Def Counsel: *Lance Maningo*; Court Reporter: *Margaret Griener*; Time of Hearing: *9:13-9:35 AM*; Courtroom: *4B*. Defendants are present in custody with counsel. Paralegal Mia Ji is also present. The Court canvasses counsel regarding trial readiness. The Government and Defendant Taylor are ready to proceed to trial on 4/8/13. Counsel for Defendant Tillman requests a continuance of trial as a result of his being a new appointment to this case and invokes a speedy trial exclusion of time. The Court ORDERS that Mr. Tillman and Mr. Taylor are SEVERED. Mr. Taylor will proceed to trial as scheduled on 4/8/13. The Court GRANTS a continuance of the trial for Defendant Markette Tillman. Trial for Mr. Tillman is scheduled for 9/23/13 at 8:30 AM and Calendar Call on 9/16/13 at 9:00 AM. Defendant Tillman may file a motion for continuance indicating reasons for any further continuance. The Government requests a verbal ruling on their motion re Defendant Taylor's tattoos. The Defendant does not object. The Court GRANTS Government's 798 Motion for production of non-testimonial tattoo evidence. Mr. Maningo addresses the matter of "second chair" in this matter and the Court GRANTS the request with a budget of up to $50,000. Mr. Maningo will also continue the services of Paralegal Mia Ji. Defendants are remanded to custody. (Copies have been distributed pursuant to the NEF - ECS) Modified on 3/14/2013 to include language about speedy trial time exclusion(ECS). (Entered: 03/13/2013) |
| 03/13/2013 | 822 | PROPOSED Jury Instructions by USA as to Jacorey Taylor (Dickinson, Nicholas) (Entered: 03/13/2013) |
| 03/13/2013 | 823 | PROPOSED Voir Dire by USA as to Jacorey Taylor (Dickinson, Nicholas) (Entered: 03/13/2013) |
| 03/19/2013 | 829 | EXHIBIT LIST by USA as to Jacorey Taylor (Dickinson, Nicholas) (Entered: 03/19/2013) |
| 03/19/2013 | 831 | NOTICE *Pursuant to 21 U.S.C. Section 851(a)* by USA as to Jacorey Taylor. (Attachments: # 1 Exhibit 1)(Smith, Phillip) (Entered: 03/19/2013) |
| 03/25/2013 | 834 | ORDER, as to Markette Tillman (3), Jacorey Taylor (5), that 798 MOTION for production of Non-testimonial Evidence is GRANTED. FURTHER ORDERED that 800 Motion to Order Examination is GRANTED. FURTHER ORDERED that 805 Motion in Limine is GRANTED. Signed by Chief Judge Robert C. Jones on 3/25/13. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 03/25/2013) |
| 04/01/2013 | 836 | WITNESS LIST by Jacorey Taylor. (Herman, Carl) (Entered: 04/01/2013) |
| 04/01/2013 | 837 | PROPOSED Voir Dire by Jacorey Taylor (Herman, Carl) (Entered: 04/01/2013) |
| 04/02/2013 | 838 | PROPOSED Jury Instructions by Jacorey Taylor (Herman, Carl) (Entered: 04/02/2013) |
| 04/03/2013 | 839 | MOTION for Leave to File *Document Under Seal* by Jacorey Taylor. Motion ripe 4/3/2013. (Herman, Carl) (Entered: 04/03/2013) |
| 04/07/2013 | 850 | WITNESS LIST by USA as to Jacorey Taylor. (Dickinson, Nicholas) (Entered: 04/07/2013) |
| 04/07/2013 | 851 | EXHIBIT LIST by USA as to Jacorey Taylor *Revised* (Dickinson, Nicholas) (Entered: 04/07/2013) |
| 04/08/2013 | 852 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 1)- Voir Dire/Jury Selection** as to Jacorey Taylor held on 4/8/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *8:44 a.m. - 6:00 p.m.*; Courtroom: *4B*; Plas Witnesses: None. Dfts Witnesses: None. Defendant is present. One hundred-nine prospective jurors are sworn by the clerk. Thirty-two prospective jurors are then seated and voir dire is conducted. Challenges for cause are exercised, followed by peremptory challenges. A *Batson* challenge is made by defense counsel and a sidebar is held. A panel of 12 jurors and 2 alternates are selected and sworn. **IT IS ORDERED Jury Trial is continued to Tuesday, 4/9/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/09/2013) |
| 04/09/2013 | 853 | MINUTES OF PROCEEDINGS - **Jury Trial(DAY 2)** as to Jacorey Taylor held on 4/9/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:13 a.m. - 4:42 p.m.*; Courtroom: *4B*; Defendant is present. Opening statements are presented. Exclusionary rule is invoked. Plas Witnesses: Roger Rionda, John Word, Leonard Cardinale, Kent Marscheck, James Bonkavich, Damian Walburn, Bill Nellis, Louis Turcaz. Dfts Witnesses: None. **Government's exhibit numbers: 76, 77, 78, 79, 80, 81, 83a, 83b, 84, 86, 87, 88, and 134 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Wednesday, 4/10/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/10/2013) |

ER-256

| 04/10/2013 | 854 | MINUTES OF PROCEEDINGS - **Jury Trial- (DAY 3)** as to Jacorey Taylor held on 4/10/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carla Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:06 a.m. - 4:40 p.m.*; Courtroom: *4B*; <br> Defendant is present. Plas Witnesses: Edward Collaraffi, Les Dumag, John Longworth, Kenneth Simpson, Francis Shipp, Alice Maceo, Jessie James Cooper, Nathan Bradford, Patricia Spencer, Kevin Ploense, Richard Rodriguez. Dfts Witnesses: None. <br> The Court stops direct examination of Mr. Jessie James Cooper, advised him to seek counsel regarding his testimony and continues examination of Mr. Jessie James Cooper to Friday, 4/12/2013 at 9:00 a.m. **Government's exhibit numbers: 31, 57a, 57b, 58, 60, 135, 137, 138, and 151 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Thursday, 4/11/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. <br> **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/11/2013) |
| 04/11/2013 | 855 | MOTION for Leave to File *Document Under Seal* by Jacorey Taylor. Motion ripe 4/11/2013. (Herman, Carl) (Entered: 04/11/2013) |
| 04/11/2013 | 862 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 4)** as to Jacorey Taylor held on 4/11/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:11 a.m. - 5:10 p.m.*; Courtroom: *4B*; <br> Defendant is present. Plas Witnesses: Carmen Donegan, Jerrilyn Conway, Jeremy Bellejos, Deborah Zellis, Reggie Rader, Diana Moore. Dfts Witnesses: None. **Governments exhibit numbers: 20, 49, 50, 51, 52, 53, 56, 139, 157-9, 157-16, 157-18, 164, and 169 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Friday, 4/12/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. <br> **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/12/2013) |
| 04/12/2013 | 863 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 5)** as to Jacorey Taylor held on 4/12/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:11 a.m.*; Courtroom: *4B*; <br> Defendant is present. Plas Witnesses: Diana Moore, Jessie James Cooper, Brett Shields, William Majors, Jon Kruthaupt, Michael Barber, Eduardo Ortiz, Bridney Gatson. Dfts Witnesses: None. **Government's exhibit numbers: 91, 92, 109-D,129, 149, 157-3, 157-11, 157-13, 157-14, 165-1, 165-3, 170, 172, and 173 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Monday, 4/15/2013 11:30 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. <br> **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/12/2013) |
| 04/15/2013 | 864 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 6)** as to Jacorey Taylor held on 4/15/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *11:31 a.m. - 5:10 p.m.*; Courtroom: *4B*; <br> Defendant is present. Plas Witnesses: Warren Burke, Cornelius Williams,. Dfts Witnesses: None. **Government's exhibit numbers: 1, 2, 35, 36, 37, 41, 61, 62, 63, 65, 66, 67, 68, 128, and 158-1 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Tuesday, 4/16/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. <br> **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/15/2013) |
| 04/16/2013 | 865 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 7)** as to Jacorey Taylor held on 4/16/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:06 a.m. - 4:20 p.m*; Courtroom: *4B*; <br> Defendant is present. Plas Witnesses: Nicole Fountain. Dfts Witnesses: None. **Government's exhibit numbers: 106, 107, 108, 109, 110, 145, 153, 157-1, 157-2, 157-4, 157-5, 157-6, 157-7, 157-8, 157-10, 157-12, 157-15, 157-17, 158-2 thru 158-17, and 171 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Wednesday, 4/17/2013 12:00 PM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. <br> **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/16/2013) |

**ER-257**

| 04/17/2013 | 868 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 8)** as to Jacorey Taylor held on 4/17/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *12:08 - 4:55 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: Robert Zanolli, Jeffery Hirsch, Craig Lyford, Michael Calarco, Rosalind Davis-Hughes, Christopher Baughman, Michael Ford, Barry Jensen. Dfts Witnesses: None. **Government's exhibit numbers: 3-1 thru 3-25, 45, 46, 47, 112, 113, 114, 115, 116, 121, 123, 131, 174, and 175 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Thursday, 4/18/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/18/2013) |
| 04/18/2013 | 869 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 9)** as to Jacorey Taylor held on 4/18/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Dan Long, Kiaana Griffin, Peter Schellberg Daniel Ford, Genell McGibra, Charles Yannis*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:08 a.m. - 5:05 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: Dan Long, Kiaana Griffin, Peter Schellberg Daniel Ford, Genell McGibra, Charles Yannis. Dfts Witnesses: None. **Government's exhibit numbers: 4-1 thru 4-76, 5-1, 5-2, 9, 11, 12, 13, 13a-2, 14, 15, 18, 21, 22, 23a, 23b, 24, 141-2, 177, and 176 are admitted in evidence. Defendant's exhibit number 500 is admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Friday, 4/19/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/18/2013) |
| 04/19/2013 | 870 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 10)** as to Jacorey Taylor held on 4/19/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman,CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:12 a.m. - 4:00 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: Jessica Billingsley, Jason Lawrence, Jeff Lewis, Jason Nelson, Fabreonne Tillman, Robert Kinch, Dr. Larry Simms, Elias Cardenas, Kadecia Williams. Dfts Witnesses: None. **Government's exhibit numbers: 5-3, 7, 10, 17, 19, 27, 28, 29a, 29b, 30, 32, 33, 42, 43, 71, 72, 73, 75-1 thru 75-4, 75-6 thru 75-15, and 178 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Monday, 4/22/2013 08:30 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/22/2013) |
| 04/22/2013 | 871 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 11)** as to Jacorey Taylor held on 4/22/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *8:33 a.m. - 3:42 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: Kadecia Williams, Dinnah Angel Moses, Kenya Robinson, Greg Lewis, Al Zavala, Jane Scott. Dfts Witnesses: None. **Government's exhibit numbers: 165-6, 165-7, and 179 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Tuesday, 4/23/2013 09:30 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/22/2013) |
| 04/23/2013 | 872 | WRIT of Habeas Corpus ad Testificandum Issued as to Steven Booth for 4/24/13 at 9:00 a.m. in case as to Jacorey Taylor by Chief Judge Robert C. Jones. (MMM) (Entered: 04/23/2013) |
| 04/23/2013 | 873 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 12)** as to Jacorey Taylor held on 4/23/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA* ; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:36 a.m. - 5:00 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: Sandra Taylor, Angelica Ruiz, Ray Martinez, Scott Bakken, Adam Hyde. Dfts Witnesses: None. **Government's exhibit numbers: 1a, 44, 89, 93a, 93b, 93c, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 141-1, 160, 180, 181, and 182 are admitted in evidence. Defendant's exhibit number 501 is marked.** During the duration of the trial, Government shall retain possession of admitted contraband. Outside the presence of the jury the Court canvasses the defendant regarding his Fifth Amendment Rights and his right not to testify. **IT IS ORDERED Jury Trial is continued to Wednesday, 4/24/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/24/2013) |
| 04/24/2013 | 874 | ORDER REGARDING DETENTION. MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Jacorey Taylor on 4/19/2013. By Deputy Clerk: Lesa Ettinger. The defendant, Jacorey Taylor, is currently in custody in the Nevada Southern Detention Center, Pahrump, Nevada. ORDERED that |

| | | |
|---|---|---|
| | | during the defendant's trial he shall be housed separate from, and have no contact with, co-defendants in this case held in custody at the Southern Nevada Detention Center, Pahrump, Nevada. FURTHER ORDERED that the defendant shall be afforded a reasonableopportunity for private consultation with defense counsel. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 04/24/2013) |
| 04/24/2013 | 879 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 13)** as to Jacorey Taylor held on 4/24/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:14 a.m. - 3:23 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: Eric Stout, Gary McCamel,. Dfts Witnesses: Steven Booth. **Government's exhibit numbers: 16, 26, 55, 120, 122, 142, 143, 161, 162, 163, and 165-4 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. Government rest it's case-in-chief. Court hears arguments from counsel with regard to Defendant's oral Rule 29(a) motion. The Court makes finding for the record and DENIES the oral motion. Court canvasses the defendant regarding his Fifth Amendment Rights and his right not to testify. Defendant wishes to testify. At 3:23 p.m. Juror Moore advised she was very ill. Counsel having no objections, the Court recesses for the day. **IT IS ORDERED Jury Trial is continued to Thursday, 4/25/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/26/2013) |
| 04/25/2013 | 880 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 14)** as to Jacorey Taylor held on 4/25/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *8:59 a.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: none. Dfts Witnesses: none.Outside the presence of the jury, Court and counsel confer regarding Juror Moore's medical condition and her unavailability to serve as juror today. Counsel having no objections, the Court will recess for the day. **IT IS ORDERED Jury Trial is continued to Friday, 4/26/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/26/2013) |
| 04/26/2013 | 878 | PROPOSED Jury Instructions by Jacorey Taylor (Herman, Carl) (Entered: 04/26/2013) |
| 04/26/2013 | 881 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 15)** as to Jacorey Taylor held on 4/26/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *8:54 a.m. - 2:49 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: none. Dfts Witnesses: Steven Booth, Defendant Jacorey Taylor. **Government's exhibit numbers: 140, and 184 are admitted in evidence.** During the duration of the trial, Government shall retain possession of admitted contraband. **IT IS ORDERED Jury Trial is continued to Monday, 4/29/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 04/26/2013) |
| 04/29/2013 | 884 | MINUTES OF PROCEEDINGS - Jury Trial (DAY 16) as to Jacorey Taylor held on 4/29/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Eileen Wood*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman*; Court Reporter: *Margaret Griener*; Time of Hearing: *9:00 AM-5:12 PM*; Courtroom: *4B*. Defendant is present in custody. Dfts Witness: Jacorey Taylor. Government's exhibit numbers 185 is admitted in evidence. Plaintiff and defense rest. The Court presents jury instructions to the jury. IT IS ORDERED Jury Trial is continued to Tuesday, 4/30/2013 at 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones. Defendant is remanded to custody.**(no image attached)** (Copies have been distributed pursuant to the NEF - EW) (Entered: 04/30/2013) |
| 04/30/2013 | 885 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 17)** as to Jacorey Taylor held on 4/30/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:08 a.m. - 5:00 p.m.*; Courtroom: *4B*; Defendant is present. Plas Witnesses: None. Dfts Witnesses: None. Closing arguments are presented. The Court instructs the jury on the order of deliberations. Bailiff is sworn to take charge of the jury. Jury is dismissed to begin deliberations. At 4:40 p.m. proceedings reconvene and counsel are present telephonically. Court reads notes to counsel received from the jury. Court and counsel confer on a response to be given to the jury. Jury is excused at 5:00 p.m. to return tomorrow morning at 9:00 a.m. to continue with deliberations. **IT IS ORDERED that deliberations will resume on Wednesday, 5/1/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody. **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 05/01/2013) |

**ER-259**

| | | |
|---|---|---|
| 04/30/2013 | 887 | JURY INSTRUCTIONS as to Jacorey Taylor. (AC) (Entered: 05/01/2013) |
| 05/01/2013 | 888 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 18)** as to Jacorey Taylor held on 5/1/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:00 a.m. - 4:00 p.m.*; Courtroom: *4B*;<br>Defendant is in custody. Plas Witnesses: None. Dfts Witnesses: None. Jury deliberations continue. (See attached minutes) **IT IS ORDERED that deliberations will resume on Thursday, 5/2/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** (Copies have been distributed pursuant to the NEF - LE) (Entered: 05/01/2013) |
| 05/02/2013 | 892 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 19)** as to Jacorey Taylor held on 5/2/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:06 a.m. - 3:47 p.m.*; Courtroom: *4B*;<br>Defendant is in custody. Plas Witnesses: none. Dfts Witnesses: none. Jury deliberations continue. (See attached minutes) **IT IS ORDERED that deliberations will resume on Monday, 5/6/2013 09:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded to custody.<br>(Copies have been distributed pursuant to the NEF - LE) (Entered: 05/07/2013) |
| 05/05/2013 | 890 | Copy of NOTICE of Requirement to Contact the U.S. Probation Office as to Jacorey Taylor. (MMM) (Entered: 05/07/2013) |
| 05/06/2013 | 889 | ORDER as to Jacorey Taylor. This Court having ordered the jury impaneled in this action to be kept together during period(s) of deliberation, IT IS ORDERED that all meals for said jury shall be paid by the Clerk of Court. Signed by Chief Judge Robert C. Jones on 4/30/13. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 05/06/2013) |
| 05/06/2013 | 893 | MINUTES OF PROCEEDINGS - **Jury Trial (DAY 20)**as to Jacorey Taylor held on 5/6/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Lesa Ettinger*; AUSA: *Nicholas Dickinson, Phillip Smith, Kevin Rosenberg*; Def Counsel: *Carl Herman, CJA*; Court Reporter/FTR #: *Margaret Griener*; Time of Hearing: *9:09 a.m. - 2:09 p.m.*; Courtroom: *4B*;<br>Defendant is present in custody. Plas Witnesses: none. Dfts Witnesses: none.<br>9:06 a.m. Court convenes in the presence of the jury. Counsel are present. Defendant's presence is waived. Court notes that Alternate Juror Wendt is present, then instructs the jury on the order of deliberations. At 9:15 a.m., Jury is dismissed to begin deliberations.<br><br>At 1:55 p.m., Court informs counsel and defendant that the jury has reached a verdict. The verdict is published by the Jury Foreperson. The jury finds the Defendant, Jacorey Taylor, **GUILTY** of the offenses as charged in the Superseding Indictment. The jury is polled and the Court finds the verdict is unanimous.<br><br>**IT IS ORDERED** sentencing is set for **Thursday, August 8, 2013 at 9:30 a.m. in LV Courtroom 4B before Chief Judge Robert C. Jones.** Defendant is remanded.<br><br>The Court thanks and excuses the jury.<br><br>Court adjourns at 2:09 p.m.<br><br>Thereafter, **IT IS ORDERED** that the Government shall retain possession of admitted contraband exhibits.<br><br>Deadline to return exhibits set for 5/6/2014.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 05/07/2013) |
| 05/06/2013 | 895 | REDACTED JURY NOTES as to Jacorey Taylor (MMM) (Entered: 05/08/2013) |
| 05/06/2013 | 897 | REDACTED JURY VERDICT as to Jacorey Taylor (5) Guilty on Counts 1s,5s,6s,9s,17s-18s. (MMM) (Entered: 05/08/2013) |
| 05/06/2013 | 900 | Defendant's EXHIBIT LIST as to Jacorey Taylor (MMM) (Entered: 05/08/2013) |
| 05/06/2013 | 901 | Plaintiff's EXHIBIT LIST by USA as to Jacorey Taylor (MMM) (Entered: 05/08/2013) |
| 05/20/2013 | 903 | TRANSCRIPT of Proceedings, 862 Jury Trial as to Jacorey Taylor held on 4/11/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/10/2013. Redacted Transcript Deadline set for 6/20/2013. Release of Transcript Restriction set for |

| | | 8/18/2013. (MG) (Entered: 05/20/2013) |
|---|---|---|
| 05/20/2013 | 904 | TRANSCRIPT of Proceedings, 870 Jury Trial as to Jacorey Taylor held on 4/19/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/10/2013. Redacted Transcript Deadline set for 6/20/2013. Release of Transcript Restriction set for 8/18/2013. (MG) (Entered: 05/20/2013) |
| 05/20/2013 | 905 | TRANSCRIPT of Proceedings, 871 Jury Trial as to Jacorey Taylor held on 4/22/13 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/10/2013. Redacted Transcript Deadline set for 6/20/2013. Release of Transcript Restriction set for 8/18/2013. (MG) (Entered: 05/20/2013) |
| 05/20/2013 | 906 | TRANSCRIPT of Proceedings, 871 Jury Trial as to Jacorey Taylor held on 4/22/13 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/10/2013. Redacted Transcript Deadline set for 6/20/2013. Release of Transcript Restriction set for 8/18/2013. (MG) (Entered: 05/20/2013) |
| 05/20/2013 | 907 | TRANSCRIPT of Proceedings, 881 Jury Trial 879 Jury Trial as to Jacorey Taylor held on 4/24&26/13 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/10/2013. Redacted Transcript Deadline set for 6/20/2013. Release of Transcript Restriction set for 8/18/2013. (MG) (Entered: 05/20/2013) |
| 05/20/2013 | 908 | TRANSCRIPT of Proceedings, 881 Jury Trial 884 Jury Trial as to Jacorey Taylor held on 4/26&29/13 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/10/2013. Redacted Transcript Deadline set for 6/20/2013. Release of Transcript Restriction set for 8/18/2013. (MG) (Entered: 05/20/2013) |
| 07/19/2013 | 914 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Jacorey Taylor on 7/19/2013. By Deputy Clerk: Lesa Ettinger.<br><br>IT IS ORDERED that the Sentencing and disposition currently set for 8/8/2013 is RESCHEDULED to Monday, 8/12/2013 11:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 07/19/2013) |
| 07/23/2013 | 915 | TRANSCRIPT of Proceedings, 852 Jury Trial - Voir Dire/Jury Selection as to Jacorey Taylor held on 4/8/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 916 | TRANSCRIPT of Proceedings, 853 Jury Trial as to Jacorey Taylor held on 4/9/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |

ER-261

| | | |
|---|---|---|
| 07/23/2013 | 917 | TRANSCRIPT of Proceedings, 854 Jury Trial as to Jacorey Taylor held on 4/10/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 918 | TRANSCRIPT of Proceedings, 862 Jury Trial as to Jacorey Taylor held on 4/11/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 919 | TRANSCRIPT of Proceedings, 863 Jury Trial as to Jacorey Taylor held on 4/12/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 920 | TRANSCRIPT of Proceedings, 864 Jury Trial as to Jacorey Taylor held on 4/15/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 921 | TRANSCRIPT of Proceedings, 865 Jury Trial as to Jacorey Taylor held on 4/16/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 922 | TRANSCRIPT of Proceedings, 868 Jury Trial as to Jacorey Taylor held on 4/17/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 923 | TRANSCRIPT of Proceedings, 869 Jury Trial as to Jacorey Taylor held on 4/18/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 924 | TRANSCRIPT of Proceedings, 870 Jury Trial as to Jacorey Taylor held on 4/19/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 925 | TRANSCRIPT of Proceedings, 873 Jury Trial as to Jacorey Taylor held on 4/23/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form |

ER-262

| | | |
|---|---|---|
| | | available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 926 | TRANSCRIPT of Proceedings, 871 Jury Trial as to Jacorey Taylor held on 4/22/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 927 | TRANSCRIPT of Proceedings, 879 Jury Trial as to Jacorey Taylor held on 4/24/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 928 | TRANSCRIPT of Proceedings, 880 Jury Trial 881 Jury Trial as to Jacorey Taylor held on 4/25-26/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 929 | TRANSCRIPT of Proceedings, 884 Jury Trial as to Jacorey Taylor held on 4/29/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 930 | TRANSCRIPT of Proceedings, 885 Jury Trial as to Jacorey Taylor held on 4/30/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/23/2013 | 931 | TRANSCRIPT of Proceedings, 888 Jury Trial 892 Jury Trial 893 Jury Trial as to Jacorey Taylor held on 5/1-2-6/2013 before Chief Judge Robert C. Jones. Court Reporter/Transcriber: Margaret Griener, 775-329-9980. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/13/2013. Redacted Transcript Deadline set for 8/23/2013. Release of Transcript Restriction set for 10/21/2013. (MG) (Entered: 07/23/2013) |
| 07/24/2013 | 934 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Jacorey Taylor on 7/24/2013. By Deputy Clerk: Lesa Ettinger.<br><br>Due to a conflict in the Court's calendar, IT IS ORDERED that Sentencing and disposition currently set for 8/12/2013 is **ADVANCED to Monday, 8/5/2013 11:00 AM in LV Courtroom 4B** before Chief Judge Robert C. Jones.<br><br>**(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 07/24/2013) |
| 08/01/2013 | 936 | MINUTE ORDER IN CHAMBERS of the Honorable Chief Judge Robert C. Jones, as to Jacorey Taylor on 8/1/2013. By Deputy Clerk: Lesa Ettinger.<br><br>Due to circumstances beyond the Court's control, IT IS ORDERED that the Sentencing and disposition currently set for 8/5/2013 is RESCHEDULED to Wednesday, 8/7/2013 11:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones. |

ER-263

| | | |
|---|---|---|
| | | **(no image attached)** (Copies have been distributed pursuant to the NEF - LE) (Entered: 08/01/2013) |
| 08/01/2013 | 937 | STIPULATION to continue sentencing (First Request) by Jacorey Taylor. (Attachments: # 1 Proposed Order) (Herman, Carl) Modified text on 8/1/2013 (LMC). **NOTE: Stipulation not signed by AUSA.** (Entered: 08/01/2013) |
| 08/01/2013 | 939 | SUPPLEMENT to 937 Stipulation by USA as to Jacorey Taylor . (Dickinson, Nicholas) (Entered: 08/01/2013) |
| 08/02/2013 | 940 | ORDER ON STIPULATION Granting 937 Stipulation to Continue as to Jacorey Taylor. Sentencing and disposition continued to 10/22/2013 10:00 AM in LV Courtroom 4B before Chief Judge Robert C. Jones. Signed by Chief Judge Robert C. Jones on 8/2/13. (Copies have been distributed pursuant to the NEF - MMM) (Entered: 08/02/2013) |
| 10/16/2013 | 959 | SENTENCING MEMORANDUM by USA as to Jacorey Taylor. (Dickinson, Nicholas) (Entered: 10/16/2013) |
| 10/18/2013 | 961 | SENTENCING MEMORANDUM filed by Jacorey Taylor. (Herman, Carl) Modified to correct filing event on 10/21/2013 (LMC). (Entered: 10/18/2013) |
| 10/22/2013 | 966 | MINUTES OF PROCEEDINGS - Sentencing and Disposition as to Jacorey Taylor held on 10/22/2013 before Chief Judge Robert C. Jones. Crtrm Administrator: *Eileen Wood*; AUSA: *Nicholas Dickinson and Kevin Rosenberg*; Def Counsel: *Carl Herman*; USPO: *Sandy Schmitt and Wendy Beckner*; Court Reporter: *Kathy Eismann*; Time of Hearing: *10:07-10:44 AM*; Courtroom: *4B*. Defendant is present in custody. Representations of counsel are heard. The Court enters findings on the record and Sentence is imposed as to Counts 1s, 5s, 6s, 9s, 17s, and 18s. Copy of conditions of release provided to Defendant by Probation. Defendant is advised of right to file an appeal. Defendant is remanded to custody. Separate Judgment to follow. **(no image attached)** (Copies have been distributed pursuant to the NEF - EW) (Entered: 10/23/2013) |
| 10/24/2013 | 967 | NOTICE OF APPEAL by Jacorey Taylor E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (Herman, Carl) (Entered: 10/24/2013) |
| 10/25/2013 | 968 | Designation of Transcripts and Transcript Order forms and instructions for 967 Notice of Appeal as to Jacorey Taylor. The forms may also be obtained on the Court's website at www.nvd.uscourts.gov/Forms.aspx. (LMC) (Entered: 10/25/2013) |
| 10/31/2013 | 969 | JUDGMENT as to Jacorey Taylor (5), Count(s) 1s, 5s, 6s, 9s, 17s-18s, Sentenced 10/22/2013; Remaining counts dismissed; Defendant is committed to the custody of the BOP for Counts 1s, 17s 18s - 240 Months each Count, Concurrent; Counts 5s and 9s - Life each Count, Concurrent to all other Counts; Count 6s - Life, Consecutive to Counts 1s, 5s, 9s, 17s and 18s; Supervised Release with Special Conditiosn for Counts 1s, 17s and 18s - 3 YEARS per Count; Counts 5s and 6s - 5 YEARS per Count; Count 9s - 10 YEARS; ALL COUNTS TO RUN CONCURRENT WITH EACH OTHER; $600 Assessment; $685.00 Restitution; Restitution List attached. Signed by Chief Judge Robert C. Jones on 10/31/2013. (Copies have been distributed pursuant to the NEF - SLD) (Entered: 10/31/2013) |
| 11/01/2013 | 970 | ORDER for Time Schedule as to 967 Notice of Appeal filed by Jacorey Taylor. **USCA Case Number 13-10572**. (AC) (Entered: 11/04/2013) |
| 11/08/2013 | 971 | TRANSCRIPT DESIGNATION by Jacorey Taylor re 967 Notice of Appeal, 880 Jury Trial,,, 885 Jury Trial,,,, 865 Jury Trial,,, 853 Jury Trial,,,, 922 Transcript,, 921 Transcript,, 908 Transcript,, 873 Jury Trial,,,, 852 Jury Trial - Voir Dire/Jury Selection,,,, 892 Jury Trial,,, 864 Jury Trial,,, 870 Jury Trial,,,, 916 Transcript,, 893 Jury Trial,,,,,, 918 Transcript,, 863 Jury Trial,,,, 927 Transcript,, 915 Transcript,, 923 Transcript,, 905 Transcript,, 906 Transcript,, 871 Jury Trial,,, 926 Transcript,, 919 Transcript,, 904 Transcript,, 888 Jury Trial,, 854 Jury Trial,,,,, 928 Transcript,, 881 Jury Trial,,, 869 Jury Trial,,,, 924 Transcript,, 903 Transcript,, 907 Transcript,, 929 Transcript,, 884 Jury Trial,,, 879 Jury Trial,,,,, 917 Transcript,, 862 Jury Trial,,, 930 Transcript,, 931 Transcript,,, 966 Sentencing,, 920 Transcript,, 868 Jury Trial,,,, 925 Transcript,,. (Herman, Carl) (Entered: 11/08/2013) |
| 11/15/2013 | | Case assigned to Judge Kent J. Dawson. (LMC) (Entered: 11/15/2013) |
| 01/02/2014 | 974 | TRANSCRIPT of Proceedings, 966 Sentencing, as to Jacorey Taylor held on October 22, 2013 before Chief Judge Robert C. Jones. Court Reporter: Kathy Eismann, 702-431-1919. Transcript may be viewed at the court public terminal or purchased through the Court Reporter using the court's "Transcript Order" form available on our website www.nvd.uscourts.gov before the deadline for Release of Transcript Restriction. After that date it may be obtained through the court reporter or PACER. Redaction Request due 1/23/2014. Redacted Transcript Deadline set for 2/2/2014. Release of Transcript Restriction set for 4/2/2014. (KE) (Entered: 01/02/2014) |
| 04/17/2014 | 988 | ORDER of USCA as to Jacorey Taylor re 967 Notice of Appeal. Appellant's Motion for a third extension of time to file the opening brief is granted. (SLR) (Entered: 04/21/2014) |
| 06/10/2014 | 990 | ORDER of USCA as to Jacorey Taylor re 967 Notice of Appeal. Appellant's unopposed motion for a fourth extension of time to file the opening brief is GRANTED. (AC) (Entered: 06/11/2014) |

**ER-264**

| 07/31/2014 | 1019 | ORDER of USCA as to Jacorey Taylor re 967 Notice of Appeal. Appellants unopposed motion for a fifth extension of time to file the opening brief is granted. (SLR) (Entered: 08/04/2014) |
|---|---|---|
| 11/04/2014 | 1026 | TRANSCRIPT of Proceedings, 1014 Order on Motion in Limine, Jury Trial, as to Markette Tillman held on 7/28/2014 before Judge Kent J. Dawson. Court Reporter: Patricia L. Ganci (702)385-0670. Transcript may be viewed at the court public terminal or purchased through the Court Reporter using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. Redaction Request due 11/25/2014. Redacted Transcript Deadline set for 12/5/2014. Release of Transcript Restriction set for 2/2/2015. (PG) (Entered: 11/04/2014) |
| 11/04/2014 | 1027 | TRANSCRIPT of Proceedings, 1015 Jury Trial, as to Markette Tillman, held on 7/29/2014 before Judge Kent J. Dawson. Court Reporter: Patricia L. Ganci (702)385-0670. Transcript may be viewed at the court public terminal or purchased through the Court Reporter using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. Redaction Request due 11/25/2014. Redacted Transcript Deadline set for 12/5/2014. Release of Transcript Restriction set for 2/2/2015. (PG) (Entered: 11/04/2014) |
| 03/20/2015 | 1059 | TRANSCRIPT of Proceedings, 1016 Change of Plea, Markette Tillman, before Judge Kent J. Dawson. Court Reporter: Patricia L. Ganci pattyganci@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter using the court's "Transcript Order" form available on our website <a href=http://www.nvd.uscourts.gov target=_blank>www.nvd.uscourts.gov</a> before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. Redaction Request due 4/10/2015. Redacted Transcript Deadline set for 4/20/2015. Release of Transcript Restriction set for 6/18/2015. (PG) (Entered: 03/20/2015) |
| 06/11/2015 | 1070 | MEMORANDUM of USCA as to Jacorey Taylor AFFIRMING the judgment of the USDC re 967 Notice of Appeal (DC) (Entered: 06/11/2015) |
| 07/07/2015 | 1075 | MANDATE of USCA as to Jacorey Taylor re 1070 USCA Memorandum, AFFIRMING the Judgment of the USDC re 967 Notice of Appeal. (DC) (Entered: 07/08/2015) |
| 07/09/2015 | 1077 | ORDER on Mandate as to Jacorey Taylor AFFIRMING the judgment of the District Court re 1075 USCA Mandate, 967 Notice of Appeal. Signed by Judge Robert C. Jones on 7/9/15. (TR) (Entered: 07/09/2015) |
| 10/13/2015 | 1086 | Copy of Letter dated 10/13/15 from Supreme Court of the United States re 967 Notice of Appeal (13-10572). The Court today entered the following order in the above-entitled case: The petition for a writ of certiorari is denied. (MMM) (Entered: 10/16/2015) |
| 08/17/2016 | 1114 | NOTICE to APPEAL *"Out of Time" an Illegal Sentence,* filed pro se by Defendant Jacorey Taylor. Filing fee $505 - **not paid.** E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (Notice of Appeal NEF and PACER docket sheet mailed to P 8/18/2016.) (KR) (Entered: 08/18/2016) |
| 08/18/2016 | 1115 | FORM - Designation of Transcripts for ECF No. 1114 Notice of Appeal as to Jacorey Taylor. The form may also be obtained on the Court's website at www.nvd.uscourts.gov/Forms.aspx. (KR) (Entered: 08/18/2016) |
| 08/18/2016 | 1116 | USCA ORDER for Time Schedule as to 1114 Notice of Appeal, filed by Jacorey Taylor. **USCA Case Number 16-10364.** (NEV) (Entered: 08/18/2016) |
| 09/06/2016 | 1119 | ORDER of USCA as to Jacorey Taylor re ECF No. 1114 Notice of Appeal, dismissing appeal as duplicative, denying as moot all pending motions. This order acts as mandate. USCA case **16-10364.** (KR) (Entered: 09/08/2016) |
| 09/08/2016 | 1120 | ORDER on Mandate as to Jacorey Taylor re ECF No. 1114 Notice of Appeal, ECF No. 1119 USCA Order. USCA case 16-10364. Signed by Judge Robert C. Jones on 9/8/2016. (KR) (Entered: 09/08/2016) |
| 09/19/2016 | 1125 | MOTION *Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, by Jacorey Taylor. (KW) Civil case 2:16-cv-02204-RCJ opened. (Entered: 09/19/2016)* |
| 09/22/2016 | 1126 | ORDER Granting 1122 Stipulation as to Delvin Ward (1). IT IS FURTHER ORDERED that defendant's custody sentence is amended to time served. All other provisions of the 10/14/10, 401 judgment, are to remain in effect. The effective date of defendants sentence reduction shall be 9/23/16. Signed by Judge James C. Mahan on 9/22/16. (Copies have been distributed pursuant to the NEF and sent to the defendant manually - ADR) (Entered: 09/22/2016) |
| 10/13/2016 | 1129 | ORDER of USCA as to Jacorey Taylor re ECF No. 1114 Notice of Appeal, denying appellant's motion for reconsideration. USCA case **16-10364.** (KR) (Entered: 10/13/2016) |

ER-265

| 10/18/2016 | 1130 | ORDER **denying** ECF No. 1125 Motion to Vacate, Set Aside or Correct Sentence (2255) as to Jacorey Taylor (5). Certificate of appealability is **denied**. Signed by Judge Robert C. Jones on 10/18/2016. (Copies have been distributed pursuant to the NEF and sent to the defendant manually - KW)<br>Civil Case 2:16-cv-02204-RCJ closed. (Entered: 10/18/2016) |
| --- | --- | --- |
| 10/26/2016 | 1132 | Mail Returned as Undeliverable re ECF No. 1129 USCA Order, ECF No. 1130 Order, addressed to Jacorey Taylor. (KR) (Entered: 10/28/2016) |
| 11/28/2016 | 1133 | NOTICE OF APPEAL by Jacorey Taylor re 1130 Order on Motion to Vacate (2255), Filing Fee NOT Paid, E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (ADR) (Entered: 11/30/2016) |
| 12/01/2016 | 1134 | FORMS - Designation of Transcripts and Transcript Order forms and instructions for ECF No. 1133 Notice of Appeal as to Jacorey Taylor. The forms may also be obtained on the Court's website at www.nvd.uscourts.gov/Forms.aspx. (Attachments: # 1 Transcript Order Form)(DRM) (Entered: 12/01/2016) |
| 03/01/2019 | 1192 | MOTION (Second-In-time) to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. 2255, filed pro se by Jacorey Taylor. (KW)<br>Civil case 2:19-cv-00369-RCJ opened. (Entered: 03/01/2019) |
| 08/13/2019 | 1201 | NOTICE of Change of Address by Jacorey Taylor OLD: USP Victorville. NEW: AUSP Thomson. (LH) (Entered: 08/14/2019) |
| 09/09/2019 | 1202 | MOTION for a Sentence Reduction under Amendment 782 of 18 U.S.C. 3582(c) by Jacorey Taylor. (DRM) (Entered: 09/09/2019) |
| 09/19/2019 | 1203 | ORDER as to Jacorey Taylor (5) re ECF No. 1202 Motion seeking Discretionary Relief pursuant to 18 U.S.C. § 3582(c)(2) :<br><br>ORDERED that the FPD is appointed as counsel for Defendant, unless FPD declines the appointment by 10/3/2019. Clerk shall distribute copy of document filed by Defendant (ECF No. 1202 to FPD, AUSA, and Probation Office forthwith. Probation Office shall provide FPD and AUSA with Defendant's PSI report, and current Inmate Profile; and shall prepare a Supplemental PSI report as specified herein. (See pdf order for additional specifics.)<br><br>IT IS FURTHER ORDERED that the FPD shall by 1/17/2020, file any appropriate motion or stipulation. If the FPD files a motion for a sentence reduction pursuant to guidelines Amendment 782, the United States Attorney shall serve any response to such motion within thirty (30) days of the filing of that motion unless for good cause the time is extended.<br><br>Signed by Judge Robert C. Jones on 10/19/2019. (Copies have been distributed pursuant to the NEF and sent to the defendant manually - DRM) (Entered: 09/19/2019) |
| 09/30/2019 | 1204 | NOTICE *of Conflict* by Jacorey Taylor re 1203 Order Appointing Counsel FPD,,,,, Set Deadlines,,,,. (Irvin, Sylvia) (Entered: 09/30/2019) |
| 09/30/2019 | | Attorney update in case as to Jacorey Taylor: Attorney Rene Valladares withdrawn. (Irvin, Sylvia) (Entered: 09/30/2019) |
| 09/30/2019 | 1205 | ORDER of USCA as to Jacorey Taylor re ECF No. 1133 Notice of Appeal, lifting stay and appointing counsel sua sponte for this appeal, to be appointed by a separate order; directing Clerk to e-serve this order on the appointing authority for the District of Nevada. USCA case **16-17202.** (KR) (Entered: 10/02/2019) |
| 10/07/2019 | 1207 | ORDER **dismissing without prejudice** ECF No. 1192 Motion to Vacate (2255) as to Defendant Jacorey Taylor (5). Signed by Judge Robert C. Jones on 10/7/2019. (Copies have been distributed pursuant to the NEF and sent to the defendant manually - KR)<br>Civil Case 2:19-cv-00369-RCJ closed. (Entered: 10/08/2019) |
| 10/08/2019 | 1208 | ORDER APPOINTING APPELLATE COUNSEL as to Jacorey Taylor re USCA Case No. 16-17202. Mario Valencia, Esq appointed as counsel for Jacorey Taylor. Former counsel, Herman Carl, must forward the case file to Mr. Valencia forthwith. Signed by Judge Robert C. Jones on 10/8/2019.<br><br>(*Copy of order mailed to Defendant AND e-served on former counsel Carl J Herman and USCA at counselappointments@ca9.uscourts.gov* ). (Copies have been distributed pursuant to the NEF and sent to the defendant manually - LH) (Entered: 10/08/2019) |
| 11/12/2019 | 1209 | MOTION to Extend Time to file Motion to Alter or Amend Judgment, by Jacorey Taylor. (DRM) (Entered: 11/14/2019) |
| 11/12/2019 | 1210 | MOTION to Alter or Amend Judgment Pursuant to Rule 59(E), by Jacorey Taylor. Responses due by 11/26/2019. (DRM) (Entered: 11/14/2019) |

**ER-266**

| 11/20/2019 | 1212 | RESPONSE to 1210 Motion to Amend/Correct Judgment by USA as to Jacorey Taylor. Replies due by 11/27/2019. (White, Elizabeth) (Entered: 11/20/2019) |
| 01/13/2020 | 1214 | LETTER requesting status re 782 amendment, from Jacorey Taylor (DRM) (Entered: 01/13/2020) |
| 02/03/2020 | 1215 | MOTION for a Sentence Reduction under Amendment 782 of 18 U.S.C. 3582(c), filed by Jacorey Taylor. (Attachments: # 1 Cover letter)(ADR) (Entered: 02/04/2020) |
| 03/06/2020 | 1217 | LETTER to Clerk from Jacorey Taylor re ECF No. 1203 Order appointing FPD : He has yet to hear from FPD; and requesting Court response to ECF No. 1215 Motion. (DRM) (Entered: 03/06/2020) |
| 03/30/2020 | 1218 | LETTER to Clerk from Jacorey Taylor requesting status update as to ECF Nos. 1203 Order and 1215 Motion. (LW) (Entered: 03/30/2020) |
| 04/07/2020 | 1219 | NOTICE *Supplemental Notice of Conflict and Request for Conflict Counsel to be Appointed* by Jacorey Taylor re 1203 Order Appointing Counsel FPD,,,,, Set Deadlines,,,, 1204 Notice (Other), 1202 Motion to Reduce Sentence re Amendment 782 - 18:3582. (Irvin, Sylvia) Modified on 4/10/2020 motion to appoint in document. (WJ). (Entered: 04/07/2020) |
| 04/10/2020 | | NOTICE of Docket Correction to 1219 Motion for Appointment of Counsel, as to Jacorey Taylor: QC changed entry to reflect a motion for apointment of counsel. **(no image attached)**(WJ) (Entered: 04/10/2020) |
| 06/05/2020 | 1220 | MOTION for Appointment of Counsel by Jacorey Taylor. (Annotated with USCA Case No. **16-17202**.) (DRM) (Entered: 06/05/2020) |
| 06/18/2020 | 1221 | ORDER APPOINTING COUNSEL as to Jacorey Taylor. CJA Julian R Gregory for Jacorey Taylor appointed as counsel re ECF Nos. 1202 , 1215 Motions for sentence reduction. Signed by Judge Robert C. Jones on 6/18/2020. (Copies have been distributed pursuant to the NEF and sent to the defendant manually - DRM) (Entered: 06/18/2020) |
| 10/16/2020 | 1222 | MOTION for a Sentence Reduction under Amendment 782 of 18 U.S.C. 3582(c) by Jacorey Taylor. (Gregory, Julian) (Entered: 10/16/2020) |
| 10/29/2020 | 1223 | NOTICE of Change of Address by Jacorey Taylor (HAM) (Entered: 10/29/2020) |
| 10/29/2020 | 1224 | MOTION for Change of Counsel by Jacorey Taylor. (HAM) (Entered: 10/29/2020) |
| 10/30/2020 | 1225 | RESPONSE to 1222 Motion to Reduce Sentence under Amendment 782 by USA as to Jacorey Taylor. Replies due by 11/6/2020. (White, Elizabeth) (Entered: 10/30/2020) |
| 11/03/2020 | 1226 | RESPONSE to 1224 Motion for Appointment of Counsel by Jacorey Taylor. Replies due by 11/10/2020. (Gregory, Julian) (Entered: 11/03/2020) |
| 02/09/2021 | 1232 | MOTION for Appointment of Counsel by Jacorey Taylor. (HAM) (Entered: 02/09/2021) |
| 02/10/2021 | 1233 | RESPONSE to 1232 Motion for Appointment of Counsel by Jacorey Taylor. Replies due by 2/17/2021. (Gregory, Julian) (Entered: 02/10/2021) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/30/2021 14:53:27 | | |
| **PACER Login:** | | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:08-cr-00283-RCJ-PAL |
| **Billable Pages:** | | **Cost:** | |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt CJA |

**PACER fee: Exempt CJA** Change

ER-267